

**FILED**

Jul 05 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY        s/ melindajwilliams        DEPUTY

Anton A. Ewing (not an attorney)
3077 B Clairmont Drive, #372
San Diego, CA 92117
619-719-9640 (do not telemarket)

Plaintiff *pro se*

## UNITED STATES FEDERAL DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

Anton A. Ewing,

        Plaintiff,

vs.

FREEDOM FOREVER, LLC, and

BRETT BOUCHY, an individual

        Defendants

Case No.: **'23CV1240 RSH KSC**

**COMPLAINT**
  **1. 47 U.S.C. §227(b) & (c) (TCPA)**
  **2. PC §637.2 / 632.7 (CIPA)**

    Here we go again.  In 20-cv-00880-JLS-AHG, the named defendants signed

a settlement agreement wherein they promised, in a signed writing, that they would

never telemarket 619-719-9640 ever again.  They made that promise in front of the

Honorable Magistrate Judge Goddard.

    Plaintiff Anton A. Ewing (herein "Plaintiff" or "Ewing") files this Civil

Complaint ("Complaint") for money damages and injunctive relief, demanding a

trial by jury, against Defendant Brett Bouchy, an individual (herein "Bouchy") and

Defendant Freedom Forever, LLC, (herein "Freedom Forever") that is registered to

23cv

do business in California with the Secretary of State, to stop said defendants from

violating the Telephone Consumer Protection Act and the Telemarketing Sales

Rule by sending telemarketing text messages and calling with prerecorded artificial

voice messages to Plaintiff's personal residential **cellular** phone (ending in -9640),

which is registered on www.donotcall.gov (the National Do Not Call Registry)

without permission and without consent of Plaintiff.   Plaintiff Ewing, for this

Complaint, alleges as follows upon personal knowledge as to himself and his own

acts and experiences, including investigation conducted by Plaintiff[1].  Plaintiff is

suing to stop both Defendant's practice of sending text messages and calls using an

"automatic telephone dialing system" ("ATDS") to the cellphones of consumers in

San Diego county (including Plaintiff's -9640 cell phone) without their prior

express consent by obtaining an injunction prohibiting violation of the TCPA (Title

47 United States Code); (2) stop both Defendant's practice of sending repeated text

messages to consumers on the National Do Not Call Registry, which includes

Plaintiff; (3) obtain an injunction prohibiting both Defendant's continued illegal

efforts to send text messages and make harassing calls to consumers, including

Plaintiff; and (4) obtain redress for Plaintiff Ewing who was injured by both

---

[1] See 21cv-01764-GPC-BLM at PageID.1 in ECF No. 1, *Trujillo vs. Encore Live, LLC*
COMPLAINT   1. 47 U.S.C. §227(B) & (C) (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 2

23cv

Defendant's conduct.

## PARTIES

1. Plaintiff Anton A. Ewing is a natural person as defined by 47 USC §153(39), and a resident of San Diego, California at all times relevant to this action. Plaintiff was present in San Diego at all times relevant to this action and was also the owner and sole user of personal, private residential cellular phone number 619-719-9640[2].

2. Brett Bouchy is an individual, and a "person" as defined by 47 USC §153(39).   Brett Leon Bouchy is the Manager and CEO of Freedom Forever, LLC.  Bouchy is also a Member of Freedom Forever, LLC.

3. Freedom Forever, LLC is a "person" as defined by 47 USC §153(39) and is formed in the state of Delaware.

4. Plaintiff has been repeatedly <u>called</u> and <u>texted</u> by FREEDOM FOREVER directly, without consent, permission or authority, all in direct violation of express commands by Plaintiff to stop, cease and desist and by virtue of registration on www.donotcall.gov as well as Plaintiff's express demands

---

[2] For clarity, this number is not a hardwired landline.
COMPLAINT  1. 47 U.S.C. §227(B) & (C) (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 3

directly to Defendant FREEDOM Forever's employees to stop all future calls and texts.

5. Defendant Freedom Forever is a limited liability company that conducts business throughout this District, in San Diego, California even though conduction such business is illegal and unauthorized under California state law. Defendant FREEDOM FOREVER is a "person" as defined by 47 USC §153(39) and is own, operated, controlled and managed solely by Brett Bouchy. Defendants are in the business of selling solar panel scams. Defendants use the wires of the United States to harass and annoy DNC registered telephone owners with their solicitation calls to sell sham loans to unsuspecting victims in California.

6. Defendant FREEDOM Forever is located at 43445 BUSINESS PARK DRIVE, SUITE 104, TEMECULA, CA 92590. Plaintiff is only suing Brett Bouchy, an individual and Freedom Forever, LLC, and no other persons or parties, named or unnamed, whether as Does or otherwise. The Defendant's attorneys should not be confused here. Plaintiff repeats himself again, there is only one (1) defendant that is a corporation and one (1) individual person named in this civil lawsuit and Plaintiff is specifically alleging that Defendant FREEDOM Forever directly engaged in the illegal and offending conduct that is set forth in detail below.

COMPLAINT   1. 47 U.S.C. §227(B) & (C) (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 4

23cv

7. The LLC named herein is a complete sham and the alter ego of Brett Bouchy. Bouchy is personally liable for the illegal acts and actions set forth in this complaint.

8. BOUCHY is hereby put on notice that Plaintiff will also move the Court to pierce the entity defendant's veil and hold BOUCHY and his co-owners personally liable for the judgment in this matter.

9. Defendant FREEDOM Forever called Plaintiff in direct violation of the TCPA, devoid of prior consent, in order to solicit Plaintiff to purchase Defendant FREEDOM Forever's services. The violating calls are set forth in detail below, including the date, time, from what number and to which number. That is all that is required under the TCPA to state sufficient facts to support that these defendants actually called Plaintiff.

10. Often times, telemarketers will use a fake name and will spoof a fake phone number in order to evade TCPA lawsuits. That is exactly what Defendant FREEDOM Forever has instructed, ordered and commanded its employees to do. After having filed, apparently, over eighty TCPA cases over the past 9 years, Plaintiff can make this assertion of fact based on a massive amount of experience regarding this fact.

11. "Bouchy[3]," as an employee of Defendant FREEDOM Forever, is a legal agent of Defendant FREEDOM Forever and his actions are the actions of Defendant FREEDOM Forever.  Corporations are legal entities and they are only able to act through their employees.  Otherwise, a corporation is just a peace of paper filed with the secretary of state.

