Anton A. Ewing (not an attorney)
3077 B Clairmont Drive, #372
San Diego, CA 92117
619-719-9640 (do not telemarket)



FILED

AUG 07 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          97N        DEPUTY

Plaintiff *pro se*

# UNITED STATES FEDERAL DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Anton A. Ewing, | Case No.: 23CV-1240 JLS (AHG) |
| Plaintiff, | |
| vs. | **FIRST AMENDED COMPLAINT**<br>**1. 47 U.S.C. §227(b) & (c) (TCPA)**<br>**2. PC §637.2 / 632.7 (CIPA)** |
| FREEDOM FOREVER, LLC, | |
| Defendant | |

Here we go again.  In 20-cv-00880-JLS-AHG, the named defendant signed a

settlement agreement wherein it promised, in a signed writing, that it would never

telemarket 619-719-9640 ever again[1].  It made that promise in front of the

Honorable Magistrate Judge Goddard.

Plaintiff Anton A. Ewing (herein "Plaintiff" or "Ewing") files this Civil

---

[1] Defendant also made the following promise which it just violated in the 8/4/2023 filing in this matter: "*The Parties in This Action agree, warrant, and stipulate that they will not, orally or in writing, to any person through any medium, publicly or privately post, publish, make, or express any comment, view, or opinion that **criticizes, is adverse to, brings disrepute, derogates, defames, or disparages any other Party to this Agreement in any manner whatsoever.*"

FIRST AMENDED COMPLAINT   1. 47 U.S.C. §227(B) & (C) (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 1

23cv1240

Complaint ("Complaint") for money damages and injunctive relief, demanding a trial by jury, against Defendant Freedom Forever, LLC, (herein "Freedom Forever") that is registered to do business in California with the Secretary of State, to stop said defendant further breaching its contract and from violating the Telephone Consumer Protection Act and the Telemarketing Sales Rule by sending telemarketing text messages and calling with prerecorded artificial voice messages to Plaintiff's personal residential **cellular** phone (ending in -9640), which is registered on www.donotcall.gov (the National Do Not Call Registry) without permission and without consent of Plaintiff.   Plaintiff Ewing, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, including investigation conducted by Plaintiff[2].  Plaintiff is suing to stop Defendant's practice of sending text messages and calls using an "automatic telephone dialing system" ("ATDS") to the cellphones of consumers in San Diego county (including Plaintiff's -9640 cell phone) without their prior express consent by obtaining an injunction prohibiting violation of the TCPA (Title 47 United States Code); (2) stop Defendant's practice of sending repeated text messages to consumers on the National Do Not Call Registry, which includes Plaintiff; (3)

_____

[2] See 21cv-01764-GPC-BLM at PageID.1 in ECF No. 1, *Trujillo vs. Encore Live, LLC*
FIRST AMENDED COMPLAINT   1. 47 U.S.C. §227(B) & (C) (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 2

23cv1240

obtain an injunction prohibiting Defendant's continued illegal efforts to send text messages and make harassing calls to consumers, including Plaintiff; and (4) obtain redress for Plaintiff Ewing who was injured by Defendant's conduct.

### PARTIES

1. Plaintiff Anton A. Ewing is a natural person as defined by 47 USC §153(39), and a resident of San Diego, California at all times relevant to this action. Plaintiff was present in San Diego at all times relevant to this action and was also the owner and sole user of personal, private residential cellular phone number 619-719-9640[3].

2. Freedom Forever, LLC is a "person" as defined by 47 USC §153(39).

3. Attorney Barry Goheen asserts in his latest filing that Defendant is a "fortune 5000" company. What he failed to disclose is the inc.com 5000 list is a self-serving, personal assertion web page. It literally means nothing and no data is verified. The "fact" of being on this bogus list is truly absurd and ridiculous. Perhaps Mr. Goheen should have looked that up before protesting so much.

---

[3] For clarity, this number is not a hardwired landline.

FIRST AMENDED COMPLAINT   1. 47 U.S.C. §227(B) & (C) (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 3

23cv124(

4. Brett L. Bouchy got into a pickle with the SEC when he was brought to justice for securities fraud by the Honorable Senior District Judge Susan R. Bolton in Arizona. *See* docket number 127 filed on 3/22/2001 in 96CV2629.  Bouchy was also sued for fraud[4] in the Central District of California in case number 14CV-1965. *See* also https://www.sec.gov/news/digest/08-12.txt.  Mr. Bouchy; however, is probably a very nice person and an all-around good guy. *See* also https://brokercheck.finra.org/individual/summary/1978796  He appeared very pleasant in the youtube videos that he created wherein he admitted to using an auto dialer to scale up his company.

5. Plaintiff has been repeatedly <u>called</u> and <u>texted</u> by FREEDOM FOREVER directly, without consent, permission or authority, all in direct violation of express commands by Plaintiff to stop, cease and desist and by virtue of registration on www.donotcall.gov as well as Plaintiff's express demands directly to Defendant FREEDOM Forever's employees to stop all future calls and texts.

---

[4] https://focuslawla.com/football-rock-roll-alleged-fraud/

FIRST AMENDED COMPLAINT   1. 47 U.S.C. §227(B) & (C) (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 4

23cv1240

6. Defendant Freedom Forever is a limited liability company that conducts business throughout this District, in San Diego, California even though conducting such business is illegal and unauthorized under California state law[5]. Defendant FREEDOM FOREVER is owned, operated, controlled and managed solely by Brett Bouchy. Defendant is in the business of selling solar panel scams through his vast telemarketing operation which has caused his company to be sued for TCPA violations multiple times.

7. https://freedomforever.com/why-go-solar/states/california/ is a web page wherein Defendant obtains consent from potential customers to use Defendant's auto dialers to call. Defendant is here admitting and confessing that it uses an ATDS to make calls and sent texts.

   a. "By submitting my contact information including my telephone number above, I authorize Freedom Forever LLC and its subsidiaries, its Independent Authorized Dealers, Bright Solar Marketing, and/or its affiliates to contact me via telephone calls and/or text messages (SMS), using **automated dialing technology**[6] for

---

[5] It is a violation of CA Civ.Code §1770(a)(22)(A) to use a prerecorded message in telemarketing.
[6] The Court is requested to take judicial notice of this under Evidence Rule 201.

FIRST AMENDED COMPLAINT   1. 47 U.S.C. §227(B) & (C) (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 5

23cv124(

marketing/advertising purposes. No purchase required. Message and data rates may apply."

8. Defendant would not need to get permission to use "automated dialing technology" if they did not use and employee such equipment.  The reason Defendant is attempting to obtain permission to use an auto dialer is because they use auto dialers. *Res ipsa loquitur*.  Mr. Goheen knows this and yet he failed to be candid with the Court.  Perhaps Mr. Goheen thinks that his deceit is protected by the attorney-client privilege.  Mr. Goheen is reminded of the Erie doctrine[7] and that this case is before the district court on federal question jurisdiction and not diversity, which means that the Magistrate gets to see all the allegedly privileged communications *in camera*.

9. Brett Bouchy confesses that he uses an automated dialing system ("Light Speed") to make its calls at:

https://www.youtube.com/watch?v=2IFQ7sHIwcE

10. Defendant failed to provide, file or produce any declaration, under oath, when it filed its vituperative motion to dismiss on 8/4/2023.  If Bouchy and Freedom Forever do not use and employ an ATDS, then he could have

---

[7] *Erie Railroad Co. v. Tompkins* (1938). Rules Decision Act of 1789, codified as 28 USC §1652.

FIRST AMENDED COMPLAINT   1. 47 U.S.C. §227(B) & (C) (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 6

23cv1240

easily drafted, signed and filed such a declaration.  But Bouchy glaringly did not, and neither did anyone else at his company.  Mr. Goheen also failed to put his declarations under oath.  The only logical assumption is because doing so would have constituted felony perjury.  This does not imply that Bouchy or Goheen are honest and truthful individuals.  Goheen is withdrawing his PC §632 assertion about "confidential communications" and Bouchy's fraud and SEC violations are found in the attached exhibits.

11. The LLC named herein is a complete sham and the alter ego of Brett Bouchy (herein "Bouchy").  Bouchy is personally liable for the illegal acts and actions set forth in this complaint based on the laws that were violated and based on the written agreement that was signed on June 4, 2021.

12. BOUCHY is hereby put on notice that Plaintiff will also move the Court to pierce the entity defendant's veil and hold BOUCHY and his co-owners, if any, personally liable for the judgment in this matter.

13. Defendant FREEDOM Forever called Plaintiff in direct violation of the TCPA and the contract it signed, devoid of prior consent, in order to solicit Plaintiff to purchase Defendant FREEDOM Forever's solar panel services.  The violating calls are set forth in detail below, including the date, time, from what number and to which number.  That is all that is required under

FIRST AMENDED COMPLAINT   1. 47 U.S.C. §227(B) & (C) (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 7

23cv124(

the TCPA to state sufficient facts to support that this defendant actually called Plaintiff.

14. Often times, telemarketers will use a fake name and will spoof a fake phone number in order to evade TCPA lawsuits.   That is exactly what Defendant FREEDOM Forever has instructed, ordered and commanded its employees[8] to do.   Mr. Goheen asserts that this is somehow impossible.  It is not.  It is what telemarketers do and it is what Defendant has done.

