UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTON A. EWING,<br><br>                                   Plaintiff,<br><br>v.<br><br>FREEDOM FOREVER, LLC; and<br>BRETT BOUCHY, an individual,<br><br>                                   Defendants. | Case No.:  23-CV-1240 JLS (AHG)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINTAND MOTION TO STRIKE**<br><br>(ECF No. 15) |

Presently before the Court is Defendant Freedom Forever, LLC's ("Freedom Forever" or "Defendant") Motion to Dismiss Plaintiff's First Amended Complaint and Motion to Strike ("Second MTD," ECF No. 15).  Plaintiff Anton A. Ewing filed an Opposition to the Motion ("Opp'n," ECF No. 19) and Freedom Forever filed a Reply thereto ("Reply," ECF No. 20).  The Court vacated the hearing on Freedom Forever's Motion and took it under submission without oral argument on September 21, 2023.  ECF No. 22.  Having carefully considered the Parties' submissions and the applicable law, the Court **GRANTS IN PART AND DENIES IN PART** Freedom Forever's Motion.

/ / /

/ / /

# BACKGROUND

## I. Factual Allegations[1]

Plaintiff is a San Diego resident who has placed his cell-phone number on the federal "Do Not Call Registry."  First Am. Compl. ("FAC") at 2 & ¶ 1, ECF No. 13.  Plaintiff alleges that the solar-panel-sales company Freedom Forever—through its agents and employees—repeatedly called and texted him in violation of the Telephone Consumer Protection Act ("TCPA") (47 U.S.C. § 227), its associated regulations (47 C.F.R. § 64.1200), and the California Invasion of Privacy Act ("CIPA") (Cal. Penal Code §§ 632.7, 637.2).  *See id.* ¶¶ 6, 67–85.

Plaintiff first alleges that agents of Freedom Forever sent him multiple "unsolicited text messages" that were "generic in nature," "did not address Plaintiff by name," and "did not offer a way to opt out or to stop future solicitation texts."  *Id.* ¶¶ 25–27.  Plaintiff does not specify the number of texts he received or the dates on which he received them, but he does allege that said texts were "solicitations encouraging the purchase of Defendant Freedom Forever's services."  *See generally id.* (capitalization altered).  Plaintiff also alleges that he replied STOP to the text messages he received.  *Id.* ¶ 45.  Despite these efforts, Plaintiff received additional unwanted texts.  *Id.*

Plaintiff next alleges that he received seven calls from agents of Freedom Forever between April 30 and June 2, 2023.  *Id.* ¶ 36.  On each of these calls, Plaintiff "heard a very clear 'bubble popping' type sound followed by a rather long pause."  *Id.* ¶ 28.  After this pause, a prerecorded message stated approximately the following: "Are your electric bills too high. [sic] Do you want to go solar and never pay another utility bill ever again?  Press one to be connected to one of our solar experts."  *Id.* ¶ 47.  After Plaintiff pressed one, he alleges that he was transferred to "a live operator employee of Defendant Freedom

---

[1] Freedom Forever's Motion contests the accuracy of many of the facts as pleaded in Plaintiff's FAC. *See, e.g.*, Second MTD at 11 n.9 (asserting that Plaintiff's allegations regarding statements by Freedom Forever's CEO are "completely false").  Defendant must reserve its factual contentions for summary judgment.  The facts alleged in Plaintiff's FAC are accepted as true for purposes of the present Motion. *See Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).

Forever." *Id.* ¶ 28 (capitalization altered).   Per Plaintiff, he "became upset on each telephone call making very clear that the caller must never telemarket [sic] him . . . ever again." *Id.* ¶ 45.

Plaintiff allegedly spoke with a Tony Denner, who indicated on the phone that he "refers his leads to Freedom Forever," on at least one of the seven calls. *Id.* ¶ 38.   Plaintiff also spoke with someone named Tyler, who claimed to be a "'master dealer' for Freedom Forever," and one Nick Fernandez, who emailed Plaintiff a link to a website associated with Freedom Forever.   *Id.* ¶¶ 39–40.   Finally, Plaintiff spoke with Brett Bouchy ("Bouchy")—Freedom Forever's alleged manager—on the June 2 call.   *Id.* ¶¶ 6, 22, 36, 43.  During that call, Bouchy admitted that Freedom Forever records all of its solicitation calls. *Id.* ¶ 22.  Bouchy also "admitted to Plaintiff" that he reached Plaintiff's phone via software that automatically connects prospects to "either him or another telemarketer in the office" when the prospect presses one. *Id.* ¶ 43 (emphasis omitted).

The FAC also notes that Plaintiff settled a lawsuit with Freedom Forever in 2021 regarding allegedly unlawful phone calls.  *See id.* at 1; *id.* Ex. B.  In said settlement agreement, Freedom Forever allegedly promised that it would "use its best efforts" to avoid either contacting—or enabling third parties to contact—Plaintiff.  *Id.* ¶¶ 49–52.  Though the FAC does not list breach of contract as one of its causes of action, Plaintiff alleges that Freedom Forever breached the agreement by again contacting Plaintiff and that Plaintiff therefore is "suing for all the prior calls."  *See id.* ¶¶ 41, 49–52.  The FAC does not, however, provide any details regarding the prior calls.

## II.   Procedural Background

 Plaintiff filed his initial Complaint ("Compl.," ECF No. 1) on July 5, 2023, naming as defendants the solar-panel-sales company Freedom Forever and its alleged manager and CEO, Bouchy.  *See* Compl. ¶¶ 1–5.

On August 4, 2023, Freedom Forever and Bouchy filed a Motion to Dismiss Plaintiff's Complaint ("First MTD," ECF No. 12), arguing that Plaintiff's Complaint confusingly lumped Freedom Forever and Bouchy together, was ambiguous regarding the

conduct it alleged, failed to state a plausible claim for relief, and failed to adequately allege Bouchy's involvement.

