UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTON A. EWING,<br><br>                    Plaintiff,<br><br>v.<br><br>FREEDOM FOREVER, LLC; and BRETT BOUCHY, an individual,<br><br>                    Defendants. | Case No.: 23-CV-1240 JLS (AHG)<br><br>**ORDER DENYING FREEDOM FOREVER'S MOTION FOR TERMINATING SANCTIONS**<br><br>(ECF No. 16) |

      Presently before the Court is Defendant Freedom Forever, LLC's ("Freedom Forever" or "Defendant") Motion for Terminating Sanctions ("MTS," ECF No. 16) and Memorandum of Points and Authorities ("Mem.," ECF No. 16-1) in support thereof. Plaintiff Anton A. Ewing filed an Opposition to the MTS ("Opp'n," ECF No. 18), and Freedom Forever filed a Reply thereto ("Reply," ECF No. 21). The Court vacated the hearing on Freedom Forever's MTS and took it under submission on September 21, 2023. ECF No. 22. Having carefully considered the Parties' submissions and the applicable law, the Court **DENIES** Freedom Forever's MTS **WITHOUT PREJUDICE**.

## BACKGROUND

      This case involves allegations that Freedom Forever—through its agents and employees—has repeatedly called and texted Plaintiff in violation of the federal Telephone

///

Consumer Protection Act ("TCPA"), its implementing regulations, and the California Invasion of Privacy Act ("CIPA"). *See* First Am. Compl. ("FAC") ¶¶ 67–85, ECF No. 13.

Plaintiff filed his initial Complaint ("Compl.," ECF No. 1) on July 5, 2023. On July 31, 2023, Freedom Forever—alongside Defendant Brett Bouchy—moved *ex parte* for a four-day extension of time to respond to Plaintiff's Complaint, noting that their counsel was only recently retained. *See* ECF No. 7. The Court granted this request and—two days later—approved counsel for Defendants' request to appear *pro hac vice*. *See* ECF Nos. 8, 9, 10. Plaintiff responded to these events by filing a Declaration ("First Ewing Decl.," ECF No. 11) accusing opposing counsel of unauthorized practice of law, multiple violations of the Court's local rules, and "criminal deceit." First Ewing Decl. at 1–4. Plaintiff requested no relief from this Court. *Id*.

On August 7, 2023, Plaintiff filed a second Declaration ("Second Ewing Decl.," ECF No. 13-1), in which Plaintiff informed the Court that Freedom Forever would be seeking sanctions related to Plaintiff's communication with a representative of Freedom Forever: Steven Wysong ("Wysong"). Plaintiff declares that Wysong precipitated this communication by emailing him, that opposing counsel has since communicated with him in a way that he feels is uncivil, and that opposing counsel has refused to meet and confer with him. Second Ewing Decl. at 1–2. Plaintiff again requested no relief from this Court. *Id.*

One week later, Freedom Forever filed its MTS. In it, Freedom Forever argues that Plaintiff's history of sanctionable conduct in previous cases, Plaintiff's harassing and unprofessional emails in this action, and Plaintiff's decision to email Wysong while knowing that Wysong's organization was represented by counsel together justify terminating sanctions—*i.e.*, dismissal of this entire action with prejudice. *See generally* Mem.

Specifically, Freedom Forever alleges that when Defendant shared a Dropbox link provided by Plaintiff with Wysong, said link automatically notified Plaintiff that Wysong was seeking access to the Dropbox content. *Id.* at 6. In response to this notification,

Plaintiff emailed Wysong the following message: "Do not destroy any evidence in this matter. I will be taking your deposition. Anton A. Ewing." *See* MTS Ex. B at 2, ECF No. 16-3.[1]

Defendant also filed, as Exhibit A to the MTS, a record of its attorneys' email correspondence with Plaintiff, which includes multiple instances where Plaintiff accused Defendant's counsel of unauthorized practice of law, criminal deceit, violations of local rules, and sanctionable conduct. *See* MTS Ex. A, ECF No. 16-2. In one email, Plaintiff asked Defendant's counsel to "cease and desist from emailing [him] further" or face "serious consequences." *Id.* at 27. Plaintiff's emails have also described Defendant's litigation strategies as "absurd," a "rather stupid waste of time," and "disgusting." *Id.* at 3, 21. Finally, Plaintiff told Defendant's counsel, "[f]orgive me if I don't like you." *Id.* at 11.

