UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTON A. EWING,<br><br>                          Plaintiff,<br><br>v.<br><br>FREEDOM FOREVER, LLC; and BRETT BOUCHY, an individual,<br><br>                         Defendants. | Case No.: 23-CV-1240 JLS (AHG)<br><br>**ORDER DENYING FREEDOM FOREVER'S RENEWED MOTION FOR TERMINATING SANCTIONS**<br><br>(ECF No. 51) |

Presently before the Court is Defendant Freedom Forever, LLC's ("Freedom Forever" or "Defendant") Renewed Motion for Terminating Sanctions ("MTS," ECF No. 51-1), to which Plaintiff Anton A. Ewing filed an Opposition to the MTS ("Opp'n," ECF No. 60) and Freedom Forever filed a Reply ("Reply," ECF No. 66). The Court vacated the hearing on Freedom Forever's MTS and took the matter under submission on August 12, 2024. ECF No. 62. Having carefully considered the Parties' submissions and the applicable law, the Court **DENIES** Freedom Forever's MTS **WITHOUT PREJUDICE**.

## BACKGROUND

This case involves allegations that Freedom Forever—through its agents and employees—has repeatedly called and texted Plaintiff in violation of the federal Telephone Consumer Protection Act ("TCPA"), its implementing regulations, and the California

Invasion of Privacy Act ("CIPA"). *See* Second Amended Complaint ("SAC") ¶¶ 68–86, ECF No. 27.[1] Once before, Freedom Forever asked this Court to issue terminating sanctions, i.e., dismissal of the entire action with prejudice, due to Plaintiff's history of sanctionable conduct in previous cases, Plaintiff's harassing and unprofessional emails in this action, and Plaintiff's decision to email certain employees of Freedom Forever while knowing that the organization was represented by counsel. *See* ECF No. 16. The Court declined the invitation in its Order Denying Freedom Forever's Motion for Terminating Sanctions ("MTS Order," ECF No. 24).

In its MTS Order, the Court found the Ninth Circuit's five-factor test for determining the propriety of terminating sanctions to weigh against issuing sanctions, MTS Order at 5–8, and the conduct complained of by Freedom Forever not "sufficiently egregious to justify a finding of bad faith" such that monetary sanctions were appropriate, *id.* at 8–10. Far from condoning Plaintiff's behavior, however, the Court acknowledged that Plaintiff's communications were "unnecessarily combative and unprofessional," and reminded Plaintiff "that he is obligated, as a litigant before this Court, to comply with Civil Local Rule 2.1 in its entirety, including its requirements that he . . . 'address legal arguments with other lawyers professionally[] and not personally'; and 'treat adverse witnesses, litigants, and opposing counsel with courtesy, fairness[,] and respect.'" *Id.* at 10 (quoting S.D. Cal. CivLR 2.1).

Freedom Forever now returns for the same relief, arguing that Plaintiff continues to violate "basic norms of civility and professionalism" and that "[u]nless and until Ewing is made to pay for his conduct, he will continue to make a mockery of this Court, its Local Rules on civility and professionalism, and any efforts to bring this case to a resolution." Mot. at 8.[2] Specifically, Freedom Forever points to (1) Plaintiff's continued pattern of

---

[1] The SAC remains operative despite Plaintiff's Motion for Leave to File Third Amended Complaint (ECF No. 55), which remains pending.

[2] All citations to the filings refer to the blue page numbers stamped to the top-right corner of each page in the Court's Case Management/Electronic Case Filing system.

uncivil and unprofessional email communications; (2) Plaintiff's alleged threat to sue Freedom Forever's counsel personally; (3) a bar complaint Plaintiff allegedly filed against Freedom Forever's lead counsel; (4) Plaintiff's alleged breach of confidentiality regarding the Early Neutral Evaluation Conference held on July 3, 2024; and (5) Plaintiff allegedly recording opposing counsel without consent.[3,4]  *Id.* at 11–17.  Coupled with Plaintiff's failure to heed the Court's warning in the MTS Order that continued unprofessional conduct might warrant monetary and/or terminating sanctions, Freedom Forever thinks sanctions are now appropriate.