**12.** *Hoffman v. Cenlar Agency, Inc.*, No. 12cv414 L (NLS), 2013 U.S. Dist. LEXIS 43860 (S.D. Cal. Mar. 27, 2013) is strictly, solely and only a land-line case[4] under PC §632 (in fact it was a call to a law firm and the secretary answered the office phone).  It is not a cellular phone case under PC §632.**7**.

**JURISDICTION AND VENUE**

13. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").  This is not a "diversity of citizenship" case.  *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).  Federal law is allowed to be decided by federal judges.

---

[3] Plaintiff does not know what Reed's preferred pronouns are at this time.  Reed may use he, she, him, her, they, vis or any other pronoun.  For simplicity, Reed will be referred to as "he" or "his" in this pleading.
[4] The Court is requested, pursuant to FRE 201, to take judicial notice of the indisputable fact that *Hoffman* is a land-line only case and not a cellular phone case and nowhere in that Complaint is PC §632.7 ever even mentioned.

COMPLAINT  1. 47 U.S.C. §227(B) & (C) (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 6

14. This Court has personal jurisdiction over the Defendants since both Defendants conduct business in this District and specifically marketed to Plaintiff within this District relating to the business that it conducts here. Venue is proper in this District because Plaintiff resides in this District and the events leading to this case occurred in this District.

15. The Court has ancillary and supplemental jurisdiction, in its discretion, over the attendant state law claims that are part of a common nucleus of operative facts. Plaintiff is suing for violation of CIPA, PC §632.7 et seq. – illegal cell phone recording, without consent. CIPA is only being applied, in this matter, to calls and not to text messages alleged herein.

16. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "can be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim." *Holley v. Crank*, 400 F.3d 667, 674 (9th Cir. 1989). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *Tanner v. Heise*, 879 F.2d 572, 576 (9th Cir. 1989). *Brooks v. Alameida*, 446 F. Supp. 2d 1179, 1181 (S.D. Cal. 2006).

17. Defendant FREEDOM Forever has purposefully directed its activities into California. Area code 619 is entirely within San Diego County.

COMPLAINT   1. 47 U.S.C. §227(B) & (C) (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 7

23cv

# INTRODUCTION

18. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020). Plaintiff is also doing his job to help stop harassing and annoying telemarketers throughout the country by filing these lawsuits. Plaintiff has a good faith basis to file this lawsuit against these defendants.

19. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). Plaintiff has in fact registered his phone (-9640) on www.donotcall.gov and confirmed that registration.

20. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

21. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

22. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

23. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

24. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

25. According to online robocall tracking service "YouMail," 4 billion robocalls were placed in September 2021 alone, at a rate of 131.1 million calls per day. www.robocallindex.com. Plaintiff still receives nearly a dozen harassing and annoying robocalls each and every day from unscrupulous businesses trying to sell auto repairs, life insurance, solar panels, credit repair, student loan assistance, and merchant cash advances to name just a few. This must stop. The only way to stop violators is to sue them in a court of law having jurisdiction.

26. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in

COMPLAINT   1. 47 U.S.C. §227(B) & (C) (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 9

23cv

2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.  It is unfortunate that making a complaint to the FCC actually results in nothing being done.  The FCC simply does not have the resources to go after telemarketers.

27. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, Cutting off Robocalls (July 22, 2016), statement of FCC chairman.[5]

28. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[6]

29.  In recent years a troubling trend has surfaced in the merchant cash advance industry, cold calling consumers soliciting their services without their consent, including calls that are being placed to consumers that registered their phone numbers on the DNC.

---

[5] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[6] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
COMPLAINT   1. 47 U.S.C. §227(B) & (C) (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 10

23cv

30. The initial part of the call was a prerecorded voice, then Defendant FREEDOM Forever's employee[7] "Bouchy" admitted to Plaintiff, at the end of the 6/2/2023 telemarketing call, when asked by Plaintiff, that Defendant FREEDOM Forever does in fact record all of its solicitation calls. Bouchy transferred the call to a male person who attempted to justify the illegal act of recording by adding that they record for "training purposes" but that additional fact is not an excuse for violating CIPA and does not afford the requisite consent. Any and all calls into California phone numbers must disclose, at the beginning of the call, that said call is being recorded. Waiting until the very end of the call to admit, when asked, that it was recorded is too late. Liability for recording attaches when there is a call, to a cellular phone, where there is a reasonable expectation of privacy and disclosure of the fact of recording does not occur at or near the beginning of said call. Cellular phones do not require confidential private information to be exchanged to be protected by CIPA as clearly shown in PC §632.7. This is not a PC §632 land line case.

---

[7] This is not a 3rd party. Rather, an employee is the actor by which the corporation engages. The acts of an employee are the acts of the defendant corporation.
COMPLAINT  1. 47 U.S.C. §227(B) & (C) (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 11

23cv

31. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

32. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

33. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

34. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. §64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the

COMPLAINT   1. 47 U.S.C. §227(B) & (C) (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 12

23cv

communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

35. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" Id. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

36. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

37. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future. *Id.*

38. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA.

*See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

39. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

40. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the text message). (*emphasis added*).

## COMMON ALLEGATIONS

41. Defendant FREEDOM Forever is a solar panel firm, selling its services throughout San Diego County and is licensed to do business in California.

42. Defendant Freedom Forever has violated its own corporate charter from Colorado which authorizes only "lawful acts or activity."  Telemarketing is illegal and it is a criminal act.

43. Defendant FREEDOM Forever which conducts business using various fictitious or even fake names, owns and operates the website, www.freedomforever.com.

44. Defendant FREEDOM Forever conducts telemarketing campaigns to sell its services to consumers throughout southern California.  As part of those campaigns, unsolicited text messages are sent to cell phones of consumers across the state by Defendant FREEDOM Forever   Plaintiff can assert and allege this detailed fact because Defendant's employee, Bouchy, expressly admitted it.

45. In placing unsolicited text messages to consumers, Defendant FREEDOM Forever sent multiple text messages to phone numbers that are registered on the DNC, such as Plaintiff's number (-9640).

46. In response to these text messages, Plaintiff Ewing files this lawsuit seeking injunctive relief requiring Defendant FREEDOM Forever to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to Plaintiff Ewing and costs ($402 filing fee plus service of process fees).  The text messages were generic in nature and did not

address Plaintiff by name. The text message did not offer a way to opt out or to stop future solicitation texts.