15. The following youtube.com video made by Defendant confesses that all of their workers are W-2 employees.

https://www.youtube.com/watch?v=XCwiVII7CzM

16. Thus, all of the callers and calls were from and made by employees of Defendant with Defendant's fancy rodo-dialing software that Bouchy publicly admits to creating in his Youtube video.

17. "Bouchy," as an employee of Defendant FREEDOM Forever, is a legal agent of Defendant FREEDOM Forever and his actions are the actions of Defendant FREEDOM Forever.

---

[8] Tony Denner, Nick Fernandez, Brett Bouchy to name a few.

FIRST AMENDED COMPLAINT   1. 47 U.S.C. §227(B) & (C) (TCPA)    2. PC §637.2 / 632.7 (CIPA) - 8

23cv1240

**18.** *Hoffman v. Cenlar Agency, Inc.*, No. 12cv414 L (NLS), 2013 U.S. Dist. LEXIS 43860 (S.D. Cal. Mar. 27, 2013) is strictly, solely and only a land-line case[9] under PC §632 (in fact it was a call to a law firm and the secretary answered the office phone). It is a cellular phone case under PC §632**.7**. This is not a PC §632 land line case. As such, no "confidential communications" are required to establish CIPA liability. Plaintiff is keeping this paragraph in the FAC so that Mr. Goheen is reminded to obey Rule 11.

**JURISDICTION AND VENUE**

19. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"). This is not a "diversity of citizenship" case. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). Federal law is allowed to be decided by federal judges.

20. This Court has personal jurisdiction over the Defendant since Defendant conducts business in this District and specifically marketed to Plaintiff within this District relating to the business that it conducts here. Venue is

---

[9] The Court is requested, pursuant to FRE 201, to take judicial notice of the indisputable fact that *Hoffman* is a land-line only case and not a cellular phone case and nowhere in that Complaint is PC §632.7 ever even mentioned.

FIRST AMENDED COMPLAINT   1. 47 U.S.C. §227(B) & (C) (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 9

23cv124(

proper in this District because Plaintiff resides in this District and the events leading to this case occurred in this District.  Moreover, the settlement agreement consents to jurisdiction in the Southern District of California.

21. The Court has ancillary and supplemental jurisdiction, in its discretion, over the attendant state law claims that are part of a common nucleus of operative facts.  Plaintiff is suing for violation of CIPA, PC §632.7 et seq. – illegal **cell phone** recording, without consent.  CIPA is only being applied, in this matter, to cellular calls and not to text messages alleged herein and only to cellular phones and not to land lines.  Mr. Goheen in encouraged to read this paragraph over and over again until he fully understands it.

## INTRODUCTION

22. The initial part of the call was a prerecorded voice, then Defendant FREEDOM Forever's employee[10] "Bouchy" admitted to Plaintiff, at the end of the 6/2/2023 telemarketing call, when asked by Plaintiff, that Defendant FREEDOM Forever does in fact record all of its solicitation calls.  Bouchy transferred the call to a male person who attempted to justify the illegal act of recording by adding that they record for "training purposes" but that

_____

[10] This is not a 3rd party.  Rather, an employee is the actor by which the corporation engages.  The acts of an employee are the acts of the defendant corporation.

FIRST AMENDED COMPLAINT   1. 47 U.S.C. §227(B) & (C) (TCPA)    2. PC §637.2 / 632.7 (CIPA) - 10

23cv1240

additional fact is not an excuse for violating CIPA and does not afford the requisite consent. Any and all calls into California phone numbers must disclose, at the beginning of the call, that said call is being recorded. Waiting until the very end of the call to admit, when asked, that it was recorded is too late. Cellular phones do not require confidential private information to be exchanged to be protected by CIPA as clearly shown in PC §632.7. This is not a PC §632 land line case. Mr. Goheen is on notice of this allegation and on notice of the law on point.

23. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

**COMMON ALLEGATIONS**

24. Defendant Freedom Forever has violated its own corporate charter which authorizes only "lawful acts or activity." Telemarketing is illegal and it is a criminal act under 47 USC §501.

25. Defendant FREEDOM Forever conducts telemarketing campaigns to sell its services to consumers throughout southern California. As part of those campaigns, unsolicited text messages are sent to cell phones of consumers

across the state by Defendant FREEDOM Forever   Plaintiff can assert and allege this detailed fact because Defendant's employee, Bouchy, expressly admitted it.  If Mr. Bouchy wants to produce the illegal recordings to either prove or disprove this allegation, he is strongly encouraged to do so.

26. In placing unsolicited text messages to consumers, Defendant FREEDOM Forever sent multiple text messages to phone numbers that are registered on the DNC, such as Plaintiff's number (-9640).

27. In response to these text messages, Plaintiff Ewing files this lawsuit seeking injunctive relief requiring Defendant FREEDOM Forever to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to Plaintiff Ewing and costs ($402 filing fee plus service of process fees).  The text messages were generic in nature and did not address Plaintiff by name.  The text message did not offer a way to opt out or to stop future solicitation texts.

28. Plaintiff Ewing heard a very clear "bubble popping" type sound followed by a rather long pause before the artificial-voice prerecorded message began to play on the call.  Plaintiff was required to hit "1" to be transferred to a live operator.  This happened on each and every call that is the subject of this lawsuit.  Many courts have held that this very same bubble popping and long pause are highly indicative of an ATDS being used.  However, the

FIRST AMENDED COMPLAINT   1. 47 U.S.C. §227(B) & (C) (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 12

23cv1240

Defendant failed to comprehend that it is also violation of section 227(b)(1)(A) to use, and Defendant FREEDOM Forever did in fact use, an artificial pre-recorded voice message to obtain a subsequent transfer to a live operator employee of Defendant FREEDOM Forever after Plaintiff was required to press "1" to be transferred.

29. Specifically, the hardware and software used by Defendant FREEDOM Forever has the capacity to store and/or produce numbers using a random or sequential number generator, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant FREEDOM Forever's automated dialing equipment includes features substantially similar to a predictive dialer in that it is capable of sending numerous text messages and calls simultaneously, without human intervention. The distinct bubble-popping sound and the long silent pause were, in Plaintiff's vast experience, the clear indication that an ATDS robo-dialer was used by Defendant FREEDOM Forever for the calls.

30. The text messages were sent by Defendant FREEDOM Forever with its knowledge and approval of Mr. Bouchy. Defendant FREEDOM Forever knew about the messages, received the benefits of the messages, directed that the messages be sent, and/or ratified the sending of the messages by its employees using Defendant's computers and software. The text messages

were generic which indicates an ATDS was used by Defendant FREEDOM Forever.

31. All of the text messages were sent via an ATDS at the direction and oversight of Defendant FREEDOM Forever.  Defendant knew about, directed, ratified, and benefitted from the solicitation text messages that it directly sent to Plaintiff.

32.  Based on Plaintiff's vast knowledge and experience with these types of telemarketers, and on advice of Jeff Hansen who is a TCPA expert witness, the equipment used to send the texts at issue has the capacity to use a random or sequential number generator in the process of producing and storing numbers from a pre-produced list for texting at a later date.[11] Plaintiff alleges that this is exactly what Defendant FREEDOM Forever has done.

33. The equipment at issue, in this case, also has the capacity to produce telephone numbers using a random or sequential number generator. Specifically, the texting software, by virtue of being inextricably linked to a computer operating system, has the capacity to generate random or

---

[11] 21-cv-01646-L-BLM, PageID.6, ECF No. 1, *Williams vs. Zeeto, LLC* (SD CA 9/20/21)
FIRST AMENDED COMPLAINT   1. 47 U.S.C. §227(B) & (C) (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 14

sequential telephone numbers.  One of Defendant FREEDOM Forever's

employees, Bouchy, expressly admitted that they were using an "auto

dialing computer[12]" to make the calls and send out the text messages in order

to get California residents to buy their solar panel programs.  The bubble

popping sound at the beginning of the calls were a dead give-away that this

defendant is, again, using and employing an auto dialer (aka robo-dialer).

34. By sending unsolicited text messages as alleged herein, Defendant

FREEDOM Forever has caused Plaintiff actual harm. This includes the

aggravation, nuisance, and invasions of privacy that result from the

placement of such text messages, in addition to the wear and tear on his

phone, interference with the use of his phone, consumption of battery life,

loss of value realized for monies he paid to his AT&T carrier for the receipt

of such messages, and the diminished use, enjoyment, value, and utility of

his telephone plan.

35. FCC regulations promulgated under the TCPA specifically prohibit

Defendant from using an artificial or prerecorded voice to call Plaintiff's

---

[12] Or "auto dialing software" or words to that affect.

Number for the purpose of advertising or telemarketing absent Plaintiff's

prior express written consent. See 47 C.F.R. § 64.1200(a)(2)[13]

## PLAINTIFF EWING'S ALLEGATIONS DIRECTLY AGAINST

## DEFENDANT FREEDOM FOREVER

36.  Defendant Freedom Forever called or texted Plaintiff Ewing, on his DNC

registered personal cell phone, 619-719-9640, on the following dates:

    a.  April 30, 2023 from 925-247-8772 at 11:19 AM – Call

    b.  May 1, 2023 from 925-247-8772 at 11:39 AM – Call

    c.  May 16, 2023 from 619-710-0767 at 10:56 AM – Call

    d.  May 30, 2023 from 619-710-0767 at 7:53 AM - Call

    e.  June 1, 2023 from 619-710-0767 at 11:36 AM – Call

    f.  June 1, 2023 from 850-781-6303 at 11:49 AM – Call – Nick

       Fernandez as a "master dealer" at Hakuna Matata Energy for Freedom

       Forever.

    g.  June 2, 2023 from 888-557-6431 at 2:00 PM – Call.