Three days later, Plaintiff filed the FAC.  The Court found that Plaintiff's amendment complied with Rule 15 and accordingly denied the First MTD as moot.  *See* ECF No. 13.  Counsel for Bouchy and Freedom Forever assume in the Second MTD, and the Court agrees, that Plaintiff voluntarily dismissed Bouchy as a defendant in this action when he filed the FAC.[2]  *See* Second MTD at 1, 6.  The Second MTD was thus filed on behalf of Freedom Forever only.  *See id.*

## MOTION TO DISMISS

## I.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted."  A court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

/ / /

---

[2] Rule 15 allows a party to amend its pleadings "once as a matter of course" and contemplates that a party may "change the party . . . against whom a claim is asserted."  *See* Fed. R. Civ. P. 15(a)(1), 15(c)(1)(C). Plaintiff's FAC—and the context surrounding its filing—strongly suggest that Plaintiff intended to use Rule 15 to dismiss Bouchy from the action.  Unlike the initial Complaint, the FAC names only Freedom Forever in its caption.  *See* FAC at 1.  It also deletes references to Bouchy from each of its two claims for relief.  *See id.* at 24, 30.  Further, there was a plausible strategic reason for dismissing Bouchy—mooting Freedom Forever's "multiple defendant" argument.  Lastly, and critically, Plaintiff made no effort in his Opposition to correct Defendant's assumption that he dismissed Bouchy.  *See generally* Opp'n. The foregoing context confirms that Plaintiff voluntarily dismissed Bouchy as a defendant in this case when he filed the FAC.

will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting Fed. R. Civ. P. 8(a)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Facts "'merely consistent with' a defendant's liability" do not demonstrate a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).

Review under Rule 8(a) requires a context-specific analysis involving a court's "judicial experience and common sense." *Id.* at 679.  A court must "accept[] all factual allegations in the complaint as true and constru[e] them in the light most favorable to the nonmoving party." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012).  That said, the Court need not accept as true "legal conclusions" contained in the complaint. *Iqbal*, 556 U.S. at 678.

If a complaint does not state a plausible claim for relief, a court should grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading could . . . cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  "The Ninth Circuit has instructed that the policy favoring amendments 'is to be applied with extreme liberality.'" *Abels v. JBC Legal Grp., P.C.*, 229 F.R.D. 152, 155 (N.D. Cal. 2005) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)).

Finally, though litigants proceeding pro se are ordinarily entitled to liberal construction of their pleadings and arguments, said liberal construction does not extend to practicing attorneys. *See Huffman v. Lindgren*, 81 F.4th 1016, 1021 (9th Cir. 2023).  And, to the extent such solicitude extends to plaintiffs who have attended law school and have

past litigation experience, said solicitude is reduced. *See id.* at 1020–21; *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("[T]he degree of solicitude may be lessened where the [litigant proceeding pro se] is experienced in litigation and familiar with the procedural setting presented."). Here, though Plaintiff is proceeding pro se, Plaintiff's FAC demonstrates that he is well-versed in at least this form of litigation. *See* FAC at 1 (describing Plaintiff's past settlement with Freedom Forever); *id.* ¶¶ 29, 32 (explaining that Plaintiff has "vast experience" with ATDS use and telemarketers). Moreover, courts in this district have twice recognized that Plaintiff has "attended law school . . . and has filed dozens of TCPA . . . cases . . . over the past decade." *Osgood v. Main Streat Mktg., LLC*, No. 16CV2415-GPC(BGS), 2017 WL 131829, at *3 (S.D. Cal. Jan. 13, 2017); *Ewing v. LeadExcel, Inc.*, No. 18CV2845-LAB (JLB), 2020 WL 2037111, at *2 (S.D. Cal. Apr. 27, 2020). Accordingly, Plaintiff is entitled to only reduced solicitude at this stage.

## II. Discussion

Before turning to Defendant's arguments for dismissal, of which there are four, the Court will first resolve Plaintiff's procedural objection to Defendant's Motion.

### A. Plaintiff's Procedural Objection

Plaintiff first asks this Court to deny Defendant's Motion because Defendant failed "to serve a Notice of Motion concurrently with the motion and memorandum." *See* Opp'n at 3–4. Though Plaintiff is correct that Defendant did not file a separate notice of motion, the caption to Defendant's Motion contains the information required by Civil Local Rule 7.1(f)(1). *See generally* Second MTD. As Plaintiff does not contend that he did not receive sufficient *actual* notice of Defendant's Motion—or indeed identify any prejudice associated with the absence of a separate notice of motion—the Court declines Plaintiff's invitation to deny Defendant's Motion pursuant to Civil Local Rule 7.1(f)(2)(b).

### B. Defendant's Arguments

Defendant's arguments for dismissal fall into four categories: (1) Plaintiff's FAC is an impermissible "shotgun" pleading; (2) Plaintiff has not provided fair notice of his claim to the extent it relies on text messages; (3) Plaintiff has not made a plausible case for relief

under the TCPA; and (4) Plaintiff is not entitled to some of the remedies he seeks.  The Court will evaluate each argument in turn.

### 1. Impermissible "Shotgun" Pleading

Freedom Forever argues that Plaintiff's FAC contains an "unclear mass of allegations" that make it "difficult or impossible" for Freedom Forever to "make informed responses to the plaintiff's allegations."  Second MTD at 8 (quoting *Hill v. Bd. of Directors*, No. 2:23-CV-01298-JLS-PD, 2023 WL 3551292, at *2 (C.D. Cal. Apr. 5, 2023)).  In such circumstances, per Freedom Forever, other district courts have dismissed complaints in their entirety.  *Id.* at 8–9.  Plaintiff offers a sarcastic response: "When a defense attorney says a complaint is shotgun-ish, then it is."  Opp'n at 8.

A district court may dismiss an entire complaint for lack of clarity when "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery."  *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996).  Such a dismissal is appropriate where a complaint's "true substance, if any, is well disguised."  *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008) (internal quotation marks omitted) (quoting *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969)).  Complaints are subject to dismissal where they name numerous defendants and assert multiple causes of action without indicating which allegations and which claims are relevant to each defendant.  *See, e.g.*, *Guerrero v. Cnty. of Orange*, No. SACV191471JAKAS, 2019 WL 8633908, at *2 (C.D. Cal. Sept. 17, 2019).  A district court may also dismiss a complaint in which "each count . . . adopts the allegations of all preceding counts" such that "[i]t is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief."  *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126 (11th Cir. 2014) (first alteration in original) (internal quotation marks omitted) (quoting *Anderson v. Dist. Bd. of Trs.*, 77 F.3d 364, 366 (11th Cir. 1996)).