## LEGAL STANDARD

The Court possesses the inherent power to sanction misconduct by attorneys or parties before the Court. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991) (holding federal courts have the inherent power to "fashion an appropriate sanction for conduct which abuses the judicial process"). The Supreme Court has warned, however, that sanctions pursuant to a court's inherent powers must be exercised with "restraint and discretion," *id.*, and the Ninth Circuit has further emphasized that said powers should be exercised with extreme caution, *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 437 (9th Cir. 1996). Ultimately, the decision to impose sanctions under a court's inherent authority lies "within the sound discretion of the district court." *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1109 (9th Cir. 2005).

Though courts may dismiss a case as a sanction pursuant to their inherent powers, "[d]ismissal is a permissible sanction only when the [misconduct] relates to the matters in

---

[1] All citations to the MTS Exhibits refer to the blue page numbers stamped to the top-right corner of each page in the Court's Case Management/Electronic Case Filing system.

controversy, and because dismissal is so harsh a penalty, it should be imposed only in extreme circumstances." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983). Moreover, dismissal sanctions may be imposed only upon a finding of "willfulness, fault, or bad faith." *Anheuser–Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995) (internal quotation marks omitted) (quoting *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 946 (9th Cir. 1993)).

Further, a court considering terminating sanctions pursuant to its inherent powers must also weigh the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (internal quotation marks omitted) (quoting *Anheuser–Busch*, 69 F.3d at 348). "[T]he first and second factors ordinarily will support the sanction while the fourth factor ordinarily will not. The third and fifth factors are generally determinative . . . ." *Johnson v. Goldsmith*, 542 F. App'x 607, 608 (9th Cir. 2013) (citing *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990)).

Courts may also use their inherent powers to impose lesser sanctions—including monetary sanctions and attorneys' fees—"against a party or counsel who acts 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *See Leon*, 464 F.3d at 961 (quoting *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997)). Though "mere recklessness, without more, does not justify sanctions under a court's inherent power," "[s]anctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 993–94 (9th Cir. 2001). For example, disobedient conduct not shown to be outside of the control of the litigant can constitute bad faith. *See Henry*, 983 F.2d at 948–49 (affirming sanctions against a party who failed to comply with discovery requests). Still, even lesser sanctions should be

///

imposed sparingly, as "the bad faith requirement sets a high threshold." *Primus Auto Fin. Servs.*, 115 F.3d at 649.

## DISCUSSION

The Court will first address Defendant's contention that Plaintiff's conduct merits terminating sanctions, as Defendant dedicates its opening brief to that issue. After finding dismissal inappropriate, the Court will turn to whether Plaintiff's conduct merits lesser sanctions.

### I. Terminating Sanctions

Here, neither of the determinative factors in the terminating-sanctions analysis—prejudice to the party seeking sanctions and the availability of less drastic sanctions—weigh in favor of terminating sanctions. Nor has the conduct at issue affected the Court's ability to manage its docket. So even if Plaintiff's conduct constitutes "bad faith," terminating sanctions are inappropriate.

#### A. *Prejudice*

"The most critical criterion for the imposition of a dismissal sanction is that the misconduct penalized must relate to matters in controversy in such a way as to *interfere with the rightful decision of the case*." *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 381 (9th Cir. 1988) (emphasis added); *see also Anheuser–Busch*, 69 F.3d at 353 (concluding that where misconduct impairs defendant's ability to go to trial, the risk-of-prejudice prong weighs in favor of terminating sanctions). When assessing whether misconduct interferes with the rightful decision in a case, a court's primary focus should not be "merely delay or docket management concerns, but truth." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007); *see also Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1338 (9th Cir. 1985) (reversing the imposition of terminating sanctions where the defendant's dilatory conduct did not "deceive the court"). For this reason, terminating sanctions are most frequently imposed when a "party has engaged deliberately in *deceptive* practices that undermine the integrity of judicial proceedings." *See Anheuser–Busch*, 69 F.3d at 348 (emphasis added).