## LEGAL STANDARD

The Court possesses the inherent power to sanction misconduct by attorneys or parties before the Court.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991) (holding federal courts have the inherent power to "fashion an appropriate sanction for conduct which abuses the judicial process").  The Supreme Court has warned, however, that sanctions pursuant to a court's inherent powers must be exercised with "restraint and discretion," *id.*, and the Ninth Circuit has further emphasized that said powers should be exercised with extreme caution, *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 437 (9th Cir. 1996).  Ultimately, the decision to impose sanctions under a court's inherent authority lies "within the sound discretion of the district court." *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1109 (9th Cir. 2005).

Though courts may dismiss a case as a sanction pursuant to their inherent powers, "[d]ismissal is a permissible sanction only when the [misconduct] relates to the matters in controversy, and because dismissal is so harsh a penalty, it should be imposed only in

---

[3] Freedom Forever also points to Plaintiff's filing of a baseless sanctions motion, but the Court has already declined to award sanctions for that conduct.  *See* ECF No. 68 at 16.

[4] Freedom Forever again complains of Plaintiff contacting its client directly rather than communicating through counsel, but the Court has already pointed out that "Defendant may seek a protective order restricting future such communications," which it has declined to avail itself of.  MTS Order at 9.

extreme circumstances." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983). Moreover, dismissal sanctions may be imposed only upon a finding of "willfulness, fault, or bad faith." *Anheuser–Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995) (internal quotation marks omitted) (quoting *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 946 (9th Cir. 1993)).

Further, a court considering terminating sanctions pursuant to its inherent powers must also weigh the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (internal quotation marks omitted) (quoting *Anheuser–Busch*, 69 F.3d at 348). "[T]he first and second factors ordinarily will support the sanction while the fourth factor ordinarily will not. The third and fifth factors are generally determinative . . . ." *Johnson v. Goldsmith*, 542 F. App'x 607, 608 (9th Cir. 2013) (citing *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990)).

Courts may also use their inherent powers to impose lesser sanctions—including monetary sanctions and attorneys' fees—"against a party or counsel who acts 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *See Leon*, 464 F.3d at 961 (quoting *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997)). Though "mere recklessness, without more, does not justify sanctions under a court's inherent power," "[s]anctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 993–94 (9th Cir. 2001). For example, disobedient conduct not shown to be outside of the control of the litigant can constitute bad faith. *See Henry*, 983 F.2d at 948–49 (affirming sanctions against a party who failed to comply with discovery requests). Still, even lesser sanctions should be imposed sparingly, as "the bad faith requirement sets a high threshold." *Primus Auto Fin. Servs.*, 115 F.3d at 649.

23-CV-1240 JLS (AHG)

# DISCUSSION

As in the MTS Order, the Court will first address Freedom Forever's contention that Plaintiff's conduct merits terminating sanctions. It will then consider whether Plaintiff's conduct merits lesser sanctions.

## I. Terminating Sanctions

Here, as before, neither of the determinative factors in the terminating sanctions analysis—prejudice to the party seeking sanctions and the availability of less drastic sanctions—weigh in favor of terminating sanctions. Nor has the conduct at issue affected the Court's ability to manage its docket. So even if Plaintiff's conduct constitutes "bad faith," terminating sanctions remain inappropriate. Though the Court finds it somewhat duplicative to re-analyze the terminating sanctions factors, *see* MTS Order at 5–8, it does so to reiterate the high bar that Freedom Forever needs to meet to have this case dismissed as a sanction against Plaintiff.