47. Plaintiff Ewing heard a very clear "bubble popping" type sound followed by a rather long pause before the artificial-voice prerecorded message began to play on the call. Plaintiff was required to hit "1" to be transferred to a live operator. This happened on each and every call that is the subject of this lawsuit. Many courts have held that this very same bubble popping and long pause are highly indicative of an ATDS being used. However, the Defendants fail to comprehend that it is also violation of section 227(b)(1)(A) to use, and Defendant FREEDOM Forever did in fact use, an artificial pre-recorded voice message to obtain a subsequent transfer to a live operator employee of Defendant FREEDOM Forever.

48. Plaintiff and Defendants do not have a pre-existing business relationship. Plaintiff has never been a customer or client of Defendant's loan business.

49. Specifically, the hardware and software used by Defendant FREEDOM Forever has the capacity to store and/or produce numbers using a random or sequential number generator, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant FREEDOM Forever's automated dialing equipment includes features substantially similar to a predictive dialer in that it is capable of sending numerous text

messages and calls simultaneously, without human intervention. The distinct bubble-popping sound and the long silent pause were, in Plaintiff's vast experience, the clear indication that an ATDS robo-dialer was used by Defendant FREEDOM Forever for the calls.

50. The text messages were sent by Defendant FREEDOM Forever with its knowledge and approval of the CEO of Defendant. Defendant FREEDOM Forever knew about the messages, received the benefits of the messages, directed that the messages be sent, and/or ratified the sending of the messages by its employees using Defendant's computers and software. The text messages were generic which indicates an ATDS was used by Defendant FREEDOM Forever.

51. All of the text messages were sent via an ATDS at the direction and oversight of Defendant FREEDOM Forever. Said Defendant knew about, directed, ratified, and benefitted from the solicitation text messages that it directly sent to Plaintiff.

52. Based on Plaintiff's vast knowledge and experience with these types of telemarketers, the equipment used to send the texts at issue has the capacity to use a random or sequential number generator in the process of storing

numbers from a pre-produced list for texting at a later date.[8]  Plaintiff alleges that this is exactly what Defendant FREEDOM Forever has done.

53. The equipment at issue, in this case, also has the capacity to produce telephone numbers using a random or sequential number generator. Specifically, the texting software, by virtue of being inextricably linked to a computer operating system, has the capacity to generate random or sequential telephone numbers.  One of Defendant FREEDOM Forever's employees, Bouchy, expressly admitted that they were using an "auto dialing computer[9]" to make the calls and send out the text messages in order to get California residents to buy their consulting programs.  The bubble popping sound at the beginning of the calls were a dead give-away that these defendants are using and employing an auto dialer (aka robo-dialer).

54. By sending unsolicited text messages as alleged herein, Defendant FREEDOM Forever has caused Plaintiff actual harm. This includes the aggravation, nuisance, and invasions of privacy that result from the placement of such text messages, in addition to the wear and tear on his phone, interference with the use of his phone, consumption of battery life,

---

[8] 21-cv-01646-L-BLM, PageID.6, ECF No. 1, *Williams vs. Zeeto, LLC* (SD CA 9/20/21)
[9] Or "auto dialing software" or words to that affect.
COMPLAINT  1. 47 U.S.C. §227(B) & (C) (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 18

23cv

loss of value realized for monies he paid to his AT&T carrier for the receipt

of such messages, and the diminished use, enjoyment, value, and utility of

his telephone plan. Furthermore, Defendant FREEDOM Forever sent the

messages knowing they trespassed against and interfered with Plaintiff's use

and enjoyment of, and the ability to access, his phone, including the related

data, software, and hardware components.

55. FCC regulations promulgated under the TCPA specifically prohibit

Defendant from using an artificial or prerecorded voice to call Plaintiff's

Number for the purpose of advertising or telemarketing absent Plaintiff's

prior express written consent. See 47 C.F.R. § 64.1200(a)(2)[10]

## PLAINTIFF EWING'S ALLEGATIONS DIRECTLY AGAINST

## DEFENDANT FREEDOM FOREVER and BOUCHY

56.  Defendant Freedom Forever and Defendant BOUCHY called or texted

Plaintiff Ewing, on his DNC registered personal cell phone, 619-719-9640,

on the following dates:

  a.  April 30, 2023 from 925-247-8772 at 11:19 AM – Call –

  b.  May 1, 2023 from 925-247-8772 at 11:39 AM – Call –

---

[10] 21-cv-02040-CAB-KSC, PageID.4 in ECF No. 1, *Johnson vs. Digital Media Solutions*.

COMPLAINT   1. 47 U.S.C. §227(B) & (C) (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 19

23cv

c. May 16, 2023 from 619-710-0767 at 10:56 AM - Call

d. June 1, 2023 from 619-710-0767 at 11:36 AM – Call

57. The above dates, times, from what number and to what number is all the detail that is required under the TCPA. Nothing else is necessary at the initial pleading stage. *See* Rule 8 and Rule 10, FRCP.

58. There were, thus far, 4 calls (($1,500 + $1,500 +$5,000) times 4 = $32,000)) from Defendant FREEDOM Forever.

59. Defendant FREEDOM Forever's employee Bouchy admitted to Plaintiff that he did not dial Plaintiff's phone number by finger, but rather using a computer software that stores and automatically dials the phone numbers without any input from him. "Bouchy" stated that once a person hit's "1" then the software connects or transfers the call to either her or another telemarketer in the office.

60. For clarity purposes, BOUCHY is the person who is guiding, controlling, managing and orchestrating all of the FREEDOM Forever corporate actions complained of herein.

61. Replying "STOP" did not work. Plaintiff received additional subsequent text messages from Defendant FREEDOM Forever. Additionally, Plaintiff became upset on each telephone <u>call</u> making very clear that the caller must never telemarket him (Plaintiff) ever again.

COMPLAINT   1. 47 U.S.C. §227(B) & (C) (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 20

23cv

62. The pre-recorded voice message at the beginning of each telephone solicitation call from Defendant (not a 3rd part or agent) stated: "*Are your electric bills too high. Do you want to go solar and never pay another utility bill ever again? Press one to be connected to one of our solar experts*" or similar words to that affect. The TCPA does not require a plaintiff to be able to memorize and regurgitate every word that every telemarketer states.

63. Defendant FREEDOM Forever was calling to sell its solar panel services to Plaintiff who was in California at the time.