---

[13] 21-cv-02040-CAB-KSC, PageID.4 in ECF No. 1, *Johnson vs. Digital Media Solutions.*

FIRST AMENDED COMPLAINT   1. 47 U.S.C. §227(B) & (C) (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 16

23cv1240

37. The above dates, times, from what number and to what number is all the detail that is required under the TCPA.  Nothing else is necessary at the initial pleading stage.  *See* Rule 8 and Rule 10, FRCP.

38. Plaintiff recently attempted to call 925-247-8772 and there was no answer.  Then Plaintiff put this number into www.Google.com and the top link was for "Solar with Tony" https://www.facebook.com/Tonyyoursolarguy/.  Upon further research, Tony is "Tony Denner" who works as a direct sales representative for both Freedom Forever and for Powur (another solar installer).   While Mr. Goheen might be correct about Tony working for Powur, the reality is that Tony also refers his leads to Freedom Forever, because that is what Tony said on the phone.

39. There was also a "Tyler" that called and he said that he was a "master dealer" for Freedom Forever.  Mr. Goheen has a copy of that recording.  It's just too bad that he failed to disclosure that to the District Judge when he filed his deceitful and vituperative[14] motion to dismiss.

40. Nick Fernandez also called and emailed the following link after the call:  https://g.co/kgs/je4H8T, which goes to

_____

[14] Bouchy expressly agreed in the signed settlement that he would never disparage Ewing ever again.  The Bouchy hired Goheen to engage in the dishonorable and disgusting conduct found in the MTD.

FIRST AMENDED COMPLAINT   1. 47 U.S.C. §227(B) & (C) (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 17

https://www.google.com/localservices/prolist?spp=Cg0vZy8xMWpwMTk4

Z244&src=2&slp=UhUIARIREg8iDS9nLzExanAxOThnbjg which is a

Freedom Forever web page.  How Mr. Goheen can assert that Defendant did

not telemarket Plaintiff is truly bizarre and deceitful.

41. There were, thus far, 7 calls (($1,500 + $1,500 +$5,000) times 7 = $56,000))

from Defendant FREEDOM Forever.  Plaintiff is also suing for all of the

prior calls since Defendant, pursuant to Civil Code §1439, cannot enforce

that agreement now.

42. Each caller (not texter) asked Plaintiff the following personal questions: (1)

have you ever filed for bankruptcy, (2) what is your home address, (3) what

is your credit FICO score, (4) is there shad on your roof from trees, (5) how

much do you pay each month for electricity, and (6) how many kilowatts do

you use each month.  These questions were personal in nature and the

responses were confidential information.

43. Defendant FREEDOM Forever's employee Bouchy admitted to Plaintiff

that he did not dial Plaintiff's phone number by finger, but rather using a

computer software that generates, stores and automatically dials the phone

numbers without any input from him.  "Bouchy" stated that once a person

hit's "1" then the software connects or transfers the call to either him or

another telemarketer in the office.

44. For clarity purposes, BOUCHY is the person who is guiding, controlling, managing and orchestrating all of the FREEDOM Forever corporate actions complained of herein.

45. Replying "STOP" did not work to prevent and prohibit additional texts. Plaintiff received additional subsequent text messages from Defendant FREEDOM Forever.  Additionally, Plaintiff became upset on each telephone call making very clear that the caller must never telemarket him (Plaintiff) ever again.

46. As to any and all outside or third-party telemarketing complained of herein, Bouchy, through Freedom Forever, has hired, controlled and directed all aspects of the telemarketing operations, including what auto dialer they may use, what the script must say and what information must be collected to get paid their commission from Bouchy.

47. The pre-recorded voice message at the beginning of each telephone solicitation call from Defendant (not a 3rd part or agent) stated: "*Are your electric bills too high.  Do you want to go solar and never pay another utility bill ever again?  Press one to be connected to one of our solar experts*" or similar words to that affect.  The TCPA does not require a plaintiff to be able to memorize and regurgitate every word that every telemarketer states.

48. Plaintiff sent attorney Barry Goheen an audio recording of one recent telemarketing call from Defendant.  That call expressly discloses the fact that Plaintiff was recording in the beginning of the call which the caller agreed to.  Plaintiff makes this assertion and this disclosure in the hopes that Mr. Goheen will cease and desist with his completely unprofessional and derogatory remarks directed at Ewing.  Mr. Goheen has reviewed the audio file because he forwarded it to Steven Wyson at stwysong@freedomforever.com.

49. At paragraph 4B of the signed settlement agreement, Freedom Forever promised that it "will use its best efforts to not knowingly hire or pay third party telemarketers to make calls to Ewing…."

50. At paragraph 4D of the signed settlement agreement, Freedom Forever promised that it "will use its best efforts to ensure that Freedom Forever and its agents and employees never call Ewing again…."

51. At paragraph 4E of the signed settlement agreement, Freedom Forever promised that it "will use its best efforts to not knowingly sell, give, transfer or provide Ewing's telephone numbers (listed in Section 4.D.) to any other person or entity for the purpose of enabling them to call to Ewing…."  In the audio call that Plaintiff sent to Mr. Goheen it clearly discloses that the called received the number from Defendant.

52.. In paragraph 4G of the signed settlement agreement, Defendant stated that is will: "agree, warrant, and stipulate that they will not, orally or in writing, to any person through any medium, publicly or privately, post, publish, make or express any comment, view or opinion that criticizes, is adverse to, bring disrepute, derogates, defames, or disparages any other Party to this Agreement in any manner whatsoever." Defendant made a material breach of the agreement both when it called Ewing and when Goheen filed Defendant's disgusting Motion to Dismiss on 8/4/2023 in this matter. Civil Code 1439 prohibits Defendant from now enforcing the terms of the agreement dated June 4, 2021.

53. Plaintiff Ewing registered his cell phone number on the DNC on February 16, 2012, for the express purpose that he would not receive unsolicited calls or text messages. Plaintiff Ewing has gone even further to pay for various web pages informing the world of telemarketers to not call him or else they will be sued.

54. Plaintiff Ewing's phone number is not associated with a business and is used for personal, private residential use only. Notwithstanding, mixed use phones are still fully protected.

55. The text messages that Plaintiff received are solicitations encouraging the purchase of Defendant FREEDOM FOREVER's services.

FIRST AMENDED COMPLAINT  1. 47 U.S.C. §227(B) & (C) (TCPA)    2. PC §637.2 / 632.7 (CIPA) - 21

23cv1240

56. The text messages were sent by Defendant FREEDOM Forever. The text messages were sent at Defendant FREEDOM Forever's direction, command and control, that is, Defendant ordered each of its employees to respond to the calls that it made after it sent out the automatic solicitations.

57. Defendant FREEDOM Forever expressly and overtly controlled the exact generic content of the text messages.

58. The text messages, unlike the emails, did not address Plaintiff by name. Thus they were sent by, with and through an automatic telephone dialing system or robo-dialer.

59. Said dialing system has the capacity to store and randomly generate phone numbers and to dial those numbers without human intervention.

60. Plaintiff Ewing never provided his phone number or his consent to Defendant FREEDOM Forever to receive any solicitation from them. Prior to receiving the text messages, Plaintiff had never visited any location or internet web page owned, used, or controlled by Defendant FREEDOM Forever.

61. The phone calls placed to Plaintiff's cellular telephone were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. §227 (a)(1) as prohibited by 47 U.S.C. § 227 (b)(1)(A). At one or more

instance during these calls, Defendant FREEDOM Forever utilized an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

62. Plaintiff is not a customer of Defendant's services and has never provided any personal information, including his cellular telephone number, to Defendant FREEDOM Forever for any purpose whatsoever.  In addition, Plaintiff told Defendant FREEDOM Forever at least once to stop contacting him and Plaintiff has been registered on the Do-Not-Call Registry for at least thirty (30) days prior to Defendant FREEDOM Forever contacting him.

63. Defendant FREEDOM Forever did not make the telephone solicitations in error.

64. Defendant's initial portion of each call shown above, was a violation of 47 USC §227(b)(1)(A) because it was initially a prerecorded artificial voice. That means the test of whether an ATDS was used is not relevant at this time.

65. Defendant FREEDOM Forever, through its employee Bouchy and other employees of Defendant, called Plaintiff to sell its solar panel products.  The calls were not placed by an unknown third party.  Defendant physically initiated the calls and physically sent the text message with their auto dialing software and equipment.

66. Since Defendant has failed to provide a copy of its DNC policies and training procedures, within 30 days, then Defendant has violated the FCC and FTC regulations that are incorporated into 27 USC §227.

## FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227(b)(1)(A) and (c)(5))**
**(Against Defendant FREEDOM Forever)**

67. Plaintiff Ewing repeats and realleges paragraphs 1 through 66 of this Complaint and incorporates them by reference.

68. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

69. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect

telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

70. Defendant FREEDOM Forever violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry participants (including Ewing) who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

71. Defendant FREEDOM Forever violated 47 U.S.C. § 227(c)(5) because Plaintiff received more than one telephone text message in a 12-month period made by or on behalf of Defendant FREEDOM Forever in violation of 47 C.F.R. § 64.1200, as described above.