Here, the FAC's defects are not so severe to warrant its complete dismissal.  Plaintiff sues only one defendant—Freedom Forever.  Plaintiff alleges violations of two statutes—both of which render unlawful specific conduct related to telephone communications.  *See*

47 U.S.C. § 227(b)(1)(A), (c)(5) (prohibiting certain phone communications); Cal. Penal Code §§ 632.7, 637.2 (providing a cause of action against a person who, without consent, intentionally records a communication made via cellular or cordless phone).  Moreover, Plaintiff alleges that these violations occurred with respect to calls/texts made to a single telephone number.  FAC ¶ 1.  Finally, to the extent Plaintiff references a contract, Plaintiff provides the contract and identifies the conduct he suggests constitutes a breach.  *See id.* Ex. B; *id.* ¶¶ 49–52.  Based on these allegations, the Court can "determine from the [FAC] who is being sued, for what relief, and on what theory, with enough detail to guide discovery."  *McHenry*, 84 F.3d at 1178.

True, the FAC does not set forth the relevant events in chronological order, is replete with unnecessary legal argumentation, and contains multiple irrelevant allegations and attacks on Defendant and Defendant's counsel.  Plaintiff's FAC also incorporates by reference sixty-six paragraphs into each of its two counts.  *See* FAC at 24, 30.  Those defects, however, are better addressed through less drastic measures than dismissal of the entire FAC.  *See Hearns*, 530 F.3d at 1132.  For instance, the Court will address Freedom Forever's argument regarding Plaintiff's allegedly scandalous attacks when determining whether to strike said allegations from the FAC.

### 2. *Fair Notice of Alleged Text Messages*

Freedom Forever next argues that the FAC must—but fails to—provide sufficient detail regarding the alleged text messages sent by Freedom Forever.[3]  Second MTD at 9. Freedom Forever points out that the FAC fails to indicate how many texts Plaintiff received and when he received them.  *See id.*  Plaintiff responds that Freedom Forever does not cite any authority requiring a plaintiff in a TCPA lawsuit to describe each text or call in detail to survive a motion to dismiss.  Opp'n at 8–9 & n.5.

---

[3] The Federal Communications Commission has interpreted the word "call" in the TCPA to include text messages, and the Ninth Circuit has held that said interpretation is entitled to *Chevron* deference. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).  Accordingly, a plaintiff may state a claim under either 47 U.S.C. § 227(b)(3) or 47 U.S.C. § 227(c)(5) by alleging that a defendant called them, texted them, or did both.

Courts have split regarding the level of detail a plaintiff must provide regarding alleged texts or phone calls in a TCPA lawsuit. Some courts have concluded that where a plaintiff fails to identify the date on which they received each alleged message/call, the number from which they received said message/call, and the content of each message/call, said plaintiff has failed to provide fair notice of their TCPA claim under Federal Rule of Civil Procedure 8(a)(2). *See, e.g.*, *Abbas v. Selling Source, LLC*, No. 09 CV 3413, 2009 WL 4884471, at *2 (N.D. Ill. Dec. 14, 2009). These courts reason that because plaintiffs may recover damages for each alleged violation of the TCPA, it is important that plaintiffs' pleadings clarify the extent of defendants' potential liability. *See id.*

Other courts have declined to "require a plaintiff to allege details at the pleading stage about the time and context of every text message." *See, e.g.*, *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1172 (N.D. Cal. 2010). These courts reason that (1) "Rule 8 does not require [the plaintiff] to plead his claim with particularity" and (2) "because the TCPA is designed to combat mass unsolicited commercial telemarketing," requiring such detail might swiftly become unwieldly. *Id.*

This Court need not pick a side, however, as Plaintiff's text-message-related allegations do not pass muster even under *Kramer*'s more permissive approach. In *Kramer*, the plaintiff at least indicated the number of texts he received (ten), stated the approximate date range within which he received said text messages (beginning on or about April 1, 2009), identified the phone number that sent the text messages, and described two texts with specificity. *Id.* at 1167–68. Other courts taking the *Kramer* view have emphasized that the challenged pleadings indicated the approximate number of text messages and described the contents of at least some messages in detail. *See Strickler v. Bijora, Inc.*, No. 11 CV 3468, 2012 WL 5386089, at *1–3 (N.D. Ill. Oct. 30, 2012) (declining to dismiss a complaint where the plaintiff indicated that she received "over fifty text messages" between late September 2009 through July 2011 and described 16 of said messages in detail).

/ / /

Here, Plaintiff provides far less detail than did the plaintiffs in *Kramer* or *Strickler*. The FAC does not indicate the approximate number of texts Plaintiff received, state the date range within which Plaintiff received said texts, nor describe even one text with any specificity.  Instead, the FAC alleges only that Plaintiff received, over text, generic solicitations encouraging the purchase of Freedom Forever's services.  Based on such sparse allegations, the Court can infer only that Plaintiff received some number of solar-panel-related texts.  The Court is unwilling to allow discovery into alleged text messages absent at least some parameters to limit Plaintiff's inquiry.

To the extent Plaintiff seeks to ground his TCPA claims on text messages, Plaintiff has failed to provide fair notice of his claims under Rule 8(a)(2).  The Court therefore **DISMISSES** Plaintiff's TCPA claims to the extent they rely on text messages with leave to amend.  Plaintiff's FAC has, however, provided fair notice of seven alleged calls.  *See* FAC ¶¶ 36–43 (identifying the date, time, and phone number associated with seven "call[s]" and providing information about the callers and contents of the calls).  The Court will therefore proceed to address Defendant's remaining arguments with respect to said calls.

### 3.    *Plausibility of TCPA Violations*

The TCPA creates multiple private rights of action to protect telephone users from unwanted communications.  *See* 47 U.S.C. § 227.  Two are relevant here.

First, 47 U.S.C. § 227(b)(3) allows plaintiffs to bring actions "based on a violation of [subsection (b)] or the regulations prescribed under [subsection (b)]."  Plaintiff brings a claim under this section for violations of 47 U.S.C. § 227(b)(1)(A), which makes it unlawful, in certain circumstances, to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system [("ATDS")] or an artificial or prerecorded voice."  Said subsection includes within this prohibition calls "to any telephone number assigned to a . . . cellular telephone service."

/ / /

Second, 47 U.S.C. § 227(c)(5) provides a cause of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [subsection c]."  Plaintiff also brings a claim under this section, alleging violations of 47 C.F.R. § 64.1200(c) and (d), which "are regulations promulgated under § 227(c)" that "apply to calls made to wireless telephone numbers" to the extent permitted by 47 C.F.R. § 64.1200(e).  *Drew v. Lexington Consumer Advoc., LLC*, No. 16-CV-00200-LB, 2016 WL 1559717, at *6 (N.D. Cal. Apr. 18, 2016).  These regulations together—with certain exceptions—(1) bar calls to persons who have registered their residential telephone number on the national do-not-call registry of persons and (2) require persons or entities who make calls for telemarketing purposes to institute minimum procedures to avoid calling persons who request not to receive such calls.  47 C.F.R. § 64.1200 (c), (d).