Plaintiff's conduct is not yet sufficiently extreme or prejudicial to interfere with the rightful decision of this case. Courts have imposed terminating sanctions where a party lied to the Court about a matter related to the merits of the case, *see id.* at 355, destroyed critical evidence, *Leon*, 464 F.3d at 959–60, resisted discovery in a way that prevented the parties and the court from uncovering the truth of the underlying allegations, *Adriana Int'l*, 913 F.2d at 1412, or threatened violence against opposing counsel such that said party/counsel could not safely participate in continued litigation, *Nelson v. Eaves*, 140 F. Supp. 2d 319, 320–22 (S.D.N.Y. 2001). Here, though Defendant describes Plaintiff's email to Wysong as an effort to "intimidate a witness," *see* Mem. at 14, the Court is unpersuaded that a two-line email asking Wysong not to destroy evidence either (1) compromised Defendant's ability to rely on Wysong's testimony in a manner tantamount to destruction of evidence or (2) constituted a threat to a party's/counsels' safety.[2] And though the Court sympathizes with Defendant's frustration regarding the combative nature of Plaintiff's email correspondence, *see generally* MTS Ex. A, this litigation is in its early stages, and the Court cannot yet conclude that Plaintiff will be unable to engage in productive discovery.[3] The "prejudice" prong thus weighs against the imposition of terminating sanctions at this stage.

///

---

[2] Defendant cites two cases where courts have imposed terminating sanctions based on a plaintiff's use of vile language and physical threats. *See Cameron v. Lambert*, No. 07 CIV.9258 (DC), 2008 WL 4823596, at *4 (S.D.N.Y. Nov. 7, 2008) (dismissing a case where the plaintiff threatened physical force and lifted and dropped furniture during a deposition); *Nelson*, 140 F. Supp. 2d at 320–22 (dismissing case where the plaintiff threatened to kill opposing counsel and repeatedly used sexually explicit and racist language). Both cases are distinguishable, as the record in this action does not reflect that Plaintiff has threatened violence or used explicit or racist language.

[3] Defendant's citations to *Steadman v. Bassett Furniture Indus., Inc.*, No. 13CV0308 JAH(RBB), 2014 WL 12577588, at *2 (S.D. Cal. Oct. 20, 2014), *report and recommendation adopted sub nom. Steadman v. Bassett Furniture, Inc.*, No. 13CV00308 JAH(RBB), 2015 WL 12699859 (S.D. Cal. Nov. 4, 2015), and *Lowry v. Metro. Transit Bd. MTBS*, No. 09CV00882, 2013 WL 4046657, at *4–14 (S.D. Cal. Aug. 5, 2013), are unpersuasive—in both cases, the sanctioned party either entirely failed to attend or intentionally disrupted multiple hearings and/or depositions. Here, Plaintiff has not yet caused comparable disruption.

### B.  The Court's Need to Manage Its Docket

The Court's need to manage its docket ordinarily weighs in favor of dismissal. *See Adriana Int'l*, 913 F.2d at 1412. Here, however, the conduct at issue—Plaintiff's emails—has not yet caused delay in this case. *See Nguyen v. Biter*, No. 1:11-CV-00809-AWI, 2015 WL 366932, at *8 (E.D. Cal. Jan. 27, 2015) (concluding the docket-management factor weighed against imposing terminating sanctions where the plaintiff's sexually explicit letters had not caused delay). Therefore, this factor is neutral at best.

### C.  Efficacy of Lesser Sanctions

When determining whether a district court properly considered the efficacy of lesser sanctions, the Ninth Circuit asks: "(1) whether the district court explicitly discussed the feasibility of less drastic sanctions and explained why such alternate sanctions would be inappropriate; (2) whether the district court implemented alternative sanctions before ordering dismissal; and (3) whether the district court warned the party of the possibility of dismissal before ordering dismissal." *Leon*, 464 F.3d at 960 (internal quotation marks omitted) (quoting *Anheuser–Busch*, 69 F.3d at 352). The Court has not yet implemented alternative sanctions nor warned Plaintiff of the possibility of dismissal in this case. As a result, this factor weighs against imposing terminating sanctions unless less drastic sanctions are infeasible.