### A. *Prejudice*

"The most critical criterion for the imposition of a dismissal sanction is that the misconduct penalized must relate to matters in controversy in such a way as to *interfere with the rightful decision of the case*." *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 381 (9th Cir. 1988) (emphasis added); *see also Anheuser–Busch*, 69 F.3d at 353 (concluding that where misconduct impairs defendant's ability to go to trial, the risk-of-prejudice prong weighs in favor of terminating sanctions). When assessing whether misconduct interferes with the rightful decision in a case, a court's primary focus should not be "merely delay or docket management concerns, but truth." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007); *see also Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1338 (9th Cir. 1985) (reversing the imposition of terminating sanctions where the defendant's dilatory conduct did not "deceive the court"). For this reason, terminating sanctions are most frequently imposed when a "party has engaged deliberately in *deceptive* practices that undermine the integrity of judicial proceedings." *See Anheuser–Busch*, 69 F.3d at 348 (emphasis added).

    Yet again, Plaintiff's conduct is not sufficiently extreme nor prejudicial to interfere with the rightful decision of this case. The Court addressed this prong in the MTS Order:

> Courts have imposed terminating sanctions where a party lied to the Court about a matter related to the merits of the case, *see id.* at 355, destroyed critical evidence, *Leon*, 464 F.3d at 959–60, resisted discovery in a way that prevented the parties and the court from uncovering the truth of the underlying allegations, *Adriana Int'l*, 913 F.2d at 1412, or threatened violence against opposing counsel such that said party/counsel could not safely participate in continued litigation, *Nelson v. Eaves*, 140 F. Supp. 2d 319, 320–22 (S.D.N.Y. 2001).

MTS Order at 6. In each of these cases, the sanctioned party engaged in conduct that had "undermine[d] the integrity of judicial proceedings," *Anheuser-Busch*, 69 F.3d at 348, as contrasted with the instant case in which Freedom Forever only points to conduct that, though unbecoming and unseemly, does not jeopardize the Court's pursuit of justice.

    The Court pauses, however, to issue a stern warning that threats of force or violence amongst and between litigants will not be countenanced. In his Opposition, Plaintiff threatens to place Freedom Forever's counsel under citizen's arrest if he sets foot in California. *See* Opp'n at 5 n.4. Though this threat does not yet merit terminating sanctions, the Court warns Plaintiff that ***it will dismiss this case with prejudice*** if he makes a single additional threat of force against Freedom Forever's attorneys. Terminating sanctions are more than justified in situations of repeated threats of violence. *See Nelson*, 140 F. Supp. 2d at 320 (dismissing complaint with prejudice when the plaintiff wrote letters to the prior Assistant Attorney General ("AAG") assigned to the case that grew increasingly sexually graphic and included vague references of threatening to kill the AAG).

    At this point, however, Freedom Forever has not shown sufficient prejudice due to Plaintiff's conduct. Defendant merely recycles the same citations supporting its

argument—citations the Court disposed of in the MTS Order—and they remain easily distinguishable. *See* MTS Order at 6 (distinguishing *Steadman v. Bassett Furniture Indus., Inc.*, No. 13CV0308 JAH(RBB), 2014 WL 12577588, at *2 (S.D. Cal. Oct. 20, 2014), *report and recommendation adopted sub nom. Steadman v. Bassett Furniture, Inc.*, No. 13CV00308 JAH(RBB), 2015 WL 12699859 (S.D. Cal. Nov. 4, 2015), and *Lowry v. Metro. Transit Bd. MTBS*, No. 09CV00882, 2013 WL 4046657, at *4–14 (S.D. Cal. Aug. 5, 2013)).

### B.     *The Court's Need to Manage Its Docket*

The Court's need to manage its docket ordinarily weighs in favor of dismissal. *See Adriana Int'l*, 913 F.2d at 1412. Here, however, the conduct at issue has not yet caused delay in this case. *See Nguyen v. Biter*, No. 1:11-CV-00809-AWI, 2015 WL 366932, at *8 (E.D. Cal. Jan. 27, 2015) (concluding the docket-management factor weighed against imposing terminating sanctions where the plaintiff's sexually explicit letters had not caused delay). Freedom Forever's reliance on *Lowry* is unpersuasive. There, the plaintiff engaged in "numerous *ex parte* communications with chambers," including calls and letters in which he sought to discuss his case with court employees, and he exhausted several hours of the court's time by declining to appear for multiple hearings. 2013 WL 4046657, at *17. Plaintiff has not "hijacked this litigation from the beginning" to the same extent as the plaintiff in *Lowry*. Therefore, this factor remains neutral.