64. Plaintiff Ewing registered his cell phone number on the DNC on February 16, 2012, for the express purpose that he would not receive unsolicited calls or text messages. Plaintiff Ewing has gone even further to pay for various web pages informing the world of telemarketers to not call him or else they will be sued.

65. Plaintiff Ewing's phone number is not associated with a business and is used for personal, private residential use only. Notwithstanding, mixed use phones are still fully protected.

66. The text messages that Plaintiff received are solicitations encouraging the purchase of Defendant FREEDOM FOREVER's services.

67. The text messages were sent by Defendant FREEDOM Forever. The text messages were sent at Defendant FREEDOM Forever's direction, command

COMPLAINT   1. 47 U.S.C. §227(B) & (C) (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 21

23cv

and control, that is, Defendant ordered each of its employees to respond to the calls that it made after it sent out the automatic solicitations.

68. Defendant FREEDOM Forever expressly and overtly controlled the exact generic content of the text messages.

69. The text messages, unlike the emails, did not address Plaintiff by name. Thus they were sent by, with and through an automatic telephone dialing system or robo-dialer.

70. Said dialing system has the capacity to store and randomly generate phone numbers and to dial those numbers without human intervention.

71. Plaintiff Ewing never provided his phone number or his consent to Defendant FREEDOM Forever to receive any solicitation from them. Prior to receiving the text messages, Plaintiff had never visited any location or internet web page owned, used, or controlled by Defendant FREEDOM Forever.

72. The unauthorized solicitation telephone text messages that Plaintiff received from Defendant, as alleged herein, have harmed Plaintiff Ewing in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

73. Section 310.3(b) of the TSR prohibits providing substantial assistance or support to telemarketers when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates the TSR. *United States v. Dish Network LLC*, No. 09-3073, 2017 U.S. Dist. LEXIS 85543, at *299 (C.D. Ill. June 5, 2017)

74. The phone calls placed to Plaintiff's cellular telephone were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. §227 (a)(1) as prohibited by 47 U.S.C. § 227 (b)(1)(A). At one or more instance during these calls, Defendant FREEDOM Forever utilized an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

75. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

76. Defendant's calls were placed to telephone number assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

77. Plaintiff is not a customer of Defendant's services and has never provided any personal information, including his cellular telephone number, to Defendant FREEDOM Forever for any purpose whatsoever. In addition, Plaintiff told Defendant FREEDOM Forever at least once to stop contacting him and Plaintiff has been registered on the Do-Not-Call Registry for at least

COMPLAINT   1. 47 U.S.C. §227(B) & (C) (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 23

thirty (30) days prior to Defendant FREEDOM Forever contacting him. Accordingly, Defendant FREEDOM Forever never received Plaintiff's "prior express consent" to receive calls using an automatic telephone dialing system or an artificial or prerecorded voice on his cellular telephone pursuant to 47 U.S.C. § 227(b)(1)(A).[11]

78. Plaintiff did not have a personal relationship with Defendant FREEDOM Forever at any point in time.[12]

79. Defendant FREEDOM Forever did not make the telephone solicitations in error.

80. When Plaintiff answered calls from Defendant FREEDOM Forever, he heard a prerecorded message and had to wait on the line to be transferred to a live representative after pressing "1."

81. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, ¶ 136 (2003).

---

[11] 21-cv-01204-H-WVG at PageID.4 in ECF No. 1, *Benitez vs. United Debt Settlement, LLC.*
[12] 21-cv-01123
COMPLAINT   1. 47 U.S.C. §227(B) & (C) (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 24

82. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

83. The Honorable Chief Judge Dana M. Sabraw has ruled, in *Gross vs. GG Homes,* in the Southern District of California, that the US Supreme Court's ruling in *Duguid vs. Facebook* does not apply at the motion to dismiss stage of the litigation, but it is more properly applied at the Rule 56 MSJ stage.

84. Plaintiff has never done business with Defendant or any of its employees.

85. Defendant's initial portion of each call shown above, was a violation of 47 USC §227(b)(1)(A) because it was initially a prerecorded artificial voice. That means the test of whether an ATDS was used is not relevant at this time.

86. Billions of illegal and harassing telemarketing calls are made to Americans each month. But for people like Plaintiff, it would be tens of billions of illegal and harassing telemarketing calls. Organizations like Defendant FREEDOM Forever need to be put out of business in order to stop this infection called telemarketing. Most Americans receive more spam texts

and more telemarketing calls than they do communications from friends and family.

87. Defendant FREEDOM Forever, through its employee Bouchy and other employees of Defendant, called Plaintiff to sell its loan products. The calls were not placed by an unknown third party. Defendant physically initiated the calls and physically sent the text message with their auto dialing software and equipment.

88. Since Plaintiff registered his personal private cellular phone, 619-719-9640, on www.donotcall.gov more than 31 days prior to the first call and the first text from Defendant, then Defendant's failure to scrub their calling lists against the DNC is a violation of 27 USC §227(c).

89. Defendant's illegal calls and illegal texts were and are the cause of Plaintiff damages, including statutory damages, which have been held to be sufficient damage and sufficient injury to pass Article III standing.

90. Defendant called Plaintiff's cellular telephone number, using an automatic telephone dialing system with a prerecorded artificial voice message introduction, without Plaintiff's prior express written consent, by robo-dialing Plaintiff's DNC registered phone number, devoid of any pre-existing or established business relationship. Further, Defendant FREEDOM Forever continued to seriously and substantially harass and annoy Plaintiff

after Defendant FREEDOM Forever was expressly and explicitly told to

cease and desist.

91. Since Defendant has failed to provide a copy of its DNC policies and

training procedures, within 30 days, then Defendant has violated the FCC

and FTC regulations that are incorporated into 27 USC §227.

### FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227(b)(1)(A) and (c)(5))**
**(Against Defendant FREEDOM Forever and Defendant BOUCHY)**

92. Plaintiff Ewing repeats and realleges paragraphs 1 through 91 of this

Complaint and incorporates them by reference.

93. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides

that "[n]o person or entity shall initiate any telephone solicitation" to "[a]

residential telephone subscriber who has registered her or her telephone

number on the national do-not-call registry of persons who do not wish to

receive telephone solicitations that is maintained by the federal

government."