72. Defendant FREEDOM Forever failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person signing that:

    (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing text messages using an automatic telephone dialing system; and

    (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

23cv1240

73. As a result of Defendant's conduct as alleged herein, Plaintiff suffered actual damages and, under section 47 U.S.C. § 227(c), is entitled, *inter alia,* to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

74. Defendant FREEDOM Forever used an ATDS to both send text messages and to dial Plaintiff's phone number to play its artificial prerecorded voice message.

75. By sending unsolicited text messages to Plaintiff's cellular telephone without prior express consent, and by utilizing an ATDS, Defendant FREEDOM Forever violated 47 U.S.C. § 227(b)(1)(A)(iii).

76. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff.

77. Defendant FREEDOM FOREVER violated 47 USC §227(b)(1)(A) by using an artificial prerecorded voice message and by sending generic unsolicited text messages with an ATDS, for which Plaintiff is entitled to $500 for each negligent violation and $1500 for each willful or knowing violation.

78. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, '*Rules and*

*Regulations Implementing the Telephone Consumer Protection Act of 1991.*'" The Report and Order, in turn, provides as follows:

"The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers."

79. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing call made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long-distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

80. Here, Defendant FREEDOM Forever sent Plaintiff Ewing multiple unsolicited text messages after he had submitted valid "STOP" and "BYE" requests.

81. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

**SECOND CLAIM FOR RELIEF**
**Consumer Information Privacy Act**
**(Violation of CA Penal Code §632.7 and §637.2)**

**(Against Defendant FREEDOM Forever)**

82. Plaintiff Ewing repeats and realleges paragraphs 1 through 66 of this Complaint and incorporates them by reference.

83. The foregoing acts and omissions of Defendant FREEDOM Forever constitute numerous and multiple knowing and/or willful violations of California's Invasion of Privacy Act.

84. As a result of Defendant's knowing and/or willful violations of PC §632.7 and §637.2, Plaintiff is entitled to statutory damages of $5,000 per call that was illegally recorded without Plaintiff's knowledge or consent.

85. Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Ewing, individually, prays for the following relief:

a) Damages as provided by statute and in the discretion of the Court;

b) An award of actual and/or statutory damages and costs plus treble damages if willful or knowing violations are shown;

c) An order declaring that both Defendant's actions, as set out above, violate the TCPA;

d) As a result of both Defendant's negligent violations of 47 U.S.C. §227(b)(1) and §227(c)(5), Plaintiff is entitled to and requests $500 in statutory

damages, for each and every violation, pursuant to 47 U.S.C. 227(b)(3)(B) plus treble damages ($1,500 per call and per text), a total of $3,000 per call under the TCPA;

e) An injunction requiring both Defendants to cease all unsolicited calling activity that violates the TSR, the FTC Act and the TCPA, and to otherwise protect the interests Plaintiff Ewing;

f) $5,000 for each call the was illegally recorded without Plaintiff's consent,

g) for exemplary damages against Defendant in an amount to be determined with exactness at trial herein; and

h) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Ewing requests a jury trial as provided in the seventh Amendment to the United States Constitution.

Dated this 7th day of August, 2023.

/s/ Anton Ewing

_____

Anton A. Ewing, Plaintiff

FIRST AMENDED COMPLAINT   1. 47 U.S.C. §227(B) & (C) (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 31

23cv124(

# PROOF OF SERVICE

I, Anton Ewing, am over 18, a pro per plaintiff in this matter.  I have filed this First Amended Complaint and had it served on Defendant as follows:

**3:23-cv-1240 JLS AHG  Notice has been electronically mailed to:**

I have also emailed a copy of this document to Defendant directly at the email address he uses to communicate with me at:

NA

Additionally I mailed this pleading, first class postage prepaid, to:

Freedom Forever, LLC and Brett Leon Bouchy
**Robbie Lee Phillips, Esq.**
Fisher Broyles, LLP
5670 Wilshire Boulevard, Suite 1800
Los Angeles, CA 90036

All ECF users in this case have been served with a true and accurate copy via email from the CM/ECF system.  All CM/ECF members agree and consent to service via email from CM/ECF.

I swear under penalty of perjury that the above was served as stated.

Dated: August 7, 2023

/S/ Anton Ewing
Anton Ewing

PLAINTIFF'S DECLARATION- 1

23CV1240

EXHIBIT 'A'



**BrokerCheck Report**

BRETT LEON BOUCHY

CRD# 1978796

www.finra.org/brokercheck



# FINRA

## Dear Investor:

FINRA has generated the following BrokerCheck report for BRETT LEON BOUCHY. The information contained within this report has been provided by a FINRA member firm(s) and securities regulators as part of the securities industry's registration and licensing process and represents the most current information reported to the Central Registration Depository (CRD®) system.

FINRA regulates the securities markets for the ultimate benefit and protection of the investor. FINRA believes the general public should have access to information that will help them determine whether to conduct, or continue to conduct, business with a FINRA member or any of the member's associated persons. To that end, FINRA has adopted a public disclosure policy to make certain types of information available to you. Examples of information FINRA provides on currently registered individuals and individuals who were registered during the past two years include: actions by regulators, investment-related civil suits, customer disputes that contain allegations of sales practice violations against brokers, all felony charges and convictions, misdemeanor charges and convictions relating to securities violations, and financial events such as bankruptcies, compromises with creditors, judgments, and liens. FINRA also provides certain information on individuals whose registrations terminated more than two years ago.

The information in this report is not the only resource you should consult. FINRA recommends that you learn as much as possible about the individual broker or brokerage firm from other sources, such as professional references, local consumer and investment groups, or friends and family members who already have established investment business relationships.

FINRA BrokerCheck is governed by federal law, Securities and Exchange Commission (SEC) regulations and FINRA rules approved by the SEC. State disclosure programs are governed by state law, and may provide additional information on brokers and firms licensed by the state. Therefore, you should also consider requesting information from your state securities regulator. Refer to www.nasaa.org for a complete list of state securities regulators.

Thank you for using FINRA BrokerCheck.



Using this site/information means that you accept the FINRA BrokerCheck Terms and Conditions. A complete list of Terms and Conditions can be found at brokercheck.finra.org



For additional information about the contents of this report, please refer to the User Guidance or www.finra.org/brokercheck. It provides a glossary of terms and a list of frequently asked questions, as well as additional resources. For more information about FINRA, visit www.finra.org.

©2009 FINRA. All rights reserved. – BRETT LEON BOUCHY



FINRA

www.finra.org/brokercheck

## BRETT LEON BOUCHY
### CRD# 1978796

This individual is no longer registered with FINRA. The individual's registration with FINRA was terminated prior to August 1999 when the enhanced CRD system was implemented. As a result, since the individual was not required to update their CRD record via the submission of a Form U4 to CRD since August 1999, BrokerCheck contains only limited information about this individual.

## Report Summary for this Broker

The report summary provides an overview of the broker's professional background and conduct. The individual broker, a FINRA-registered firm(s), and/or securities regulator(s) have provided the information contained in this report as part of the securities industry's registration and licensing process.

### Broker Qualifications

This broker is not currently registered with a FINRA firm.

This broker has passed:

- 1 Principal/Supervisory Exams
- 1 General Industry/Product Exams
- 1 State Securities Law Exams

### Registration History

This broker was previously registered with the following FINRA member firms:

**PARADISE VALLEY SECURITIES, INC.**
CRD# 18501
PHOENIX AZ
03/21/1990 to 06/28/1990

**THE STUART-JAMES COMPANY, INCORPORATED**
CRD# 11691
SCOTTSDALE AZ
08/02/1989 to 03/24/1990

For additional registration details as reported by the individual broker, refer to the Registration History Section of this report.

### Disclosure of Regulatory Events

This section includes details regarding final regulatory events reported by or about this broker to CRD as part of the securities industry registration and licensing process.

**Are there events disclosed about this broker? Yes**

**The following type of disclosure was reported:**

Regulatory Event

©2009 FINRA. All rights reserved. – BRETT LEON BOUCHY



## Broker Qualifications

### Industry Exams this Broker has Passed

This section includes all principal/supervisory, general product/industry, and/or state securities law exams that the broker has passed. Under certain, limited circumstances, a broker may receive a waiver of an exam requirement based on a combination of previous exams passed and qualifying work experience. Likewise, a new exam requirement may be grandfathered based on a broker's specific qualifying work experience. Information regarding instances of exam waivers or the grandfathering of an exam requirement are not included as part of the BrokerCheck report.

**This individual has passed 1 principal/supervisory exams, 1 general industry/product exams, and 1 state securities law exam.**

| Exam Class | Exam Name | Category | Date |
|---|---|---|---|
| Principal/Supervisory Exams | General Securities Principal Examination | Series 24 | 10/7/1993 |
| General Industry/Product Exams | General Securities Representative Examination | Series 7 | 8/19/1989 |
| State Securities Law Exams | Uniform Securities Agent State Law Examination | Series 63 | 8/23/1989 |

Additional information about the securities industry's qualifications and continuing education requirements, as well as the examinations administered by FINRA to brokers and other securities professionals can be found at http://www.finra.org/Industry/Compliance/Registration/QualificationsExams/index.htm.