Freedom Forever first argues that Plaintiff has not pleaded sufficient facts demonstrating that Freedom Forever was responsible for any calls he allegedly received. Freedom Forever next contends that even if it was responsible, Plaintiff has not pleaded sufficient facts to suggest that the calls involved either (1) an ATDS or (2) a prerecorded voice.  Finally, Freedom Forever claims that Plaintiff has not pleaded sufficient facts to suggest that Freedom Forever committed knowing and willful violations of the TCPA.

a.    Freedom Forever's Responsibility

To be liable under 47 U.S.C. § 227, a defendant must "make" the offending calls.  A defendant makes a call under § 227 when (1) it does so directly or (2) "the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller."  *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014); *see also Dish Network, LLC*, 28 FCC Rcd. 6574, 6584–86 (2013) (noting defendants may be held vicariously liable pursuant to agency principles through § 227(c)(5)).  Freedom Forever contends that Plaintiff has not plausibly alleged an agency relationship between Freedom Forever and the callers.  Second MTD at 10–13.  Plaintiff / / /

responds by citing cases wherein courts have credited allegations similar to those found in the FAC.  *See* FAC at 15–17.

To determine whether a plaintiff has established an agency relationship, the Ninth Circuit "relies on the Restatement (Third) of Agency." *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018).  Four bedrock theories of agency may give rise to vicarious liability under 47 U.S.C. § 227: "actual authority, apparent authority, ratification, and employment (respondeat superior)." *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 448–49 (9th Cir. 2018).  Though "the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that an agency relationship existed." *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014).  This standard is a flexible one, as "the information necessary to connect all the players is likely in [the defendant's] sole possession."  *See id.*

The Ninth Circuit has not yet explicitly addressed what facts a plaintiff must plead to support a reasonable inference of agency in TCPA cases, but the Seventh Circuit has. *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586–89 (7th Cir. 2021).  Applying the Restatement, the Seventh Circuit assessed whether the plaintiff had stated a plausible claim for relief under an actual authority theory of liability.  *Id.* at 587.  The Seventh Circuit noted that the plaintiff "ultimately must show evidence that (1) a principal/agent relationship exists, (2) the principal controlled or had the right to control the alleged agent's conduct, and (3) the alleged conduct fell within the scope of the agency," *i.e.*, that the agent acted in accordance with the principal's manifestations.  *Id.* at 587.  But the court declined to require the plaintiff to plead "allegations of minute details of the parties' business relationship" at the motion-to-dismiss stage.  *Id.* at 588.  Instead, *Bilek* determined that the plaintiff had met his burden by pleading that: (1) the defendant authorized the callers to make calls using its approved scripts, tradename, and proprietary information; (2) the callers quoted him the defendant's health insurance, and (3) the defendant provided said callers those quotes and permitted said callers to enter information into its system.  *Id.* at 587–88.

Here, as in *Bilek*, Plaintiff has alleged enough facts to survive a motion to dismiss under an actual authority theory. Per Plaintiff, a high-ranking employee of Freedom Forever—Bouchy—participated directly in one of the alleged calls and admitted that he was working alongside other telemarketers. *See* FAC ¶¶ 6, 22, 25, 43. Plaintiff further alleges that all seven calls followed substantially the same format: each caller asked the same questions while reading from a script provided by Freedom Forever, and each call began with a prerecorded message offering the called party the chance to purchase solar panels. *Id.* ¶¶ 42, 46–47. Finally, Plaintiff reports that each of the non-Bouchy callers indicated that they were acting on behalf of Freedom Forever, either by introducing themselves as a "master dealer" for Freedom Forever, indicating that they refer leads to Freedom Forever, or emailing links to websites associated with Freedom Forever. *Id.* ¶¶ 36–40. The FAC's allegations are not only similar to those deemed sufficient in *Bilek*, but also similar to allegations in other cases where courts have declined to dismiss TCPA complaints on agency grounds.[4]

Freedom Forever's arguments to the contrary are unpersuasive. Freedom Forever first contends that Plaintiff's allegations regarding agency are "conclusory." Second MTD at 13. But, as outlined in the above paragraph, many of Plaintiff's allegations present facts supporting the inference that the alleged calls were made on Freedom Forever's behalf and by persons subject to Freedom Forever's control.

Freedom Forever next focuses on select phone calls allegedly made by "Tony Denner" and "Nick Fernandez." *See id.* at 11–12; FAC ¶¶ 36, 38, 40.[5] The two callers

---

[4] *See Garcia v. Caine & Wiener Co.*, No. 16CV0850 DMS (DHB), 2016 WL 11780334, at *5 (S.D. Cal. Sept. 19, 2016); *Sasin v. Enter. Fin. Grp., Inc.*, No. CV 17-4022-CBM-RAO, 2017 WL 10574367, at *5 (C.D. Cal. Nov. 21, 2017); *Ewing v. Freedom Forever LLC*, No. 20-CV-880-JLS (AHG), 2021 WL 1087100, at *4 (S.D. Cal. Mar. 22, 2021); *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1150–51 (N.D. Ill. 2014); *Kristensen*, 12 F. Supp. 3d at 1302; *In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1258 (S.D. Cal. 2012).

[5] Defendant, in an effort to underscore the purported implausibility of Plaintiff's allegations, describes the results of purported internet searches it conducted into the owners of the phone numbers identified in Plaintiff's FAC. Second MTD at 11–13. Defendant also describes allegations purportedly from a prior

who made these alleged calls, per Plaintiff, have at least some affiliation with companies other than Freedom Forever—"Powur" and "Hakuna Matata Energy."  *See id.* ¶¶ 36, 38. Therefore, per Freedom Forever, it is not plausible that these two callers were agents of Freedom Forever.  *See* Second MTD at 11–12.

Defendant's second argument is flawed for multiple reasons.  For one thing, even if these callers were employees of other companies, Freedom Forever may still be vicariously liable for their calls if Plaintiff ultimately demonstrates that they acted pursuant to Freedom Forever's instructions and subject to Freedom Forever's control.  *See Jones*, 887 F.3d at 449.  And, given the alleged similarities between the calls made by these callers and the other calls described in the FAC, the Court finds it plausible that these callers acted pursuant to actual authority conveyed by Freedom Forever.