Defendant makes two arguments suggesting that less drastic sanctions are infeasible, neither of which are persuasive. First, Defendant points out that "[i]t is appropriate to reject lesser sanctions where the court anticipates continued deceptive misconduct." *Anheuser–Busch*, 69 F.3d at 352. But as outlined above, Plaintiff has not yet demonstrated a "pattern of deception and discovery abuse" sufficient for this court to conclude that this litigation cannot continue "with any reasonable assurance that the truth would be available." *See id.* Put differently, Plaintiff has not yet engaged in *deceptive* misconduct.

Second, Defendant argues that because courts have previously subjected Plaintiff to sanctions, lesser sanctions will fail to reign in Plaintiff's behavior. The Court is

///

unpersuaded, however, that a past record of sanctions justifies depriving Plaintiff of the opportunity to conform his conduct to the Court's expectations.

As both the "prejudice" prong and the "lesser sanctions" prong of the terminating-sanctions analysis weigh against terminating sanctions—and Plaintiff's conduct has not yet delayed this case—the Court declines to impose terminating sanctions.

## II.  Monetary Sanctions

While Defendant's MTS argues only for terminating sanctions, Defendant clarifies in its Reply that it also seeks monetary sanctions—payment of the attorneys' fees associated with filing its MTS. Reply at 9. The Court will first address whether Plaintiff's email to Wysong constitutes bad faith conduct sufficient to justify monetary sanctions, then turn to Plaintiff's emails to opposing counsel.

### A.  *Plaintiff's Email to Wysong*

As Plaintiff's email to Wysong neither violated the law nor appears to this Court to be a clear attempt at intimidation, the Court is unconvinced that said email constitutes bad faith misconduct sufficient to justify monetary sanctions.

First, Plaintiff has not willfully disobeyed the law, a local rule, or an order of this Court. Indeed, Defendant does not argue otherwise. *See* Reply at 5–6 (arguing only that Plaintiff's email was sent to intimidate). And, though courts may issue protective orders preventing an unrepresented party from communicating with opposing parties except through opposing parties' counsel (and impose sanctions for violations of said order), *see Clark v. Wells Fargo Bank*, No. 6:20-CV-00253-AA, 2022 WL 203417, at *1–2 (D. Or. Jan. 24, 2022), no such protective order has been requested or issued in this case. Tellingly, Defendant cites no case where, absent a protective order, a court has sanctioned a party proceeding pro se for sending an email to a represented party.

Second, it is not clear that Plaintiff sent his email with an "improper purpose" such that the Court can impose monetary sanctions even absent the violation of a law, rule, or order. *See Fink*, 239 F.3d at 994. True, Plaintiff's assumption that Wysong was attempting to "destroy evidence" was likely unreasonable, as Plaintiff should have understood that

Defendant's counsel and employees would attempt to access a Dropbox link sent by Plaintiff. *See* Mem. at 6. But Plaintiff's email was not wholly unprompted—per Plaintiff, he received an email from Wysong before sending his own email in response. Second Ewing Decl. at 2. Moreover, Plaintiff's email neither attempts to extract information from Wysong nor contains aggressive language. *See* MTS Ex. B at 2. Finally, the record does not yet reflect any other attempts by Plaintiff to communicate with represented parties. Viewing the email in this context, the Court is not convinced that Plaintiff's email—though overzealous—constitutes willful intimidation sufficient to justify monetary sanctions.

Consequently, the Court declines to impose monetary sanctions for Plaintiff's email to Wysong. That said, the Court warns Plaintiff that if he continues to contact Defendant's employees directly regarding matters relating to this litigation, Defendant may seek a protective order restricting future such communications.

### B.   *Plaintiff's Emails to Opposing Counsel*

The Court is also unpersuaded that Plaintiff's emails to Defendant's counsel are sufficiently egregious to justify a finding of bad faith.