### C.     *Efficacy of Lesser Sanctions*

When determining whether a district court properly considered the efficacy of lesser sanctions, the Ninth Circuit asks: "(1) whether the district court explicitly discussed the feasibility of less drastic sanctions and explained why such alternate sanctions would be inappropriate; (2) whether the district court implemented alternative sanctions before ordering dismissal; and (3) whether the district court warned the party of the possibility of dismissal before ordering dismissal." *Leon*, 464 F.3d at 960 (internal quotation marks omitted) (quoting *Anheuser–Busch*, 69 F.3d at 352). The Court has not yet implemented alternative sanctions, although it warned Plaintiff in the MTS Order "that if his

unprofessional conduct continues—and reaches a point that it interferes with the efficient resolution of this case—this Court may resort to monetary and/or terminating sanctions." MTS Order at 11.

As alluded to above, that line has not yet been crossed as this case continues to advance towards a timely resolution. No significant delay has manifested thus far and, though the Court would prefer the Parties devote their precious resources to the merits of their claims—and allow the Court to devote the public's precious resources to the same— the "efficient resolution of this case" is not yet in jeopardy. *Id.* Indeed, Magistrate Judge Goddard recently convened a Discovery Conference on October 4, 2024, where she reiterated to the Parties that they should be prepared to complete fact discovery by the November 22, 2024 deadline. *See* ECF No. 76 at 2 (re-affirming the deadline as established in the July 3, 2024 Scheduling Order (ECF No. 46)). The Court again, however, emphasizes that delays will not be tolerated without good cause.

Freedom Forever raises similar arguments as it did in its first Motion for Terminating Sanctions in that monetary sanctions are futile as exemplified by their ineffectiveness against Plaintiff in past litigation, but the Court remains unpersuaded. *See* MTS Order at 7. Once again, "because dismissal is so harsh a penalty, it should be imposed only in extreme circumstances." *Wyle*, 709 F.2d at 589. The Court remains sympathetic to Freedom Forever's blight of having to engage with Plaintiff's antics, but terminating sanctions are too much to ask at this point. If circumstances change, Freedom Forever is of course free to renew its request.

## II. Monetary Sanctions

The Court has repeatedly reminded the Parties of their obligation "to seek sanctions sparingly," and that they "may test the Court's patience" but sanctions are only to be awarded "in the 'rare and exceptional case.'" ECF No. 68 at 16 (first citing S.D. Cal. CivLR 2.1; and then quoting *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988)). As the Court noted in its MTS Order:

> Because of the "high threshold" set by the bad-faith standard,

>*see Primus Auto. Fin. Servs.*, 115 F.3d at 649, courts tend not to impose monetary sanctions based *solely* on communications that, though aggressive and uncooperative in tone—neither interfere with the opposing party's ability to litigate their case nor incorporate egregiously inappropriate language. Indeed, to support its contention that the Court should sanction Plaintiff for his emails, Defendant relies on cases where courts have sanctioned litigants who either (1) intentionally used aggressive, uncooperative language to disrupt depositions, *see, e.g.*, *La Jolla Spa MD, Inc. v. Avidas Pharms., LLC*, No. 17-CV-1124-MMA(WVG), 2019 WL 4141237, at *23 (S.D. Cal. Aug. 30, 2019); *Van Osten v. Home Depot, U.S.A., Inc.*, No. 19CV2106 TWR (BGS), 2021 WL 3471581, at *6 (S.D. Cal. May 4, 2021), or (2) made explicit threats of sexual or physical violence, *see, e.g.*, *Nelson*, 140 F. Supp. 2d at 322.