94. Any "person who has received more than one telephone call within any 12-

month period by or on behalf of the same entity in violation of the

regulations prescribed under this subsection may" may bring a private action

COMPLAINT  1. 47 U.S.C. §227(B) & (C) (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 27

based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

95. Defendant FREEDOM Forever violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry participants (including Ewing) who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

96. Defendant FREEDOM Forever violated 47 U.S.C. § 227(c)(5) because Plaintiff received more than one telephone text message in a 12-month period made by or on behalf of Defendant FREEDOM Forever in violation of 47 C.F.R. § 64.1200, as described above.

97. Defendant FREEDOM Forever failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person signing that:

   (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing text messages using an automatic telephone dialing system; and

   (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

98. As a result of Defendant's conduct as alleged herein, Plaintiff suffered actual damages and, under section 47 U.S.C. § 227(c), is entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

99. Defendant FREEDOM Forever used an ATDS to both send text messages and to dial Plaintiff's phone number to play its artificial prerecorded voice message.

100.     By sending unsolicited text messages to Plaintiff's cellular telephone without prior express consent, and by utilizing an ATDS, Defendant FREEDOM Forever violated 47 U.S.C. § 227(b)(1)(A)(iii).

101.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff.

102.     Defendant FREEDOM FOREVER violated 47 USC §227(b)(1)(A) by using an artificial prerecorded voice message and by sending generic unsolicited text messages with an ATDS, for which Plaintiff is entitled to $500 for each negligent violation and $1500 for each willful or knowing violation.

103.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or

telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.'" The Report and Order, in turn, provides as follows:

"The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers."

104.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing call made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900

number or any other number for which charges exceed local or
long-distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request
by the subscriber to the contrary, a residential subscriber's do-not-
call request shall apply to the particular business entity making the
call (or on whose behalf a call is made), and will not apply to
affiliated entities unless the consumer reasonably would expect
them to be included given the identification of the caller and the
product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls
for telemarketing purposes must maintain a record of a consumer's
not to receive further telemarketing calls. A do-not-call request
must be honored for 5 years from the time the request is made.

105.     Here, Defendant FREEDOM Forever sent Plaintiff Ewing multiple
unsolicited text messages after he had submitted valid "STOP" and "BYE"
requests.

106.     As a result of Defendant's knowing and/or willful violations of 47
U.S.C. § 227 et seq., Plaintiff is entitled an award of $1,500.00 in statutory
damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B)
and 47 U.S.C. § 227(b)(3)(C).

## SECOND CLAIM FOR RELIEF
### Consumer Information Privacy Act
### (Violation of CA Penal Code §632.7 and §637.2)
### (Against Defendant FREEDOM Forever and Defendant BOUCHY)

107.    Plaintiff Ewing repeats and realleges paragraphs 1 through 91 of this Complaint and incorporates them by reference.

108.    The foregoing acts and omissions of Defendant FREEDOM Forever constitute numerous and multiple knowing and/or willful violations of California's Invasion of Privacy Act.

109.    As a result of Defendant's knowing and/or willful violations of PC §632.7 and §637.2, Plaintiff is entitled to statutory damages of $5,000 per call that was illegally recorded without Plaintiff's knowledge or consent.

110.    Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Ewing, individually, prays for the following relief:

a) Damages as provided by statute and in the discretion of the Court;

b) An award of actual and/or statutory damages and costs plus treble damages if willful or knowing violations are shown;

c) An order declaring that both Defendant's actions, as set out above, violate the

TCPA;

d) As a result of both Defendant's negligent violations of 47 U.S.C. §227(b)(1)

and §227(c)(5), Plaintiff is entitled to and requests $500 in statutory

damages, for each and every violation, pursuant to 47 U.S.C. 227(b)(3)(B)

plus treble damages ($1,500 per call and per text), a total of $3,000 per call

under the TCPA;

e) An injunction requiring both Defendants to cease all unsolicited calling activity

 that violates the TSR, the FTC Act and the TCPA, and to otherwise protect

the interests Plaintiff Ewing;

f) $5,000 for each call the was illegally recorded without Plaintiff's consent,

g) for exemplary and punitive damages against both Defendants in an amount to be determined with exactness at trial herein; and

h) Such further and other relief as the Court deems just and proper.

///

## JURY DEMAND

Plaintiff Ewing requests a jury trial as provided in the seventh Amendment to the United States Constitution.

Dated this 5th day of July, 2023.

/s/ Anton Ewing

Anton A. Ewing, Plaintiff

23cv

# EXHIBIT 'A'

# CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

This CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE (the "Agreement") is made and entered into as of May 4, 2021 (the "Effective Date"), by and between Anton Ewing ("Ewing"), on the one hand, and Brett Leon Bouchy, Greg Russell Albright and Freedom Forever, LLC (collectively, "Freedom Forever"), on the other hand. Ewing and Freedom Forever are referred to herein as the "Parties" and are the signing parties to this Agreement.

## RECITALS

**WHEREAS,** in 2019 and 2020, Ewing alleges that he received multiple telephone calls on his cellular telephone from Freedom Forever and its alleged agents;

**WHEREAS,** Ewing asserts that his personal cellular phone is protected by the National Do Not Call list and that there is no prior business relationship between him and Freedom Forever;

**WHEREAS,** Freedom Forever does not admit to any wrongdoing or unlawful act;

**WHEREAS,** Ewing asserts that shortly after receiving the call, he contacted Freedom Forever representatives to discuss a potential class action lawsuit against Freedom Forever.

**WHEREAS,** Ewing has filed a civil action entitled *Anton Ewing v. Freedom Forever, LLC, et al.*, filed as United States District Court, Southern District of California, Case No.: 20-CV-0880 JLS AHG (hereinafter referred to as "the Action"), seeking recovery under the Telephone Consumer Protection Act ("TCPA") and the California Invasion of Privacy Act ("CIPA") and alleging that Freedom Forever and/or its agents made phone calls to his cellular telephone and illegally obtained his information in violation of federal or state law;

**WHEREAS,** the Parties desire to compromise and settle fully and finally all claims by Ewing that were or might have been asserted against Freedom Forever in the Action, without any admission of liability or fault by either Party:

**THEREFORE,** in consideration of and in reliance upon only the representations made in this Agreement, and the covenants, terms and conditions contained herein, the Parties agree as follows:

## AGREEMENT

1.      **Recitals.** Each of the foregoing recitals constitutes a substantive provision of this Agreement and is incorporated into, and made a part of, the Parties' Agreement.