©2009 FINRA. All rights reserved. – BRETT LEON BOUCHY



www.finra.org/brokercheck

## Registration History

### Previously Registered with the Following FINRA Firms

FINRA records show this broker previously held FINRA registrations with the following firms:

| Registration Dates | Firm Name | CRD # | Branch Location |
|---|---|---|---|
| 03/21/1990 to 06/28/1990 | PARADISE VALLEY SECURITIES, INC. | 18501 | PHOENIX AZ |
| 08/02/1989 to 03/24/1990 | THE STUART-JAMES COMPANY, INCORPORATED | 11691 | SCOTTSDALE AZ |

©2009 FINRA. All rights reserved. – BRETT LEON BOUCHY

www.finra.org/brokercheck



## Disclosure of Regulatory Events

Disclosures in BrokerCheck reports come from different sources:

- **Self-disclosure:** Brokers are required to answer a series of questions on their application requesting securities industry registration (Form U4). For example, brokers are asked whether they have been involved in certain regulatory matters.
- **Regulator/Employer postings:** In addition, regulators and firms that have employed a broker also may contribute relevant information about such matters. All of this information is maintained in CRD.

Certain Thresholds must be met before an event is reported to CRD; for example:

- **A regulatory agency** must meet established standards before initiating a regulatory action and/or issuing sanctions. These standards typically include a reasonable basis for initiating the action after engaging in a fact-finding process.

Possible multiple reporting sources – please note:

Disclosure event details may be reported by more than one source (i.e., regulator or firm). When this occurs, all versions of the reported event will appear in the firm's BrokerCheck report.

## Disclosure Event Details

This report provides the information as it was reported to CRD by the individual broker, a member firm(s), and/or by securities industry regulators. Some of the specific data fields contained in the report may be blank if the information was not provided to CRD.

©2009 FINRA. All rights reserved. – BRETT LEON BOUCHY

www.finra.org/brokercheck



FINra

## Regulatory - Final

This section provides information regarding a final, regulatory action that was reported to CRD by the individual broker, a member firm and/or a securities regulator. The event may include a final, formal proceeding initiated by a regulatory authority (e.g., a state securities agency, a self-regulatory organization, a federal regulator such as the SEC or the Commodity Futures Trading Commission (CFTC), or a foreign financial regulatory body) for a violation of investment-related rules or regulations.

## Disclosure 1 of 6 ~ Entry 1 of 1

**Reporting Source:** **Regulator**

**Details:**

U6 – REGINDVL

11/01/2002

SEC

Rev. Form U6 (08/1999)

U6 - REGULATORY ACTION DRP

This Disclosure Reporting Page is an AMENDED Regulatory Action

1. Regulatory Action initiated by: UNITED STATES SECURITIES AND EXCHANGE COMMISSION

2. Principal Sanction/Relief Sought: Bar

3. Date Initiated (MM/DD/YYYY): 10/24/2001

4. Docket/Case Number: FILE NO. 3-10627

5. Employing Firm when activity occurred which led to the regulatory action:

6. Principal Product Type: No Product

7. Describe the allegations related to this regulatory action. (The information must fit within the space provided.):

SEC ADMINISTRATIVE PROCEEDING INITIAL DECISION RELEASE NO. 209. DATED JULY 9, 2002: THE SEC INSTITUTED THIS PROCEEDING BY ITS ORDER INSTITUTING PUBLIC ADMINISTRATIVE PROCEEDING PURSUANT TO SECTIONS 15(B) AND 19(H) OF THE SECURITIES EXCHANGE ACT OF 1934 (OIP) ON OCTOBER 24, 2001. THE OIP ALLEGES THAT ON MARCH 22, 2001, FOLLOWING A BENCH TRIAL, THE U.S. DISTRICT COURT FOR THE DISTRICT OF ARIZONA, PHOENIX DIVISION, ENTERED AN ORDER CONTAINING FINDINGS OF FACT AND CONCLUSIONS OF LAW (ORDER), AND ENTERED JUDGMENT AGAINST RESPONDENT BRETT L. BOUCHY ("BOUCHY" OR "RESPONDENT"), PERMANENTLY ENJOINING HIM FROM ANY FUTURE VIOLATIONS OF THE SECURITIES LAWS.

©2009 FINRA. All rights reserved. – BRETT LEON BOUCHY



FINRA

www.finra.org/brokercheck

**8. Current status ? Final**

**9. If on appeal, regulatory action appealed to: (SEC, SRO, Federal or State Court) and Date Appeal Filed:**

If Final or On Appeal, complete all items below. For Pending Actions, complete Item 13 only.

**10. How was matter resolved: Order**

**11. Resolution Date (MM/DD/YYYY): 08/09/2002**

**12. Resolution Detail:**

A. Were any of the following Sanctions Ordered? (Check all appropriate items): Bar

B. Other Sanctions Ordered:

C. Sanction detail: if suspended, enjoined or barred, provide duration including start date and capacities affected (General Securities Principal, Financial Operations Principal, etc.). If requalification by exam/retraining was a condition of the sanction, provide length of time given to requalify/retrain, type of exam required and whether condition has been satisfied. If disposition resulted in a fine, penalty, restitution, disgorgement or monetary compensation, provide total amount, portion levied against the subject, date paid and if any portion of penalty was waived:

SEC ADMINISTRATIVE PROCEEDING RELEASE NO. 34-46330, DATED AUGUST 9, 2002, DISCLOSES: NOTICE THAT INITIAL DECISION HAS BECOME FINAL. THE TIME FOR FILING A PETITION FOR REVIEW OF THE INITIAL DECISION IN THIS PROCEEDING HAS EXPIRED. NO SUCH PETITION HAS BEEN FILED, AND THE COMMISSION HAS NOT CHOSEN TO REVIEW THE DECISION ON ITS OWN INITIATIVE. ACCORDINGLY, NOTICE IS HEREBY GIVEN, PURSUANT TO RULE 360(E) OF THE COMMISSION'S RULES OF PRACTICE, THAT THE INITIAL DECISION OF THE ADMINISTRATIVE LAW JUDGE HAS BECOME THE FINAL DECISION OF THE COMMISSION WITH RESPECT TO BRETT L BOUCHY. THE ORDER CONTAINED IN THE DECISION BARRING RESPONDENT FROM ASSOCIATION WITH ANY BROKER OR DEALER IS HEREBY DECLARED EFFECTIVE.

**13.** Provide a brief summary of details related to the action status and (or) disposition and include relevant terms, conditions and dates. Include the number of investors in the reporting jurisdiction, the total number of investors in the program, the amount invested in the reporting jurisdiction and the total amount invested.(The information must fit within the space provided.)

THE LAW JUDGE FINDS THAT: ON DECEMBER 2, 1996, THE SEC FILED A COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF IN THE U.S. DISTRICT COURT FOR THE DISTRICT OF ARIZONA (DISTRICT COURT), CASE NO. 96-2629 (PHX) (D. ARIZ. DEC. 2, 1996). AFTER A BENCH TRIAL, THE COURT ISSUED IT ORDER ON MARCH 22, 2001, FINDING AGAINST RESPONDENT, AND PERMANENTLY ENJOINING HIM FROM ANY FUTURE VIOLATIONS OF THE SECURITIES LAWS. ADDITIONALLY, THE DISTRICT COURT DENIED THE SEC'S REQUEST FOR DISGORGEMENT, BUT ORDERED THAT RESPONDENT PAY A $50,000 FINE. ON APRIL 25, 2001, THE COURT ISSUED AN AMENDED FINAL JUDGMENT FOR PERMANENT INJUNCTION AND OTHER RELIEF AS TO RESPONDENT WHEREBY IT GRANTED THE SEC'S MOTION TO AMEND THE DISTRICT COURT'S JUDGMENT TO INCLUDE GREATER SPECIFICITY, PURSUANT TO THE REASONS SET FORTH IN ITS ORDER DATED MARCH 22, 2001. THE DISTRICT COURT ORDERED THAT RESPONDENT BE ENJOINED FROM VIOLATING SECT. 17(A) OF THE SECURITIES ACT OF 1933 (SECURITIES ACT), AND SECT. 10(B) OF THE EXCHANGE ACT AND RULES 10B-5, 10B-6 (NOW REGULATION M), AND 10B-9 THEREUNDER. IT ALSO IMPOSED SECOND TIER CIVIL MONETARY PENALTIES OF $50,000 AGAINST RESPONDENT. THE SEC'S COMPLAINT ALLEGED THAT, AMONG OTHER THINGS, RESPONDENT INTERESTED IN PROMOTING STOCK TO HIS CUSTOMERS AND RESPONDENT WAS PRIMARILY RESPONSIBLE FOR SELLING A PRIVATE PLACEMENT OF STOCK TO HIS CLIENTS AND IN DOING SO HE RAISED OVER $1 MILLION IN A THIRTY-DAY PERIOD, AND A TOTAL AMOUNT OF APPROX. $1.8 MILLION. " PURSUANT TO SECTIONS 15(B)(6), AND 15(B)(4)(C) OF THE EXCHANGE ACT, LAW JUDGE ORDERED THAT RESPONDENT BE, AND HEREBY IS, BARRED FROM ASSOCIATION WITH ANY BROKER OR DEALER. THIS INITIAL DECISION SHALL BECOME THE FINAL DECISION OF THE SEC AS TO

©2009 FINRA. All rights reserved. – BRETT LEON BOUCHY



FINRA

www.finra.org/brokercheck

EACH PARTY WHO HAS NOT FILED A PETITION FOR REVIEW PURSUANT TO RULE 360(D)(1) WITHIN TWENTY-ONE DAYS AFTER SERVICE OF THE INITIAL DECISION UPON HIM, UNLESS THE SEC, PURSUANT TO RULE 360(B)(1), DETERMINES ON ITS OWN INITIATIVE TO REVIEW THIS INITIAL DECISION AS TO ANY PARTY.