Beyond that, Defendant fails to acknowledge that at least two of the alleged callers have no alleged association with other companies.  *See* FAC ¶¶ 36, 39, 43.  In fact, the FAC plausibly alleges that both callers were employees of Freedom Forever.  One such caller was Bouchy, Freedom Forever's alleged manager.  *See id.* ¶¶ 6, 22.  The other— Tyler—identified himself as a "master dealer" for Freedom Forever.  *Id.* ¶ 39.  Given Bouchy's alleged admission that there were other telemarketers in the office, *id.* ¶ 43, the Court finds it reasonable to infer that Tyler, like Bouchy, is an employee of Freedom Forever.  Moreover, given that the calls were solar-panel-sales calls, the Court can reasonably infer that both Tyler and Bouchy were acting within the scope of their employment with Freedom Forever.[6]  *See id.* ¶ 6 (noting that Freedom Forever is a solar-

---

complaint filed against them by Ewing.  *Id.* at 11.  The Court, however, "may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)" unless said materials are incorporated by reference into the complaint or are subject to judicial notice.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  Defendant has not argued that either exception to this general rule applies to the information they provide.  *See generally* Second MTD.  Therefore, the Court does not consider said information when ruling on Defendant's 12(b)(6) arguments.

[6] These two conclusions in turn render it plausible that Freedom Forever is liable under yet another theory of agency—respondeat superior—for the calls made by Tyler and Bouchy.  *See* Restatement (Third) of Agency § 7.07 (Am. L. Inst. 2006); *Salaiz v. eHealthInsurance Servs., Inc.*, No. 22-CV-04835-BLF, 2023

panel-sales company).  So, even if Plaintiff has not plausibly alleged that Tony and Nick were agents of Freedom Forever, Plaintiff's TCPA claims survive based on the other calls described in the FAC; Plaintiff need only allege that Freedom Forever made two calls within a twelve-month period—*i.e.*, those from Bouchy and Tyler—to proceed to discovery on both of his TCPA claims.  *See* 47 U.S.C. § 227(b)(1)(A) (rendering unlawful "*any* call" that meets the statutory criteria (emphasis added)); *id.* § 227(c)(5) (providing a cause of action for a person who received "*more than one* telephone call within any 12-month period" (emphasis added)).

The Court therefore declines to dismiss Plaintiff's TCPA claims on the grounds that Plaintiff has not plausibly alleged that Defendant "made" the alleged calls.

### b.    ATDS Use/Prerecorded Voice Use

Freedom Forever next argues that the Court should dismiss Plaintiff's 47 U.S.C. § 227(b)(3) claim because Plaintiff has not plausibly alleged that the calls violated 47 U.S.C. § 227(b)(1)(A).  Specifically, Freedom Forever contends that the FAC fails to sufficiently allege (1) that the calls were made/sent using an ATDS, or (2) that the calls involved a prerecorded voice.  Second MTD at 13–19.  Plaintiff responds by arguing that he cannot provide more specific allegations regarding ATDS use without discovery and that he has plausibly alleged that the calls he received began with a prerecorded voice.  *See* Opp'n at 6, 13.

Section (b)(1)(A) of the TCPA renders calls unlawful if made "using any automatic telephone dialing system or an artificial or prerecorded voice."  47 U.S.C. § 227(b)(1)(A). A plaintiff can thus survive a motion to dismiss claims for violations of this section if she plausibly alleges that the defendant's calls involved *either* an ATDS *or* a prerecorded voice.  *See Iniguez v. The CBE Grp.*, 969 F. Supp. 2d 1241, 1247 (E.D. Cal. 2013); *Tuck v. Guardian Prot. Servs., Inc.*, No. 15-CV-1376 JLS (JLB), 2016 WL 4705457, at *4

_____

WL 2622138, at *3 (N.D. Cal. Mar. 22, 2023) (recognizing that an employer can be held liable under the TCPA for its employee's alleged calls).

(S.D. Cal. Sept. 8, 2016); *Whitehead v. Ocwen Loan Servicing, LLC*, No. 218CV470FTM99MRM, 2018 WL 5279155, at *4 (M.D. Fla. Oct. 24, 2018). The Court will first assess Plaintiff's prerecorded-voice theory, then turn to Plaintiff's ATDS theory if his prerecorded-voice theory is insufficiently pleaded.

Courts differ with respect to the amount of factual detail a Plaintiff must provide to render it plausible that a call or calls involved a prerecorded voice. Some courts reason that a plaintiff can simply allege that a call involved an artificial or prerecorded voice, as such an allegation is "based on [a plaintiff's] own experience when she answer[s] [a defendant's] phone calls." *Iniguez*, 969 F. Supp. 2d at 1247. Other courts require plaintiffs to supply at least some facts supporting the conclusion that a caller's voice was prerecorded or artificial, such as "the robotic sound of the voice on the other line, the lack of human response when [the plaintiff] attempted to have a conversation with the 'person' calling him, the generic content of the message he received, or anything else about the circumstances of a call or message." *Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012).

Plaintiff's prerecorded-voice allegations suffice under either standard. Courts have repeatedly concluded that where a plaintiff alleges that they were unable to reach a live operator without either remaining on the line or pressing numbers on their phone keypad, it is reasonable to infer that the call involved a prerecorded voice. *Sojka v. DirectBuy, Inc.*, 35 F. Supp. 3d 996, 1003 (N.D. Ill. 2014); *Rodriguez v. Nationwide Recovery Serv., Inc.*, No. 1:13-CV-02222-AT-JFK, 2014 WL 12860862, at *6 (N.D. Ga. Mar. 5, 2014); *Battaglia v. Quicken Loans, Inc.*, No. 18-CV-1104, 2019 WL 430042, at *2 & n.1 (W.D.N.Y. Feb. 4, 2019). Courts have also credited allegations that calls contained "generic statements that were repeated verbatim." *Sojka*, 35 F. Supp. 3d at 1003; *see also Johansen*, 2012 WL 6590551, at *3. Here, the FAC contains both allegations. Plaintiff alleges that each of the calls described in the FAC began with the same, generic message, and that he was unable to speak to a "live operator" on each call until he "hit '1.'" FAC ¶¶ 28, 47. Such allegations, taken as true, are sufficient at the motion to dismiss stage.