The Court must apply inherent-powers sanctions sparingly. *See Chambers*, 501 U.S. at 44; *In re Keegan Mgmt.*, 78 F.3d at 437. Because of the "high threshold" set by the bad-faith standard, *see Primus Auto. Fin. Servs.*, 115 F.3d at 649, courts tend not to impose monetary sanctions based *solely* on communications that, though aggressive and uncooperative in tone—neither interfere with the opposing party's ability to litigate their case nor incorporate egregiously inappropriate language. Indeed, to support its contention that the Court should sanction Plaintiff for his emails, Defendant relies on cases where courts have sanctioned litigants who either (1) intentionally used aggressive, uncooperative language to disrupt depositions, *see, e.g.*, *La Jolla Spa MD, Inc. v. Avidas Pharms., LLC*, No. 17-CV-1124-MMA(WVG), 2019 WL 4141237, at *23 (S.D. Cal. Aug. 30, 2019); *Van Osten v. Home Depot, U.S.A., Inc.*, No. 19CV2106 TWR (BGS), 2021 WL 3471581, at *6 (S.D. Cal. May 4, 2021), or (2) made explicit threats of sexual or physical violence, *see, e.g.*, *Nelson*, 140 F. Supp. 2d at 322.

Here, Plaintiff's emails to opposing counsel fall into neither category. Plaintiff's emails—and his accompanying threats of sanctions and accusations of criminal conduct—have not yet disrupted a deposition, interfered with a hearing, or otherwise prejudiced Defendant's case such that the Court can conclude Plaintiff deliberately used aggressive language with the improper purpose of inconveniencing/harassing Defendant. Nor do Plaintiff's emails stating that he does not "like" Defendant's counsel, *see* MTS Ex. A at 11, that continued emails from Defendant's counsel may lead to "serious consequences," *see id.* at 27, or that one of Defendant's motions was "disgusting," *see id.* at 21, compare to the profanity-laden threats of physical and sexual violence that led the *Nelson* court to impose sanctions without such interference, *see Nelson*, 140 F. Supp. 2d at 320–22. Absent stronger evidence that Plaintiff sent these emails in bad faith, the Court does not find that Plaintiff's emails justify monetary sanctions.

The Court's decision to deny sanctions at this juncture, however, should not be construed as approval of Plaintiff's approach to this litigation thus far. After reviewing the communications between the Parties, the Court agrees with Defendant that Plaintiff's emails are unnecessarily combative and unprofessional. The Court reminds Plaintiff that he is obligated, as a litigant before this Court, to comply with Civil Local Rule 2.1 in its entirety, including its requirements that he "seek sanctions sparingly, and not to obtain a tactical advantage or for any other improper purpose";[4] "address legal arguments with other lawyers professionally[] and not personally"; and "treat adverse witnesses, litigants, and opposing counsel with courtesy, fairness[,] and respect." *See* S.D. Cal. CivLR 2.1. The Court also reminds Plaintiff that as he must attempt to resolve disputes informally with opposing counsel and entertain reasonable requests for cooperation, *see id.*, he may not refuse to communicate with opposing counsel via email, *see Ewing v. GoNow Travel Club,*

---

[4] Though Plaintiff dedicates ample space in his Opposition—and First Ewing Declaration—to arguments that Defendant should be sanctioned, *see generally* Opp'n, the Court declines to address arguments for sanctions not raised in a noticed motion and fully briefed by both Parties. *See* S.D. Cal. CivLR 7.1. Any such motion must comply with the Federal Rule of Civil Procedure 11: *i.e.*, the motion's factual and legal contentions must have evidentiary support and be consistent with law.

*LLC*, No. 19-CV-297-BAS-AGS, 2019 WL 4688760, at *2 (S.D. Cal. Sept. 26, 2019). This Order constitutes a warning to Plaintiff that if his unprofessional conduct continues—and reaches a point that it interferes with the efficient resolution of this case—this Court may resort to monetary and/or terminating sanctions.

## CONCLUSION

For the foregoing reasons, this Court **DENIES** Defendant's Motion for Terminating Sanctions (ECF No. 16) **WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

Dated: January 19, 2024

Hon. Janis L. Sammartino
United States District Judge