MTS Order at 9.

Freedom Forever has again failed to establish the bad faith necessary for the Court to impose sanctions. The thrust of the MTS appears to reflect Freedom Forever's frustration with Plaintiff's tone in email correspondence and his "rampant violations of basic norms of civility and professionalism." MTS at 8. The Court is well aware of the Principles of Civility outlined in the Local Rules that practitioners before this Court are to abide by, S.D. Cal. CivLR 2.1(a)(1), and it acknowledges that Plaintiff's brusque manner of litigating his case certainly pushes the envelope of said Principles. But the bad faith standard sets a high bar that Freedom Forever simply has not satisfied.

Freedom Forever attached over sixty pages of email correspondence with Plaintiff to its MTS, apparently to demonstrate how irritating it has been to communicate about this matter. It complains that "Ewing sent nine emails to Freedom Forever's counsel" on May 20, and then "sent an incredible 22 emails" the next day. MTS at 11. But as

unpleasant as extensive case management email communications might be, it is hard to see how this amounts to "heavy-handed tactics" intended to produce a desired result. *Id.* at 12. Indeed, it is not apparent that there is anything unusual about the back-and-forth nature of the Parties' posturing such that it has undermined Freedom Forever's ability to effectively litigate its case.

Nor is it apparent that the other conduct Freedom Forever complains of has impacted its ability to effectively litigate its case. Though bizarre, Plaintiff's lone threat to sue his opposing counsel, *see* ECF No. 41-2 at 2 ("I will also sue you, personally, for breach of contract."), does not necessarily demonstrate that Plaintiff was "substantially motivated by vindictiveness, obduracy, or mala fides." *In re Itel Sec. Litig.*, 791 F.2d 672, 675 (9th Cir. 1986) (quoting *Lipsig v. Nat'l Student Mktg. Corp.*, 663 F.2d 178, 182 (D.C. Cir. 1980)). It is also not clear how, despite the Local Rules establishing that the "[Early Neutral Evaluation ("ENE")] will be informal, off the record, privileged, and confidential," S.D. Cal. CivLR 16.1(c)(1)(b), that Plaintiff's purported "rant" following the ENE violated the Rules. Moreover, Freedom Forever's vague allegation that "Ewing is willing to break the law whenever he sees fit"—as supported by Plaintiff attempting to record court proceedings but ceasing his behavior when told it was not permitted, Mot. at 16—is little more than a petty grievance.

Freedom Forever claims that Plaintiff's misconduct results in "costs to litigants and the Court's judicial resources," Mot. at 29, but the irony here is that the bulk of the MTS accomplishes much the same. As stated above, the Court sympathizes with Freedom Forever's frustration with Plaintiff's bizarre and erratic behavior. But this case is well on its way to reaching an efficient resolution, and a glut of sanctions motions clogging the docket only impedes that progress, particularly when those sanctions motions are premised upon similar conduct as ones that have already been denied by the Court.

Having said that, the Court reiterates once again that it will not tolerate any additional threats of force resembling Plaintiff's threat to conduct a citizen's arrest on Freedom Forever's attorney. Although the Court has declined to award sanctions

previously in this matter, it will not hesitate to ***dismiss this case with prejudice*** if Plaintiff does so again. Moreover, just as the MTS Order constituted a warning to Plaintiff, this Order likewise ***constitutes a warning that if Plaintiff's conduct begins to interfere with the efficient resolution of this case, the Court may resort to monetary and/or terminating sanctions***.

## CONCLUSION

For the foregoing reasons, this Court **DENIES** Defendant's Renewed Motion for Terminating Sanctions (ECF No. 51) **WITHOUT PREJUDICE** to Defendant filing a renewed motion later in this case.

**IT IS SO ORDERED.**

Dated: November 4, 2024

*[signature]*
Hon. Janis L. Sammartino
United States District Judge