2.      **Consideration by the Freedom Defendants.** In full and final settlement of all claims that were or might have been asserted by Ewing against Freedom Forever in the Action, Freedom Forever agrees to pay Ewing a total sum of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓ (the "Settlement Payment"). Freedom Forever shall cause the Settlement Payment to be tendered via check and delivered to Ewing at 3077 Clairemont Drive #372, San Diego, CA 92117, within seven (7) days of the execution of this Agreement. The Settlement Payment shall be sent via Fedex or UPS overnight delivery. Ewing will not provide Freedom Forever with his social security number. Freedom Forever will not issue any 1099 to Ewing's social security number. Each party is responsible for their own tax obligations.

3.      **Dismissal of the Action and All Defendants with Prejudice.** Upon receipt of the full Settlement Payment, Ewing shall, within ten (10) business days, file a Stipulation of Dismissal of Freedom Forever with prejudice from the Action. Ewing will take all steps necessary to ensure that the Action is dismissed with prejudice.

4.      **Warranties and Representations.**

A.     Each Party represents and warrants to the other Party that the Party executing this Agreement: has all requisite power and authority to execute and deliver this Agreement on behalf of such Party; has had full and ample opportunity to conduct any and all required due diligence or investigation with respect to all matters pertinent to this Agreement; and has been advised by legal counsel with respect to the subject matter of this Action, this Agreement, and their attendant risks and benefits.

B.     Freedom Forever will use its best efforts to not knowingly hire or pay third party telemarketers to make calls to Ewing at the telephone numbers set forth below in Section 4.D.

C.     Freedom Forever represents that, to the best of its knowledge, it does not have Ewing's social security number and will not attempt to obtain the same for any unlawful purpose.

D.     Freedom Forever will use its best efforts to ensure that Freedom Forever and its agents and employees never call Ewing again at the following telephone numbers:  619-719-9640, 619-347-0726, 619-888-1296, 858-333-1962 and 619-798-2016.

E.     Freedom Forever will use its best efforts to not knowingly sell, give, transfer or provide Ewing's telephone numbers (listed in Section 4.D.) to any other person or entity for the purpose of enabling them to call to Ewing at the telephone numbers listed in Section 4.D.

F.     Ewing will use his best efforts to ensure that he never calls Freedom Forever or its agents and employees.  If Freedom Forever or its agents or employees call Ewing at any of the telephone numbers listed in Section 4.D. in response to a call or inquiry from Ewing, this will not be considered a breach of this Agreement.

G.     The Parties in this Action agree, warrant, and stipulate that they will not, orally or in writing, to any person through any medium, publicly or privately post, publish, make, or

express any comment, view, or opinion that criticizes, is adverse to, brings disrepute, derogates, defames, or disparages any other Party to this Agreement in any manner whatsoever.

H.      Ewing represents and agrees that he has not assigned or transferred any claims against Freedom Forever, and he agrees to indemnify, defend, and hold harmless Freedom Forever against any and all claims based on, arising out of, or in connection with any purported transfer or assignment of claims against Freedom Forever.

**5.      General Release of Freedom Forever.** Except as otherwise provided herein, Ewing, his affiliates, insurers, employees, agents, attorneys, representatives, successors, and assigns, hereby completely and irrevocably release Freedom Forever, together with Freedom Forever's successors, partners, associates, employees, attorneys, insurance carriers, heirs, parents, subsidiaries, assigns, agents and representatives, and its client's successors, partners, associates, employees, attorneys, insurance carriers, heirs, parents, subsidiaries, assigns, agents and representatives (collectively, the "Freedom Forever Releasees"), from any and all past, present, or future causes of action, claims, demands, obligations, liabilities, expenses, damages, costs, or losses, of whatever kind or nature, in law or equity, in tort or in contract, suspected to exist or not suspected to exist, anticipated or not anticipated, known or unknown, which have arisen, from the beginning of time to the Effective Date of this Agreement, including without limitation those that were or might have been asserted in the Action.

A.      As part of the foregoing general release, the Parties expressly acknowledge and agree that the releases contained in this Settlement Agreement include a waiver of all rights under Section 1542 of the California Civil Code, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE**

Page 4 of 10

**AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE
MATERIALLY AFFECTED HIS OR HER SETTLEMENT
WITH THE DEBTOR OR RELEASED PARTY.**

B.    The Parties further acknowledge that, as evidenced by the signatures below, they

have read all of this Agreement fully understand the Agreement and waiver of rights set forth in

Paragraph 5 of this Agreement.

6.    **Covenant Not to Sue and Future Obligations.**  Ewing hereby covenants that he

shall not commence or maintain (whether in a person, entity, or in a class capacity) any suit

against the Freedom Forever Releasees based upon the facts that were or could have been alleged

in the Action, whether at law or in equity.  Ewing, however, may respond to a valid and legally

enforceable subpoena or other discovery request in the most limited manner required by such

subpoena or request, provided that Freedom Forever is provided with notice of such subpoena or

discovery request.

7.    **No Admission of Liability.**  Nothing in this Agreement is or shall be construed as

an admission of liability with respect to any matter released hereby by any of the Parties named

herein, and any such alleged liability is expressly denied.  Freedom Forever specifically

disclaims any liability to, or wrongful acts or omissions against, Ewing or any other person, on

the part of themselves, their employees and agents, past and present.  This Agreement is a

compromise of disputed claims and is entered into knowingly and voluntarily by the Parties for

the sole purpose of settling all claims related to the Action without incurring costs related to

protracted investigation, discovery, and litigation.  Without limiting the generality of the

foregoing, the Parties acknowledge and agree that neither this Agreement nor anything contained

herein shall be admissible in connection with any subsequent litigation arising out of or related to

the Allegations (except as may be necessary for the enforcement of this Agreement).

8.    **Confidentiality and Non-Disclosure.**  The Parties and their counsel acknowledge, understand, and agree to keep the Agreement, its terms and existence, and all documents and things exchanged during settlement negotiations leading up to this Agreement (collectively, "Confidential Information") strictly confidential, and to not discuss or disclose Confidential Information or the names of the Parties to this Agreement to any other person or entity, except:

    (a)    As required by law or order of a court or other government authority;

    (b)    As required to enforce this Agreement;

    (c)    As a defense to an action to enforce this Agreement or in an action to which the terms of the Agreement may apply;

    (d)    To such Party's spouse, accountants, attorneys, employees, tax advisors, officers, directors, parents, subsidiaries, successors, affiliates, agents, consultants, vendors, contractors, auditors, lienholders, insurers, subrogors, and/or financial institutions for legitimate business purposes, provided that such persons are made aware of and agree to be subject to the confidentiality provisions of this Agreement;

    (e)    To any applicable taxing authority; and

    (f)    As required by a valid subpoena or legal demand.