## Disclosure 2 of 6 ~ Entry 1 of 2

**Reporting Source:**   Regulator

**Details:**

1. Action Codes: REV CDO

2. Action Date: 2/21/96

3. Proviso: Not Provided

4. Previously Reported: Yes

4a. Occurrence Number: 6

5. Initiated by: ARIZONA CORPORATION COMMISSION/SECURITIES DIVISION

6a. Docket/Case#: S-2901-I

6b. Court Name/Location: Not Provided

7. Allegations: FRAUD IN CONECTION WITH IPO UNDERWRITINGS; FALSE FILINGS WITH THE COMMISSION. FILING FALSE OR MISLEADING INFORMATION WITH THE COMMISSION; SALE OF UNREGISTERED SECURITIES; FRAUD IN THE PURCHASE AND SALE OF SECURITIES (USE OF FRAUDULENT/MANIPULATIVE SALES PRACTICES). 8. Results: THE ARIZONA CORPORATION COMMISSION REVOKED FRANKLIN-LORD, BRETT BOUCHY AND RICHARD WHELAN'S RESPECTIVE DEALER AND SALESMEN REGISTRATION FOR VIOLATION OF THE ARIZONA SECURITIES ACT AND ASSESSED ADMINISTRATIVE PENALTIES OF $20,000, $11,000 AND $11,000 RESPECTIVELY, AND ORDERED THEM TO CEASE AND DESIST FROM VIOLATING ANTIFRAUD PROVISIONS OF THE ACT.

9. Subject Wanted for Prosecution: No

10. Summary: MANIPULATION OF SECURITIES UNDERWRITTEN BY PARTIES LISTED ABOVE. MATT NEUBERT (602) 542-4242

## Disclosure 2 of 6 ~ Entry 2 of 2

**Reporting Source:**   Firm

**Details:**

1. Questions: 14

©2009 FINRA. All rights reserved. ~ BRETT LEON BOUCHY



www.finra.org/brokercheck

2. Update: No

3. Initiated by: REGULATOR - ARIZONA

4. Type of Event/Proceeding: ADMINISTRATIVE

5. Date Initiated: 7/5/94

6. Docket/Case#: S-2901-I

7. Allegations: FILING & MISLEADING INFORMATION SALES &  UNREGISTERED SECURITIES FRAUD IN THE PURCHASER SALE OF  SECURITIES.

8a. Current Status: PENDING

8b. Status Date: 7/5/94

8c. Results: Not Provided

9. Summary: Not Provided

10. Attachments: Not Applicable

## Disclosure 3 of 6 ~ Entry 1 of 1

**Reporting Source:**   **Regulator**

**Details:**

************NASD REGISTRATION REVOKED 12/06/95************

*************FOR NON-PAYMENT OF FINES AND/OR COSTS***********

************IN NASD COMPLAINT NO. C3A940066****************

## Disclosure 4 of 6 ~ Entry 1 of 1

**Reporting Source:**   **Regulator**

**Details:**

COMPLAINT NO. C3A940066 FILED 12/22/94 BY NASD DISTRICT NO. 3 AGAINST FRANKLIN-LORD, INC., BRETT LEON BOUCHY, WILLIAM SPIRO MENTIS, ROBERT ARTHUR AND KIRK ROBERT WYATT ALLEGING VIOLATIONS OF ARTICLE III, SECTIONS 1, 21 AND 27 OF THE RULES OF FAIR PRACTICE IN THAT RESPONDENT MEMBER, ACTING THROUGH RESPONDENTS MENTIS AND BOUCHY, ALLOWED RESPONDENT BOUCHY TO ACT IN A CAPACITY WHICH REQUIRED QUALIFICATION AND REGISTRATION AS A PRINCIPAL.

DECISION RENDERED JULY 12, 1995 WHEREIN RESPONDENT BOUCHY IS CENSURED, FINED $5,000, SUSPENDED FROM ASSOCIATION WITH ANY NASD MEMBER IN ANY CAPACITY FOR 10 BUSINESS DAYS, AND REQUIRED TO REQUALIFY BY EXAMINATION IN ALL CAPACITIES IN WHICH HE

©2009 FINRA. All rights reserved. – BRETT LEON BOUCHY



www.finra.org/brokercheck

SEEKS TO ACT IN THE SECURITIES INDUSTRY. RESPONDENT WYATT IS CENSURED. IN ADDITION, RESPONDENTS BOUCHY AND WYATT ARE ASSESSED COSTS OF $777.30, JOINTLY AND SEVERALLY. RESPONDENTS MEMBER, MENTIS AND ARTHUR SUBMITTED OFFERS OF SETTLEMENT; THEREFORE, A SEPARATE DECISION WILL BE ISSUED AS TO THESE RESPONDENTS.

AUGUST 28, 1995 - DECISION IS FINAL AS TO RESPONDENTS BOUCHY AND WYATT.

ON AUGUST 17, 1995, THE DECISION AND ORDER OF ACCEPTANCE OF OFFER OF SETTLEMENT SUBMITTED BY RESPONDENT MEMBER, MENTIS AND ARTHUR WAS ISSUED; THEREFORE, RESPONDENT'S MEMBER AND MENTIS ARE CENSURED, FINED $23,000, JOINTLY AND SEVERALLY AND RESPONDENT MEMBER IS FINED $5,000. RESPONDENT ARTHUR IS CENSURED, FINED $5,000 AND REQUIRED TO REQUALIFY BY EXAMINATION AS A GENERAL SECURITIES PRINCIPAL WITHIN 60 DAYS FROM THE DATE OF ACCEPTANCE OF THIS OFFER OR CEASE ACTING IN SUCH A CAPACITY.

***REVOKED FOR NON-PAYMENT OF FINE ON 12/06/95***

**05/03/96: RESPONDENT REGISTRATION WAS REVOKED ON 12/06/95 AND FINED $5,000.00 & HAS NOT PAID FINES/COSTS, INVOICE # 95-3A-544**

***$777.30 FULLY PAID JOINTLY AND SEVERALLY AS OF 10/23/95, INVOICE #95-3A-545***

## Disclosure 5 of 6 ~ Entry 1 of 1

**Reporting Source:**   Regulator

**Details:**

COMPLAINT NO. C3A940069 FILED 12/22/94 BY NASD DISTRICT NO. 3 AGAINST FRANKLIN-LORD, INC., BRETT LEON BOUCHY, ET AL. ALLEGING VIOLATIONS OF ARTICLE III, SECTIONS 1, 21 AND 28(c) OF THE RULES OF FAIR PRACTICE IN THAT RESPONDENT MEMBER, ACTING THROUGH RESPONDENTS BOUCHY AND CATHCART, EFFECTED AN INITIAL TRANSACTION OF SECURITIES BEING OFFERED IN AN INITIAL PUBLIC OFFERING IN THE ACCOUNT OF RESPONDENT BEAUDRY WITHOUT MAKING REASONABLE EFFORTS TO OBTAIN, PRIOR TO SETTLEMENT, INFORMATION AS TO THE OCCUPATION OF RESPONDENT BEAUDRY, THE NAME AND ADDRESS OF HIS EMPLOYER AND WHETHER HE WAS AN ASSOCIATED PERSON OF ANOTHER MEMBER FIRM; FAILED TO MAINTAIN ACCURATE BOOKS AND RECORD AND AS A RESULT FAILED TO COMPLY WITH THE BOARD OF GOVERNORS INTERPRETATION REGARDING FREE-RIDING AND WITHHOLDING.

DECISION RENDERED 7/13/95, WHEREIN RESPONDENTS MEMBER, CATHCART AND BOUCHY ARE CENSURED AND FINED $2,500, JOINTLY AND SEVERALLY. RESPONDENT BEAUDRY IS CENSURED, FINED $10,000, REQUIRED TO DISGORGE $386,399, AND REQUIRED TO REQUALIFY BY EXAMINATION IN ANY CAPACITY IN WHICH HE SEEKS TO ACT. THE COLLECTION OF THE DISGORGEMENT SHALL BE WAIVED UNTIL RESPONDENT BEAUDRY ATTEMPTS TO RE-ASSOCIATE WITH A MEMBER FIRM, BUT SHALL BEAR STRAIGHT INTEREST AT THE RATE OF 12 PERCENT PER ANNUM UNTIL PAID. RESPONDENT CATHCART SHALL BE REQUIRED TO RE-QUALIFY BY EXAMINATION AS A GENERAL SECURITIES PRINCIPAL PRIOR TO ACTING IN THAT CAPACITY; AND, RESPONDENT BOUCHY SHALL BE REQUIRED TO RE-QUALIFY BY EXAMINATION AS A REPRESENTATIVE PRIOR TO ACTING IN ANY REPRESENTATIVE CAPACITY. THE RESPONDENTS ARE ASSESSED COSTS OF $1,004.70, JOINTLY AND SEVERALLY.