The Court has determined that Plaintiff has stated a plausible claim for relief for violations of 47 U.S.C. § 227(b)(1)(A) under the theory that he received calls containing an artificial/prerecorded voice.  The Court therefore need not reach the question of whether Plaintiff has stated a plausible claim for relief under the theory that the calls he received were made using an ATDS.  *See Bound v. Grand Bahama Cruise Line, LLC*, No. 1:15-cv-02856-LMM, 2016 WL 10572262, at *2 (N.D. Ga. June 15, 2016).

c.      Willful TCPA Violations

Freedom Forever finally argues that the facts alleged in the FAC do not support the conclusion that any violations of the TCPA were willful, and therefore that the Court should dismiss Plaintiff's TCPA claim to the extent Plaintiff seeks treble damages under the statute.  Second MTD at 19; *see also* 47 U.S.C. § 227(b)(3) (allowing a court, in its discretion, to increase a damages award by up to three times the amount of statutory or actual damages); *id.* § 227(c)(5) (same).  Countering, Plaintiff asks the Court to take judicial notice of prior TCPA lawsuits against Freedom Forever to demonstrate "that they know what they are doing is wrong."  Opp'n at 14.[7]

It is unclear whether it is appropriate to dismiss a TCPA claim only to the extent that it seeks treble damages.  Freedom Forever cites only one case to support its conclusion that the Court may so act.  Second MTD at 19.  And in that case, the court, "[i]n its discretion," declined to award treble damages when ruling on the plaintiff's request for a default judgment.  *Stark v. Bridgepoint Benefits, LLC*, No. 319CV01740AJBAGS, 2021 WL 347695, at *1 (S.D. Cal. Feb. 2, 2021).  It did not, as Freedom Forever implies, dismiss Plaintiff's request for treble damages as implausibly pleaded.  *Id.*

But even assuming Plaintiff must plausibly allege that Freedom Forever committed knowing or willful violations, Defendant's argument fails because Plaintiff has so done here.  Plaintiff alleges that his cell phone number is on the federal do-not-call list and has

---

[7] The Court **DENIES** as moot Plaintiff's request for it to take judicial notice of prior TCPA lawsuits against Freedom Forever, *see* Opp'n at 14–15, as the Court need not and does not rely on such information to address Defendant's argument.

been since 2012.  FAC ¶ 53.  In addition, Plaintiff alleges that he "became upset on each telephone call making very clear that the caller must never telemarket him . . . ever again." *Id.* ¶ 45.  Nevertheless, per Plaintiff, he received additional calls.  *See id.* ¶ 36.  Courts have found similar allegations sufficient to state claims for willful and knowing violations of the TCPA.  *See Winters v. Quicken Loans Inc.*, No. CV-20-00112-PHX-MTL, 2020 WL 5292002, at *4–5 (D. Ariz. Sept. 4, 2020); *Gulden v. Liberty Home Guard LLC*, No. CV-20-02465-PHX-JZB, 2021 WL 689912, at *6–7 (D. Ariz. Feb. 23, 2021).  Consequently, the Court declines to dismiss Plaintiff's TCPA claims to the extent Plaintiff seeks treble damages.[8]

### 4.  Remedies

Lastly, Defendant argues that (1) Plaintiff's FAC is devoid of allegations demonstrating his entitlement to injunctive relief and (2) that exemplary damages—as distinguished from statutory damages—are unavailable as a matter of law under the TCPA and CIPA.  *See* Second MTD at 21–22.  Plaintiff offers no opposition to either argument. *See generally* Opp'n.

The Ninth Circuit has affirmed—albeit in an unpublished disposition—a district court's decision to dismiss a claim where the plaintiff's opposition to the defendant's motion to dismiss failed to respond to the defendant's argument.  *See Allen v. Dollar Tree Stores*, 475 F. App'x 159, 159 (9th Cir. 2012).  The Ninth Circuit has also noted that a failure to oppose a defendant's summary judgment motion with respect to a claim abandons said claim.  *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005).  Pursuant to these precedents, multiple courts in this Circuit have determined that plaintiffs can waive arguments—or abandon entire claims—by failing to respond to points made in a defendant's motion to dismiss.  *See, e.g.*, *Marziano v. Cnty. of Marin*, No. C-10-2740 EMC,

---

[8] Freedom Forever asks the Court, if it dismisses Plaintiff's TCPA claims, to decline to exercise supplemental jurisdiction over Plaintiff's state-law claims.  Second MTD at 20.  As the Court has not dismissed Plaintiff's TCPA claims, the Court **DENIES** as moot Defendant's Motion to the extent it seeks to dismiss Plaintiff's state-law claims for lack of subject-matter jurisdiction.

2010 WL 3895528, at *4 (N.D. Cal. Oct. 4, 2010); *Qureshi v. Countrywide Home Loans, Inc.*, No. C09-4198 SBA, 2010 WL 841669, at *9 (N.D. Cal. Mar. 10, 2010); *Jones v. Regents of Univ. of Cal.*, No. 21-CV-07844-JSW, 2022 WL 1137089, at *2 (N.D. Cal. Apr. 18, 2022).

Though Plaintiff is proceeding pro se, Plaintiff has sufficient experience with this stage of litigation to understand the consequences of his failure to respond.  Plaintiff, by declining to defend his requested relief, has waived any arguments in opposition to Freedom Forever's challenges to his ability to secure injunctive relief or exemplary damages.

The Court thus **DISMISSES** both requests for relief from Plaintiff's FAC without reaching the merits of Freedom Forever's arguments.  *See Marziano*, 2010 WL 3895528, at *4.  The Court dismisses Plaintiff's claims for exemplary damages under the TCPA and CIPA **WITH PREJUDICE**, as Defendant challenges said requests for relief as a matter of law.  The Court **DISMISSES** Plaintiff's claims for injunctive relief, however, **WITH LEAVE TO AMEND**, as Freedom Forever challenges only the sufficiency of Plaintiff's pleading.  If Plaintiff elects to amend his FAC to renew his request for injunctive relief, Plaintiff should consider Article III's requirements for standing to seek prospective injunctive relief—specifically, that Plaintiff either allege ongoing harm from past conduct or establish a sufficient likelihood of future harm.  *See Blair v. Assurance IQ LLC*, No. C23-0016-KKE, 2023 WL 6622415, at *5 (W.D. Wash. Oct. 11, 2023).