The Parties and their counsel further agree that if they are required by legal process to disclose Confidential Information, they will provide any other Party to this Agreement with at least seven (7) days' notice prior to the required disclosure (or as much notice as practical if the disclosure is required in less than seven (7) days) so that the Party may seek an appropriate protective order or other appropriate relief.

9.    **Choice of Law.**  This Agreement is governed by, and shall be construed in accordance with, the laws of the State of California, without regard to any conflicts of laws provisions.  The parties agree that the choice of California law is reasonable and appropriate.

10.    **Successors and Assigns.** The provisions of this Agreement shall be binding upon and inure to the benefit of the Parties to this Agreement and their respective heirs, successors, and assigns.

11.    **Survivability.**

A.    It is understood and agreed that if any term or provision of this Agreement, or any application of any term or provision to any person, entity, circumstance, or situation, except for the General Release in Paragraph 5, is to any extent declared invalid or unenforceable, the remainder of this Agreement, and the application of such term or provision to any other person, entity, circumstance, or situation, shall not be invalidated or made unenforceable thereby. Any such invalid portion shall be deemed severable. It is the Parties' intent to have each term and provision of this Agreement be valid and enforceable to the fullest extent and with respect to all persons, entities, circumstances, and situations permitted by law and equity.

B.    It is also understood that no waiver or breach of any term of this Agreement shall be construed as a waiver or breach of another term. No waiver shall be binding unless in writing and signed by the waiving party. This Agreement may not be amended except in writing.

12.    **Integration.** Each Party acknowledges and agrees that this Agreement is a full, arms-length, final and complete settlement of all matters contained herein and that it supersedes all prior agreements between the Parties regarding the same subject matter. This Agreement may be modified, amended or changed only by an agreement in writing signed by authorized representatives of all of the Parties.

13.    **Joint Draftsmanship.** Counsel for the Parties jointly negotiated this Agreement and it shall be construed accordingly. The terms of this Agreement shall not be presumptively construed against any of the Parties or be otherwise subject to the doctrine of contra proferentem.

14.     **Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement. This Agreement shall be effective and finally executed when identical counterparts, which when taken together bear the signatures of all Parties, have been delivered to counsel or representatives for all the Parties, either by e-mail, facsimile, or overnight delivery service. Copies of all or part of this Agreement, including signatures thereto, which are transmitted by facsimile or by e-mail in .pdf or other electronic format, shall be presumed valid. The Parties agree that this Agreement may be transmitted by facsimile, electronic mail, or such similar device, and that the reproduction of signatures by facsimile, electronic mail, or such similar device will be treated as binding as if originals.

15.     **Attorney Fees.** If a dispute occurs regarding this Agreement the prevailing party shall be entitled to all reasonable attorney fees.

16.     **Jurisdiction to Enforce Agreement.** The Parties agree that only the United States District Court, Southern District of California shall have jurisdiction to enforce this Agreement.

17.     **Knowledge and Voluntary Consent.** The Parties acknowledge and agree that they have carefully read this Agreement, fully understand its meaning, intent, and terms, and have full knowledge of its legal consequences. Except as expressly set forth herein, neither Party has relied on any representations or statements by any other Party to this Agreement. Moreover, the Parties represent and warrant that they have sought or have had the opportunity to seek legal advice from an attorney regarding any terms that they did not understand. The Parties further represent and warrant that they executed this Agreement upon their own free will and choosing. No Party has been influenced, coerced, or induced to enter into this Agreement

Page 8 of 10

18.    **Further Assurances.**  The Parties shall execute, deliver and perform or cause to be executed, delivered, and performed any and all such further acts, deeds and assurances as may be reasonably required in order to fully carry out the terms of this Agreement.

*[Signatures to follow on the next page]*

**WE CERTIFY THAT WE HAVE READ THE FOREGOING AGREEMENT IN ITS ENTIRETY, INCLUDING CALIFORNIA** *CIVIL CODE* **§1542 CITED HEREIN, THAT I FULLY UNDERSTAND AND ACCEPT ALL OF THE LANGUAGE AND**

**PROVISIONS CONTAINED HEREIN AND THAT WE AGREE TO BE BOUND BY ALL OF THE TERMS AND PROVISIONS SET FORTH HEREIN.**

AGREED TO AND ACCEPTED BY:

DATED: ~~May~~ JUNE 4TH ___, 2021

By: _____
Anton Ewing

DATED: ~~May~~ June 4 ___, 2021

By: _____
~~Brett Leon Bouchy~~ Brett Bouchy

DATED: ~~May~~ June 4 ___, 2021

By: _____
~~Greg Russell~~ Albright

DATED: ~~May~~ June 4 ___, 2021

By: _____
~~Brett Bouchy, Chief Financial Officer~~
~~Freedom Forever, LLC~~
~~Best Company~~ Jessica Mae Sumikawa
General Counsel



# EXHIBIT 'B'

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ BA20220371383



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**STATEMENT OF INFORMATION**
**LIMITED LIABILITY COMPANY**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
| --- |
| **-FILED-** |
| File No.: BA20220371383 |
| Date Filed: 6/14/2022 |

**Entity Details**

| Limited Liability Company Name | FREEDOM FOREVER LLC |
| --- | --- |
| Entity No. | 201630210449 |
| Formed In | DELAWARE |

**Street Address of Principal Office of LLC**

| Principal Address | 43445 BUSINESS PARK DRIVE, SUITE 104 TEMECULA, CA 92590 |
| --- | --- |

**Mailing Address of LLC**

| Mailing Address | 43445 BUSINESS PARK DRIVE, SUITE 104 TEMECULA, CA 92590 |
| --- | --- |
| Attention | |

**Street Address of California Office of LLC**

| Street Address of California Office | 43445 BUSINESS PARK DRIVE, SUITE 104 TEMECULA, CA 92590 |
| --- | --- |

**Manager(s) or Member(s)**

| Manager or Member Name | Manager or Member Address |
| --- | --- |
| Brett Leon Bouchy | 43445 Business Park Drive, Suite 104 Temecula, CA 92590 |