8/28/95 - DECISION IS FINAL.

***$1,004.70 PAID JOINTLY AND SEVERALLY ON 10/11/95, INVOICE #95-3A-547***

****$2,500.00 PAID JOINTLY AND SEVERALLY ON 10/11/95, INVOICE #95-3A-546***

©2009 FINRA. All rights reserved. ~ BRETT LEON BOUCHY



www.finra.org/brokercheck

## Disclosure 6 of 6 ~ Entry 1 of 2

**Reporting Source:** Regulator

**Details:**

COMPLAINT NO. C3A930048 FILED JANUARY 4, 1994 BY NASD DISTRICT NO. 3 AGAINST RESPONDENTS DENNIS L. BEALL, BRETT L. BOUCHY, JOHN E. CATHCART, BRIAN L. GIBBONS, JEFFREY S. OATES, TRACY L. SYMOENS, AND RICHARD C. WHELAN ALLEGING VIOLATIONS OF ARTICLE III, SECTIONS 1, 27, AND 40 OF THE RULES OF FAIR PRACTICE IN THAT RESPONDENTS BEALL, BOUCHY, CATHCART, GIBBONS, OATES, SYMOENS, AND WHELAN PARTICIPATED IN PRIVATE SECURITIES TRANSACTIONS WITHOUT PROVIDING PRIOR WRITTEN NOTICE OF SUCH ACTIVITIES TO THEIR MEMBER FIRM; RESPONDENTS CATHCART AND GIBBONS FAILED TO SUPERVISE THE ACTIVITIES OF RESPONDENT BEALL, BOUCHY, OATES, SYMOENS, AND WHELAN IN THAT THEY FAILED TO ENFORCE THE FIRM'S SUPERVISORY PROCEDURES WITH RESPECT TO PRIVATE SECURITIES TRANSACTIONS; AND, RESPONDENTS GIBBONS AND WHELAN PROVIDED FALSE STATEMENTS TO THE NASD IN RESPONSE TO NASD REQUESTS FOR INFORMATION MADE PURSUANT TO ARTICLE IV, SECTION 5 OF THE RULES OF FAIR PRACTICE.

ON AUGUST 25, 1994, THE DECISION AND ORDER OF ACCEPTANCE OF OFFER OF SETTLEMENT SUBMITTED BY RESPONDENTS BOUCHY, OATES AND WHELAN WAS ISSUED. THEREFORE RESPONDENT BOUCHY IS CENSURED, FINED $10,000 AND SUSPENDED FROM ASSOCIATION WITH ANY NASD MEMBER IN ANY CAPACITY FOR TEN BUSINESS DAYS; RESPONDENT OATES IS CENSURED AND FINED $1,750; AND, RESPONDENT WHELAN IS CENSURED, FINED $20,000 AND SUSPENDED FROM ASSOCIATION WITH ANY NASD MEMBER IN ANY CAPACITY FOR TEN BUSINESS DAYS. A SEPARATE DECISION WILL BE RENDERED AS TO RESPONDENTS BEALL, CATHCART, GIBBONS AND SYMOENS.

PRESS RELEASE OCTOBER 1994: THE SUSPENSION WILL COMMENCE WITH THE OPENING OF BUSINESS OCTOBER 17, 1994 AND WILL CONCLUDE AT THE CLOSE OF BUSINESS OCTOBER 28, 1994.

***$10,000 PAID ON 9/27/94 INVOICE #94-3A-548***

## Disclosure 6 of 6 ~ Entry 2 of 2

**Reporting Source:** Individual

**Details:**

1. Questions: 22I

2. Update: Yes

3. Initiated by: NASD

4. Type of Event/Proceeding: ADMINISTRATIVE

5. Date Initiated: 1/4/1994

6. Docket/Case#: C3A930048

7. Allegations: PRIVATE SECURITIES TRANSACTIONS

©2009 FINRA. All rights reserved. ~ BRETT LEON BOUCHY

# EXHIBIT 'B'

## CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

This CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE (the "Agreement") is made and entered into as of ~~May~~ June 4, 2021 (the "Effective Date"), by and between Anton Ewing ("Ewing"), on the one hand, and Brett Leon Bouchy, Greg Russell Albright and Freedom Forever, LLC (collectively, "Freedom Forever"), on the other hand. Ewing and Freedom Forever are referred to herein as the "Parties" and are the signing parties to this Agreement.

### RECITALS

**WHEREAS,** in 2019 and 2020, Ewing alleges that he received multiple telephone calls on his cellular telephone from Freedom Forever and its alleged agents;

**WHEREAS,** Ewing asserts that his personal cellular phone is protected by the National Do Not Call list and that there is no prior business relationship between him and Freedom Forever;

**WHEREAS,** Freedom Forever does not admit to any wrongdoing or unlawful act;

**WHEREAS,** Ewing asserts that shortly after receiving the call, he contacted Freedom Forever representatives to discuss a potential class action lawsuit against Freedom Forever.

**WHEREAS,** Ewing has filed a civil action entitled *Anton Ewing v. Freedom Forever, LLC, et al.*, filed as United States District Court, Southern District of California, Case No.: 20-CV-0880 JLS AHG (hereinafter referred to as "the Action"), seeking recovery under the Telephone Consumer Protection Act ("TCPA") and the California Invasion of Privacy Act ("CIPA") and alleging that Freedom Forever and/or its agents made phone calls to his cellular telephone and illegally obtained his information in violation of federal or state law;

**WHEREAS,** the Parties desire to compromise and settle fully and finally all claims by Ewing that were or might have been asserted against Freedom Forever in the Action, without any admission of liability or fault by either Party:

**THEREFORE,** in consideration of and in reliance upon only the representations made in this Agreement, and the covenants, terms and conditions contained herein, the Parties agree as follows:

## AGREEMENT

1.  **Recitals.** Each of the foregoing recitals constitutes a substantive provision of this Agreement and is incorporated into, and made a part of, the Parties' Agreement.

2.  **Consideration by the Freedom Defendants.** In full and final settlement of all claims that were or might have been asserted by Ewing against Freedom Forever in the Action, Freedom Forever agrees to pay Ewing a total sum of ~~Four Thousand Nine Hundred Dollars and Zero Cents ($4,900.00)~~ (the "Settlement Payment"). Freedom Forever shall cause the Settlement Payment to be tendered via check and delivered to Ewing at 3077 Clairemont Drive #372, San Diego, CA 92117, within seven (7) days of the execution of this Agreement. The Settlement Payment shall be sent via Fedex or UPS overnight delivery. Ewing will not provide Freedom Forever with his social security number. Freedom Forever will not issue any 1099 to Ewing's social security number. Each party is responsible for their own tax obligations.

3.  **Dismissal of the Action and All Defendants with Prejudice.** Upon receipt of the full Settlement Payment, Ewing shall, within ten (10) business days, file a Stipulation of Dismissal of Freedom Forever with prejudice from the Action. Ewing will take all steps necessary to ensure that the Action is dismissed with prejudice.

4.  **Warranties and Representations.**

A.      Each Party represents and warrants to the other Party that the Party executing this Agreement: has all requisite power and authority to execute and deliver this Agreement on behalf of such Party; has had full and ample opportunity to conduct any and all required due diligence or investigation with respect to all matters pertinent to this Agreement; and has been advised by legal counsel with respect to the subject matter of this Action, this Agreement, and their attendant risks and benefits.

B.      Freedom Forever will use its best efforts to not knowingly hire or pay third party telemarketers to make calls to Ewing at the telephone numbers set forth below in Section 4.D.

C.      Freedom Forever represents that, to the best of its knowledge, it does not have Ewing's social security number and will not attempt to obtain the same for any unlawful purpose.

D.      Freedom Forever will use its best efforts to ensure that Freedom Forever and its agents and employees never call Ewing again at the following telephone numbers:  619-719-9640, 619-347-0726, 619-888-1296, 858-333-1962 and 619-798-2016.

E.      Freedom Forever will use its best efforts to not knowingly sell, give, transfer or provide Ewing's telephone numbers (listed in Section 4.D.) to any other person or entity for the purpose of enabling them to call to Ewing at the telephone numbers listed in Section 4.D.

F.      Ewing will use his best efforts to ensure that he never calls Freedom Forever or its agents and employees.  If Freedom Forever or its agents or employees call Ewing at any of the telephone numbers listed in Section 4.D. in response to a call or inquiry from Ewing, this will not be considered a breach of this Agreement.

G.      The Parties in this Action agree, warrant, and stipulate that they will not, orally or in writing, to any person through any medium, publicly or privately post, publish, make, or

express any comment, view, or opinion that criticizes, is adverse to, brings disrepute, derogates, defames, or disparages any other Party to this Agreement in any manner whatsoever.

     H.     Ewing represents and agrees that he has not assigned or transferred any claims against Freedom Forever, and he agrees to indemnify, defend, and hold harmless Freedom Forever against any and all claims based on, arising out of, or in connection with any purported transfer or assignment of claims against Freedom Forever.