## MOTION TO STRIKE

### I.     Legal Standard

"The function of a [Federal Rule of Civil Procedure 12(f)] motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ."  *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (alteration in original) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)).  That said, "[m]otions to strike are 'generally disfavored because they are often used as delaying

tactics and because of the limited importance of pleadings in federal practice.'" *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015) (quoting *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001)).  Therefore, "motions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."  *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).  When ruling on a motion to strike, the Court must view the pleading under attack in the light most favorable to the pleader.  *See Whittlestone*, 618 F.3d at 975 n.2.

Federal Rule of Civil Procedure 12(f) provides that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded."  *Fantasy, Inc.*, 984 F.2d at 1527 (internal quotation marks omitted) (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382, at 706–07 (1990)).  "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question."  *Id.* (internal quotation marks omitted) (quoting 5 Wright & Miller, *supra*, § 1382, at 711).  Finally, an allegation is scandalous if it "improperly casts a derogatory light on someone, most typically on a party to the action."  *Cortina*, 94 F. Supp. 3d at 1182 (internal quotation marks omitted) (quoting *Aoki v. Benihana, Inc.*, 839 F. Supp. 2d 759, 764 (D. Del. 2012)).

Beyond being irrelevant, matters generally should not be stricken under Rule 12(f) unless "their presence in the pleading will prejudice the party seeking to strike matters."  *Ollier v. Sweetwater Union High Sch. Dist.*, 735 F. Supp. 2d 1222, 1224 (S.D. Cal. 2010).  "Where the moving party cannot adequately demonstrate such prejudice, courts frequently deny motions to strike 'even though the offending matter literally [was] within one or more of the categories set forth in Rule 12(f).'"  *N.Y.C. Emps.' Ret. Sys. v. Berry*, 667 F. Supp. 2d 1121, 1128 (N.D. Cal. 2009) (alteration in original) (quoting *Rivers v. Cnty. of Marin*, No. C 05-4251, 2006 WL 581096, at *2 (N.D. Cal. Mar. 7, 2006)).

/ / /

## II.     Analysis

Freedom Forever argues that the Court should strike those portions of Plaintiff's FAC that (1) describe a prior settlement agreement between Plaintiff and Freedom Forever and (2) levy insults or accusations of misconduct unrelated to Plaintiff's claims under the TCPA or CIPA.[9]  The Court will address each argument in turn.

### A.     Settlement Agreement

Freedom Forever next asks the Court to strike Plaintiff's allegations relating to the settlement agreement.  Second MTD at 23–24.  In support, Freedom Forever argues that Plaintiff "does not purport to state a claim for alleged breach of the settlement agreement" and that evidence of the prior dispute might cause unwarranted and prejudicial inferences to arise against Freedom Forever.  *See id.*  Defendant also argues, without analysis, that the settlement agreement pertains to stale and barred charges.  *Id.*  So, per Defendant, the Court should strike Plaintiff's settlement-related allegations as immaterial.  *Id.*  Plaintiff provides no response to this argument.

The relevance of Plaintiff's settlement-related allegations depends on whether Plaintiff seeks to state a claim for breach of contract.  Plaintiff's FAC in this regard is ambiguous—the FAC does not list breach of contract as one of Plaintiff's causes of action but references alleged breaches of the settlement agreement in an apparent attempt to renew claims released by said agreement.  *See* FAC ¶ 41, 49–52.  Though Plaintiff could have cleared up this ambiguity in his Opposition, he chose not to do so.  Therefore, as with Plaintiff's request for injunctive relief and exemplary damages, the Court concludes that Plaintiff has abandoned any breach of contract claim.  *See Marziano*, 2010 WL 3895528, at *4.  To the extent the FAC purported to state a claim for breach of the settlement agreement, said claim is **DISMISSED**.  But as Defendant has not argued that Plaintiff cannot state a claim for breach of contract, *see* Second MTD at 23–24, the Court **GRANTS**

---

[9] Defendant also asks the Court to strike portions of the FAC that mention text messages.  As the Court here dismisses Plaintiff's TCPA claims to the extent they rely on alleged text messages, the Court **DENIES** Defendant's request in this regard as **MOOT**.

Plaintiff **LEAVE TO AMEND**. If Plaintiff wishes to file an amended complaint containing a claim for breach of contract, Plaintiff must include said claim as a standalone cause of action, clarify the relief he seeks, and allege sufficient facts to state a plausible claim for relief.

Absent a claim for breach of contract, the Court agrees with Defendant that the settlement-related allegations—and the copy of the agreement attached to Plaintiff's FAC—should be stricken as immaterial.[10] *See Fantasy*, 984 F.2d at 1527. A settlement agreement purporting to release Freedom Forever from liability for prior TCPA claims has no bearing on whether Freedom Forever is liable under the TCPA and CIPA for seven alleged calls that occurred after the date of the agreement. *See* FAC Ex. A (containing settlement language purporting to release Freedom Forever from claims arising before early June of 2021); *id.* ¶ 36 (indicating that the seven alleged calls that are the subject of Plaintiff's FAC occurred in 2023). Moreover, allowing evidence of prior disputes to remain in the FAC could "lead to unwarranted and prejudicial inferences" against Freedom Forever. *See Fantasy*, 984 F.2d at 1528. The Court therefore **STRIKES** all mentions of the settlement agreement from Plaintiff's FAC, including those contained in Pages 1 and 2, Paragraphs 11, 13, and 49–52, and Footnotes 1 and 14. Moreover, as Exhibit B contains a copy of the settlement agreement, the Court **STRIKES** Exhibit B in its entirety.

### B.   *"Scandalous" Attacks on Freedom Forever and Its Counsel*

Freedom Forever finally asks the Court to strike those portions of Plaintiff's FAC that contain immaterial and/or scandalous attacks on Freedom Forever or Freedom Forever's counsel. Second MTD at 24. Freedom Forever identifies numerous allegations that it contends contain scandalous language. *Id.* For his part, Plaintiff does not contest Freedom Forever's characterization of the language in his FAC. Instead, Plaintiff responds only by pointing out that "he will not allow attorneys to get away with uncivil and

---

[10] If Plaintiff elects to amend his FAC to state a claim for breach of contract, Plaintiff may incorporate allegations regarding the settlement agreement in said amended complaint without violating this Order. The Court expresses no opinion on the merits of such a claim.

unprofessional behavior" and arguing that Freedom Forever's counsel has similarly used scandalous language.  Opp'n at 5–6.