**Agent for Service of Process**

| California Registered Corporate Agent (1505) | CORPORATION SERVICE COMPANY WHICH WILL DO BUSINESS IN CALIFORNIA AS CSC - LAWYERS INCORPORATING SERV Registered Corporate 1505 Agent |
| --- | --- |

**Type of Business**

| Type of Business | SOLAR SYSTEM INSTALLATION |
| --- | --- |

**Email Notifications**

| Opt-in Email Notifications | Yes, I opt-in to receive entity notifications via email. |
| --- | --- |

**Chief Executive Officer (CEO)**

| CEO Name | CEO Address |
| --- | --- |
| Brett Leon Bouchy | 43445 Business Park Drive, Suite 104 Temecula, CA 92590 |

**Labor Judgment**

No Manager or Member of this Limited Liability Company has an outstanding final judgment issued by the Division of Labor Standards Enforcement or a court of law, for which no appeal therefrom is pending, for the violation of any wage order or provision of the Labor Code.

B0826-6723  06/14/2022  2:45 PM Received by California Secretary of State

# EXHIBIT 'C'

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

```
                                    ┌─────────────────────────────┐
                                    │ ☒ FILED     ___ LODGED      │
                                    │ ___ RECEIVED ___ COPY       │
                                    │                             │
                                    │     MAR 2 2 2001            │
                                    │                             │
                                    │ CLERK U S DISTRICT COURT    │
                                    │ DISTRICT OF ARIZONA         │
                                    │ BY_____ DEPUTY   │
                                    └─────────────────────────────┘
```

SECURITIES AND EXCHANGE      )
COMMISSION,                  )
        Plaintiff,   )
                             )
    v.                        )    CIV-96-2629-PHX-SRB
                             )
BRETT L. BOUCHY, et al.,     )
                             )
                             )    __JUDGMENT__
        Defendants.      )

_____  **Jury Verdict.**  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

**XXXX**  **Decision by Court.**  This action came for consideration before the Court.  The issues have been considered and a decision has been rendered.

**IT IS ORDERED ADJUDGED** that this Court finds in favor of Plaintiff and against Defendants.

**FURTHER ORDERED** that Defendants Brett L. Bouchy and Richard C. Whelan, are permanently enjoined from any further violation of securities laws.

**FURTHER ORDERED** that Defendant Brett L. Bouchy is ordered to pay a fine in the amount of $50,000.

**FURTHER ORDERED** that Defendant Richard C. Whelan is ordered to pay a fine in the amount of $50,000.

*127*

**FURTHER ORDERED** this action is hereby terminated.


DATED at Phoenix, Arizona, this 22nd day of March, 2001.


                              RICHARD H. WEARE
                              DCE/Clerk of Court


                         By: _____
                                 Deputy Clerk


CIV-21 (7/94)



# Property Details

## Subject Property Location

| | | | |
|---|---|---|---|
| **Property Address** | 27050 VIA VANESSA | | |
| **City, State & Zip** | TEMECULA, CA 92590-3559 | | |
| **County** | RIVERSIDE COUNTY | **Property Use** | Single Family Residential |
| **Mailing Address** | 27050 VIA VANESSA, TEMECULA, CA 92590-3559 | **Parcel Number** | 936-210-004 |
| **Census Tract** | 0512.00 | **Latitude** | 33.494182 |
| Thomas Bros Pg-Grid | | **Longitude** | -117.192066 |

**Legal Description Details** Lot Number: 1 Brief Description: 10.43 ACRES NET IN PAR 1 PM 097/026 PM 16535

| | | | |
|---|---|---|---|
| **Primary Owner Name(s)** | BOUCHY, BRETT; BOUCHY, BRANDY DAIMWOOD | **Sale Price** | $3,150,000 |
| | | **Sale Date** | |
| | | **Recording Date** | 04/13/2022 |
| **Vesting** | Community Property (Marital Community) with Right of Survivorship | **Recorder Doc #** | 2022-0174405 |
| | | **Book/Page** | |

| | | | |
|---|---|---|---|
| **Primary Owner Name(s)** | BOUCHY, BRETT; BOUCHY, BRANDY DAIMWOOD | **Sale Price** | $3,150,000 |
| | | **Sale Date** | 04/12/2022 |
| | | **Recording Date** | 04/13/2022 |
| **Vesting** | Community Property (Marital Community) with Right of Survivorship | **Recorder Doc #** | 2022-0174405 |
| | | **Book/Page** | |

**Financing Details at Time of Purchase**

| | | | | |
|---|---|---|---|---|
| 1 | **Loan Amount** | $2,520,000 | **Origination Lender Name** | FRANKLIN LOAN CENTER |
| | **Loan Type** | Conventional | **Recording Doc #** | 2022-0174406 |

**Property Characteristics**

| | | | | | |
|---|---|---|---|---|---|
| **Bedrooms** | 1 | **Year Built** | 2018 | **Living Area (SF)** | 983 |
| **Bathrooms/Partial** | 1 | **Garage/No. of Cars** | Attached Garage/7 | **Price ($/SF)** | $3,204/SF |
| **Total Rooms** | | **Stories/Floors** | 1 Story | **Lot Size (SF/AC)** | 454,331/10.43 |
| **Construction Type** | Wood | **No. of Units** | | **Fireplace** | One Fireplace |
| **Exterior Walls** | | **No. of Buildings** | 2 | **Pool** | Pool (yes) - P |
| **Roof Material/Type** | Tile | **Basement Type/Area** | | **Heat Type** | Central |
| **Foundation Type** | | **Style** | | **A/C** | Central |
| **Property Type** | Residential | **View** | | **Elevator** | |
| **Land Use** | Single Family Residential | | | **Zoning** | RA5 |

**Assessment & Tax**

| | | | | | |
|---|---|---|---|---|---|
| **Assessment Year** | 2022 | **Tax Year** | 2022 | **Tax Exemption** | |
| **Total Assessed Value** | $1,152,350 | **Tax Amount** | $16,642.52 | **Tax Rate Area** | 82-016 |
| **Land Value** | $295,896 | **Tax Account ID** | 936210004 | | |
| **Improvement Value** | $856,454 | **Tax Status** | No Delinquency Found | | |
| **Improvement Ratio** | 74.32% | **Delinquent Tax Year** | | | |
| Total Value | | | | Market Improvement Value | |
| Market Land Value | | | | Market Value Year | |

Page 1