     **5.**     **General Release of Freedom Forever.**  Except as otherwise provided herein, Ewing, his affiliates, insurers, employees, agents, attorneys, representatives, successors, and assigns, hereby completely and irrevocably release Freedom Forever, together with Freedom Forever's successors, partners, associates, employees, attorneys, insurance carriers, heirs, parents, subsidiaries, assigns, agents and representatives, and its client's successors, partners, associates, employees, attorneys, insurance carriers, heirs, parents, subsidiaries, assigns, agents and representatives (collectively, the "Freedom Forever Releasees"), from any and all past, present, or future causes of action, claims, demands, obligations, liabilities, expenses, damages, costs, or losses, of whatever kind or nature, in law or equity, in tort or in contract, suspected to exist or not suspected to exist, anticipated or not anticipated, known or unknown, which have arisen, from the beginning of time to the Effective Date of this Agreement, including without limitation those that were or might have been asserted in the Action.

     A.     As part of the foregoing general release, the Parties expressly acknowledge and agree that the releases contained in this Settlement Agreement include a waiver of all rights under Section 1542 of the California Civil Code, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE**

**AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE
MATERIALLY AFFECTED HIS OR HER SETTLEMENT
WITH THE DEBTOR OR RELEASED PARTY.**

B.      The Parties further acknowledge that, as evidenced by the signatures below, they
have read all of this Agreement fully understand the Agreement and waiver of rights set forth in
Paragraph 5 of this Agreement.

6.      **Covenant Not to Sue and Future Obligations.**  Ewing hereby covenants that he
shall not commence or maintain (whether in a person, entity, or in a class capacity) any suit
against the Freedom Forever Releasees based upon the facts that were or could have been alleged
in the Action, whether at law or in equity.  Ewing, however, may respond to a valid and legally
enforceable subpoena or other discovery request in the most limited manner required by such
subpoena or request, provided that Freedom Forever is provided with notice of such subpoena or
discovery request.

7.      **No Admission of Liability.**  Nothing in this Agreement is or shall be construed as
an admission of liability with respect to any matter released hereby by any of the Parties named
herein, and any such alleged liability is expressly denied.  Freedom Forever specifically
disclaims any liability to, or wrongful acts or omissions against, Ewing or any other person, on
the part of themselves, their employees and agents, past and present.  This Agreement is a
compromise of disputed claims and is entered into knowingly and voluntarily by the Parties for
the sole purpose of settling all claims related to the Action without incurring costs related to
protracted investigation, discovery, and litigation.  Without limiting the generality of the
foregoing, the Parties acknowledge and agree that neither this Agreement nor anything contained
herein shall be admissible in connection with any subsequent litigation arising out of or related to
the Allegations (except as may be necessary for the enforcement of this Agreement).

8. **Confidentiality and Non-Disclosure.**  The Parties and their counsel acknowledge, understand, and agree to keep the Agreement, its terms and existence, and all documents and things exchanged during settlement negotiations leading up to this Agreement (collectively, "Confidential Information") strictly confidential, and to not discuss or disclose Confidential Information or the names of the Parties to this Agreement to any other person or entity, except:

(a)     As required by law or order of a court or other government authority;

(b)     As required to enforce this Agreement;

(c)     As a defense to an action to enforce this Agreement or in an action to which the terms of the Agreement may apply;

(d)     To such Party's spouse, accountants, attorneys, employees, tax advisors, officers, directors, parents, subsidiaries, successors, affiliates, agents, consultants, vendors, contractors, auditors, lienholders, insurers, subrogors, and/or financial institutions for legitimate business purposes, provided that such persons are made aware of and agree to be subject to the confidentiality provisions of this Agreement;

(e)     To any applicable taxing authority; and

(f)     As required by a valid subpoena or legal demand.

The Parties and their counsel further agree that if they are required by legal process to disclose Confidential Information, they will provide any other Party to this Agreement with at least seven (7) days' notice prior to the required disclosure (or as much notice as practical if the disclosure is required in less than seven (7) days) so that the Party may seek an appropriate protective order or other appropriate relief.

9. **Choice of Law.**  This Agreement is governed by, and shall be construed in accordance with, the laws of the State of California, without regard to any conflicts of laws provisions.  The parties agree that the choice of California law is reasonable and appropriate.

**10.** **Successors and Assigns.** The provisions of this Agreement shall be binding upon and inure to the benefit of the Parties to this Agreement and their respective heirs, successors, and assigns.

**11.** **Survivability.**

A.     It is understood and agreed that if any term or provision of this Agreement, or any application of any term or provision to any person, entity, circumstance, or situation, except for the General Release in Paragraph 5, is to any extent declared invalid or unenforceable, the remainder of this Agreement, and the application of such term or provision to any other person, entity, circumstance, or situation, shall not be invalidated or made unenforceable thereby. Any such invalid portion shall be deemed severable. It is the Parties' intent to have each term and provision of this Agreement be valid and enforceable to the fullest extent and with respect to all persons, entities, circumstances, and situations permitted by law and equity.

B.     It is also understood that no waiver or breach of any term of this Agreement shall be construed as a waiver or breach of another term. No waiver shall be binding unless in writing and signed by the waiving party. This Agreement may not be amended except in writing.

**12.** **Integration.** Each Party acknowledges and agrees that this Agreement is a full, arms-length, final and complete settlement of all matters contained herein and that it supersedes all prior agreements between the Parties regarding the same subject matter. This Agreement may be modified, amended or changed only by an agreement in writing signed by authorized representatives of all of the Parties.

**13.** **Joint Draftsmanship.** Counsel for the Parties jointly negotiated this Agreement and it shall be construed accordingly. The terms of this Agreement shall not be presumptively construed against any of the Parties or be otherwise subject to the doctrine of contra proferentem.

14.    **Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement. This Agreement shall be effective and finally executed when identical counterparts, which when taken together bear the signatures of all Parties, have been delivered to counsel or representatives for all the Parties, either by e-mail, facsimile, or overnight delivery service. Copies of all or part of this Agreement, including signatures thereto, which are transmitted by facsimile or by e-mail in .pdf or other electronic format, shall be presumed valid. The Parties agree that this Agreement may be transmitted by facsimile, electronic mail, or such similar device, and that the reproduction of signatures by facsimile, electronic mail, or such similar device will be treated as binding as if originals.

15.    **Attorney Fees.** If a dispute occurs regarding this Agreement the prevailing party shall be entitled to all reasonable attorney fees.

16.    **Jurisdiction to Enforce Agreement.** The Parties agree that only the United States District Court, Southern District of California shall have jurisdiction to enforce this Agreement.

17.    **Knowledge and Voluntary Consent.** The Parties acknowledge and agree that they have carefully read this Agreement, fully understand its meaning, intent, and terms, and have full knowledge of its legal consequences. Except as expressly set forth herein, neither Party has relied on any representations or statements by any other Party to this Agreement. Moreover, the Parties represent and warrant that they have sought or have had the opportunity to seek legal advice from an attorney regarding any terms that they did not understand. The Parties further represent and warrant that they executed this Agreement upon their own free will and choosing. No Party has been influenced, coerced, or induced to enter into this Agreement

Page 8 of 10

**18.**  **<u>Further Assurances.</u>**  The Parties shall execute, deliver and perform or cause to be executed, delivered, and performed any and all such further acts, deeds and assurances as may be reasonably required in order to fully carry out the terms of this Agreement.

*[Signatures to follow on the next page]*

WE CERTIFY THAT WE HAVE READ THE FOREGOING AGREEMENT IN ITS ENTIRETY, INCLUDING CALIFORNIA *CIVIL CODE* §1542 CITED HEREIN, THAT I FULLY UNDERSTAND AND ACCEPT ALL OF THE LANGUAGE AND

PROVISIONS CONTAINED HEREIN AND THAT WE AGREE TO BE BOUND

BY ALL OF THE TERMS AND PROVISIONS SET FORTH HEREIN.

AGREED TO AND ACCEPTED BY:

DATED: ~~May~~ JUNE 4th ___, 2021

By: _____
      Anton Ewing

DATED: ~~M~~June _4_ , 2021

By: _Brett Bouchy_____
      Brett Leon Bouchy

DATED: ~~M~~June _4_ , 2021

By: _Greg Albright_____
      Greg Russell Albright

DATED: ~~M~~June _4_ , 2021

By: _Jessica Mae Sumikawa_____
      ~~Brett Bouchy, Chief Financial Officer~~
      ~~Freedom Forever, LLC~~
      Jessica Mae Sumikawa
      General Counsel



EXHIBIT 'C'

**Phone Number**

**State**

AL                                                                                          ⌄

**Zip Code**

Submit

By submitting my contact information including my telephone number above, I authorize Freedom Forever LLC and its subsidiaries, its Independent Authorized Dealers, Bright Solar Marketing, and/or its affiliates to contact me via telephone calls and/or text messages (SMS), using automated dialing technology for marketing/advertising purposes. No purchase required. Message and data rates may apply.

*You should contact a qualified tax expert and consult with them. Neither Freedom Forever's family of independent authorized dealers nor Freedom Forever itself can give you tax advice. A qualified tax professional will understand your situation and be able to give you the most relevant advice.*

**This information is current as of May 5, 2021 and customers are encouraged to check with their local utility providers for the most up to date and accurate information.*

*We advise you to consult with the appropriate professionals (including, but not limited to, your solicitor or attorney, accountant, CPA, CGA, or any other financial or legal advisor) for the implications of any information contained in our website and in any link you access through our website.*