An allegation is scandalous if it "unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *Collura v. City of Philadelphia*, No. 2:12-CV-4398, 2012 WL 6645532, at *7 (E.D. Pa. Dec. 21, 2012) (internal quotation marks omitted) (quoting *Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C. 2003)).  For instance, courts have struck allegations that levy insults at parties or attorneys, *id.* at *7–8, or that raise prior instances of alleged misconduct "for no other reason than to cast [a party] in a negative light," *Tuck v. Guardian Prot. Servs., Inc.*, No. 15-CV-1376 JLS (JLB), 2017 WL 1047122, at *2 (S.D. Cal. Mar. 20, 2017).

The Court agrees with Defendant that many of Plaintiff's allegations contain immaterial and/or scandalous attacks.  First, the FAC makes multiple allegations related to fraud committed by Freedom Forever and/or its manager.  *See* FAC ¶ 4; *id.* ¶ 6 (accusing Defendant of selling "scams"); *id.* ¶ 10; *id.* Ex. A (purporting to provide proof of Freedom Forever's manager's alleged securities fraud).  As Plaintiff's FAC contains no allegations suggesting that he has been a victim of fraud, the Court concludes that Plaintiff has included these allegations solely to cast Freedom Forever and its employees in a negative light.  *See Tuck*, 2017 WL 1047122, at *2.  The Court thus **STRIKES** as scandalous all mentions of fraud or scams from Paragraphs 4, 6, and 10 of the FAC.  The Court also **STRIKES** Exhibit A in its entirety.

Second, the FAC repeatedly attacks Defendant and its attorney for conduct they have engaged in during this litigation.  *See generally* FAC.  These attacks neither relate to Plaintiff's surviving claims under the TCPA and CIPA nor reflect appropriate respect for opposing parties.  *See Collura*, 2012 WL 6645532, at *8 (identifying as strike-worthy unnecessary criticisms of an opposing party's attorney).  Accordingly, the Court **STRIKES** the admonishments to Freedom Forever or its attorney regarding their litigation-related conduct from the following paragraphs and footnotes: Paragraph 3

23

(criticizing Freedom Forever's attorney for referring to Freedom Forever as a Fortune 5000 company); Paragraph 8 (accusing Freedom Forever's attorney of failure to be candid with the court); Paragraph 10 (accusing Freedom Forever's manager and attorney of dishonesty for declining to submit declarations to support Freedom Forever's motion to dismiss); Paragraph 18 ("Plaintiff is keeping this paragraph in the FAC so that [Freedom Forever's attorney] is reminded to obey Rule 11."); Paragraph 21 ("[Freedom Forever's attorney] in [sic] encouraged to read this paragraph over and over again until he fully understands it."); Paragraph 22 ("[Freedom Forever's attorney] is on notice of this allegation and on notice of the law on this point."); Paragraph 39 ("[Freedom Forever's attorney] has a copy of that recording. It's just too bad that he failed to disclosure [sic] that to the District Judge when he filed his deceitful and vituperative motion to dismiss."); Footnote 14 (accusing Freedom Forever's attorney of engaging in "dishonorable and disgusting" conduct by filing a motion to dismiss); Paragraph 40 (describing Freedom Forever's attorney's motion to dismiss as "bizarre and deceitful"); Paragraph 48 (requesting that Freedom Forever's attorney "cease and desist with his completely unprofessional and derogatory remarks directed at Ewing"); Paragraph 52 (describing Freedom Forever's motion to dismiss as "disgusting").

The Court cautions Plaintiff that amended pleadings are not an appropriate avenue to criticize opposing parties or opposing counsel's litigation-related conduct—even if opposing counsel makes statements in their briefing that Plaintiff finds offensive.[11] If Plaintiff believes that an opposing party's litigation-related conduct has violated the law or this Court's rules, Plaintiff may instead resort to a properly supported, noticed motion for sanctions.

/ / /

---

[11] To the extent Plaintiff elects to amend his FAC to state a claim for breach of contract based on Freedom Forever's litigation-related conduct, Plaintiff may incorporate allegations related to litigation-related conduct in a second amended complaint. Otherwise, the Court expects Plaintiff to refrain from criticizing opposing parties' litigation-related conduct in future pleadings.

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Freedom Forever's Motion to Dismiss Plaintiff's FAC and Motion to Strike (ECF No. 15). The Court **DISMISSES** Defendant Brett Bouchy from the action.  The Court also **DISMISSES** Plaintiff's TCPA claims to the extent that they rely on alleged text messages, **DISMISSES** Plaintiff's request for injunctive relief, and **DISMISSES** Plaintiff's claim— to the extent the FAC contained such a claim—for breach of contract, all with **LEAVE TO AMEND**.  The Court **DISMISSES WITH PREJUDICE**, however, Plaintiff's requests for exemplary damages under the TCPA and CIPA.

The Court **STRIKES** all mentions of alleged fraud or scams from Paragraphs 4, 6, and 10 of the FAC, as well as Exhibit A of the FAC in its entirety.  The Court further **STRIKES** all references to the alleged settlement agreement between Plaintiff and Freedom Forever, including those in Pages 1 and 2, Footnotes 1 and 14, and Paragraphs 11, 13 and 49–52.  As Exhibit B to the FAC contains a purported copy of said settlement agreement, the Court also **STRIKES** Exhibit B in its entirety.  Finally, the Court **STRIKES** Plaintiff's attacks on Freedom Forever's litigation-related conduct from Paragraphs 3, 8, 10, 18, 21, 22, 39, 40, 48, and 52, as well as from Footnote 14.  The Court otherwise **DENIES** Defendant's Motion.

Plaintiff **MAY FILE** a second amended complaint to correct the deficiencies noted within this Order within <u>fourteen (14) days</u> of the electronic filing date of this Order.  Any amended complaint must be complete in itself, without reference to Plaintiff's initial Complaint or the FAC, and any claim not realleged in Plaintiff's amended complaint will be considered waived.  *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not realleged in an amended pleading may be considered waived).

/ / /

If Plaintiff files a second amended complaint, Defendant must respond within the time prescribed by Federal Rule of Civil Procedure 15.  If Plaintiff elects not to file a second amended complaint within the time prescribed herein, the case will proceed on Plaintiff's surviving claims, and Defendant's answer will be due <u>fourteen (14) days</u> after the expiration of Plaintiff's deadline to file a second amended complaint.

**IT IS SO ORDERED**.

Dated:  January 19, 2024

Hon. Janis L. Sammartino
United States District Judge